UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————— x

ROYAL PARK INVESTMENTS SA/NV,
Individually and on Behalf of All Others
Similarly Situated,

                        Plaintiff,

        vs.

U.S. BANK NATIONAL ASSOCIATION, as
Trustee,

                      Defendant.

—————————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 14-cv-02590-VM

<u>CLASS ACTION</u>

PLAINTIFF ROYAL PARK INVESTMENTS
SA/NV'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION FOR CLASS
CERTIFICATION AND APPOINTMENT OF
CLASS REPRESENTATIVE AND CLASS
COUNSEL

1217552_1

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ...................................................................................1

II.   STATEMENT OF FACTS .......................................................................................3

    A.   U.S. Bank's Obligations to the Class........................................................3

    B.   U.S. Bank's Breaches of Contract and Duty of Trust................................4

III.  ARGUMENT ...........................................................................................................6

    A.   This Case Satisfies the Requirements of Rule 23(a)..................................7

        1.   The Class Is Numerous ...................................................................7

        2.   There Are Questions of Law and Fact Common to the Class.....................8

        3.   Plaintiff's Claims Are Typical of the Class ...............................10

        4.   Plaintiff Is Adequate ...................................................................12

    B.   The Requirements of Rule 23(b)(3) Are Also Satisfied .........................14

        1.   Common Questions of Law and Fact Predominate Under Rule 23(b) ...........................................................................................14

        2.   A Class Action Is Superior .........................................................20

    C.   The Court Should Appoint Plaintiff's Counsel as Class Counsel Under Rule 23(g) ...............................................................................................22

IV.   CONCLUSION.......................................................................................................23

1217552_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allapattah Servs., Inc. v. Exxon Corp.*,
   333 F.3d 1248 (11th Cir. 2003),
   *aff'd*, 545 U.S. 546 (2005) .................................................................................................16

*Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A*,
   269 F.R.D. 340 (S.D.N.Y. 2010) ...............................................................1, 9, 21, 22

*Billhofer v. Flamel Techs., S.A.*,
   281 F.R.D. 150 (S.D.N.Y. 2012) ...........................................................................22

*Brown v. Kelly*,
   609 F.3d 467 (2d Cir. 2010)...................................................................................6

*Cent. States Se. & Sw. Areas Health & Welfare Fund v.*
   *Merck-Medco Managed Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007)...................................................................................7

*Dodona I, LLC v. Goldman, Sachs & Co.*,
   296 F.R.D. 261 (S.D.N.Y. 2014) ................................................................. *passim*

*Fleisher v. Phoenix Life Ins. Co.*,
   No. 11 Civ. 8405(CM), 2013 U.S. Dist. LEXIS 99959
   (S.D.N.Y. July 12, 2013) .......................................................................1, 9, 10, 16

*Fogarazzo v. Lehman Bros.*,
   263 F.R.D. 90 (S.D.N.Y. 2009) ...............................................................................7

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918
   (S.D.N.Y. July 27, 2007) .......................................................................................21

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009)...................................................................................10

*In re IndyMac Mortg.-Backed Sec. Litig.*,
   286 F.R.D. 226 (S.D.N.Y. 2012) ................................................................. *passim*

*In re U.S. Foodservice Inc. Pricing Litig.*,
   729 F.3d 108 (2d Cir. 2013), *cert. denied*,
   __ U.S. __, 134 S. Ct. 1938 (2014).........................................................1, 9, 11, 15

- ii -

**Page**

*In re U.S. Foodservice Inc. Pricing Litig.*,
   No. 3:07-MD-1894 (CFD), 2011 WL 6013551
   (D. Conn. Nov. 29, 2011), *aff'd*, 729 F.3d 108 (2d Cir. 2013) ...................................8

*In re Vivendi Universal, S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ...................................................................................7, 10

*Kalkstein v. Collecto, Inc.*,
   304 F.R.D. 114 (E.D.N.Y. 2015) ........................................................................................13

*Kottler v. Deutsche Bank AG*,
   No. 05 Civ. 7773 (PAC), 2010 WL 1221809
   (S.D.N.Y. Mar. 29, 2010) ...................................................................................................10

*Lapin v. Goldman Sachs & Co.*,
   254 F.R.D. 168 (S.D.N.Y. 2008) .......................................................................................19

*Marisol A. by Forbes v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) .................................................................................................8

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
   No. 08 Civ. 5653 (PAC), 2014 U.S. Dist. LEXIS 35326
   (S.D.N.Y. Mar. 17, 2014) .............................................................................................12, 18

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
   No. 08 CV 8781 (HB), 2013 U.S. Dist. LEXIS 180913
   (S.D.N.Y. Dec. 27, 2013) .....................................................................................................7

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012) ...............................................................................................18

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   No. 1:08-cv-10783 (LAP) ...................................................................................................22

*Policemen's Annuity and Benefit Fund v. Bank of Am., N.A.*,
   No. 1:12-CV-02865-KBF, 2015 U.S. Dist. LEXIS 177151
   (S.D.N.Y. Mar. 16, 2015) ...................................................................................................11

*Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
   277 F.R.D. 97 (S.D.N.Y. 2011) .............................................................................. *passim*

*Ret. Fund v. J.P. Morgan Chase & Co.*,
   301 F.R.D. 116 (S.D.N.Y. 2014) ........................................................................... *passim*

- iii -

**Page**

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015)......................................................................19

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)...................................................................8, 10

*Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*,
  109 F. Supp. 3d 587 (S.D.N.Y. 2015).......................................................15

*Seekamp v. It's Huge, Inc.*,
  No. 1:09-CV-00018, 2012 U.S. Dist. LEXIS 33295
  (N.D.N.Y. Mar. 13, 2012)..................................................................1, 9, 21

*Sgalambo v. McKenzie*,
  268 F.R.D. 170 (S.D.N.Y. 2010) ...............................................................22

*UFCW Local 1776 v. Eli Lilly & Co.*,
  620 F.3d 121 (2d Cir. 2010).......................................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).....................................................................................8

*Wallace v. Intralinks*,
  302 F.R.D. 310 (S.D.N.Y. 2014) ...............................................................12

*Wu v. Pearson Educ., Inc.*,
  277 F.R.D. 255 (S.D.N.Y. 2011) ...............................................................16

## STATUTES, RULES AND REGULATIONS

Federal Rule of Civil Procedure
  Rule 23.................................................................................................1, 2, 6, 7
  Rule 23(a)........................................................................................6, 7, 14, 23
  Rule 23(a)(1)...............................................................................................7
  Rule 23(a)(2)...............................................................................................8
  Rule 23(a)(3).............................................................................................10
  Rule 23(a)(4)...............................................................................12, 14, 23
  Rule 23(b) ...............................................................................................6, 14
  Rule 23(b)(3).................................................................................... *passim*
  Rule 23(g)................................................................................................22, 23
  Rule 23(g)(1)(A).........................................................................................22
  Rule 23(g)(4)...............................................................................................22
  Rule 30(b)(6)...............................................................................................14

Pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"), plaintiff Royal Park Investments SA/NV ("plaintiff" or "Royal Park") respectfully moves the Court to certify this action as a class action and to certify the following Class:

> All persons and entities who held Certificates in the Covered Trusts and were damaged as a result of U.S. Bank National Association's conduct alleged in the Complaint. Excluded from the class are defendant, the loan originators, the Warrantors, the Master Servicers and the Servicers to the Covered Trusts, and their officers and directors, their legal representatives, successors or assigns, and any entity in which they have or had a controlling interest.[1]

In addition, plaintiff moves the Court for an order appointing plaintiff as Class Representative and to appoint Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Class Counsel.

## I.   PRELIMINARY STATEMENT

Plaintiff's two causes of action – breach of contract and breach of trust – are ideally suited for class certification pursuant to Rule 23. Courts in the Second Circuit recognize that cases alleging breach of contract and trust are readily amenable to class certification and resolution.[2] This case is no different. Defendant U.S. Bank National Association ("U.S. Bank"), as trustee for the Covered

---

[1] The "Covered Trusts" are the residential mortgage-backed securities ("RMBS") identified in Appendix A, attached hereto; *see also* Class Action and Verified Derivative Complaint for Breach of the Trust Indenture Act, Breach of Contract, and Breach of Trust ("Complaint"), Dkt. No. 2, ¶2. All "¶" or "¶¶" references and defined terms contained herein refer to the Complaint unless otherwise noted.

[2] *See, e.g.*, *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 112, 123-27 (2d Cir. 2013), *cert. denied*, __ U.S. __, 134 S. Ct. 1938 (2014) (holding that "the district court correctly concluded that [the] . . . contract claims [were] susceptible to generalized proof such that common issues [would] predominate over individual issues and [that] a class action [was] superior," even where the various underlying contracts were not uniform); *Seekamp v. It's Huge, Inc.*, No. 1:09-CV-00018 (LEK/DRH), 2012 U.S. Dist. LEXIS 33295, at *39 (N.D.N.Y. Mar. 13, 2012) (certifying breach of contract class and noting that "[a]ctions that involve form or uniform contracts have been recognized as being well-suited for treatment as a class action"); *Fleisher v. Phoenix Life Ins. Co.*, No. 11 Civ. 8405(CM), 2013 U.S. Dist. LEXIS 99959, at *28 (S.D.N.Y. July 12, 2013) ("Breach of contract cases are particularly appropriate for class certification."); *Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A*, 269 F.R.D. 340 (S.D.N.Y. 2010) ("*AFTRA*") (certifying class action based on various breach of fiduciary of loyalty claims).

- 1 -

Trusts, assumed substantially identical duties under the Governing Agreements[3] for each of the Covered Trusts and breached those duties in an identical manner.  The evidence adduced to date demonstrates that the Governing Agreements imposed substantially identical obligations on U.S. Bank as trustee; that all of the Covered Trusts were administered by a small group of employees within a single U.S. Bank group; and that a single set of uniform procedures governed U.S. Bank's administration of the Covered Trusts.[4]

Accordingly, plaintiff's case presents a single, predominant issue of liability that is common to all Class members and each of Rule 23's requirements are met:

- ***Numerosity*** is satisfied as there are at least 2,460 potential class members in the Class.[5]

- ***Commonality*** is also satisfied because: (1) each Class member's claims arise out of the same common course of conduct by U.S. Bank; (2) U.S. Bank employed the same single set of policies and procedures to administer each of the Covered Trusts; (3) U.S. Bank's role as trustee was fundamentally identical with respect to each of the Covered Trusts; (4) U.S. Bank breached substantially identical provisions of each of the Governing Agreements for the Covered Trusts; and (5) damages can be calculated on a class-wide basis using the methodology set forth in the report of plaintiff's expert, W. Scott Dalrymple, CFA.  *See* Alvarado Decl., Ex. A, ¶¶36-39, 49-58.

---

[3]     The "Governing Agreements" consist of Pooling and Servicing Agreements ("PSAs") or Trust Agreements ("TAs") and other agreements related thereto, such as the Mortgage Loan Purchase Agreements and Servicing Agreements.  The Governing Agreements outlined U.S. Bank's contractual and fiduciary duties as trustee for the Covered Trusts.

[4]     The fact that this action includes 21 RMBS trusts is not a bar to certification.  Numerous courts have found that analogous class actions involving multiple RMBS trusts are particularly appropriate for class treatment.  *See, e.g.*, *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116 (S.D.N.Y. 2014) (granting class certification across nine trusts in an RMBS class action); *In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226 (S.D.N.Y. 2012) (granting class certification across ten RMBS trusts); *Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97 (S.D.N.Y. 2011) (granting class certification across 18 RMBS trusts).

[5]     *See* Declaration of Darryl J. Alvarado in Support of Plaintiff Royal Park Investments SA/NV's Motion for Class Certification and Appointment of Class Representative and Class Counsel ("Alvarado Decl."), Ex. A (Expert Report of W. Scott Dalrymple, CFA), ¶¶40-48.

- *Adequacy* and *typicality* are satisfied because: (1) plaintiff and the Class assert identical claims that arise from the same alleged course of conduct by U.S. Bank; (2) plaintiff is not subject to any unique defenses and shares Class members' interest in maximizing the Class's recovery; and (3) plaintiff has and will continue to actively monitor and supervise this action, has a full understanding of the responsibilities of a class representative, and has retained experienced counsel with a proven track record in class actions like this one.

- Finally, *superiority* is satisfied because a class action is preferable to any other method for adjudicating this controversy, as multiple lawsuits would be costly and inefficient and no manageability issues arise from allowing this case to proceed as a class action in this forum.

## II.   STATEMENT OF FACTS

This action arises from U.S. Bank's failure to fulfill its contractual and common law obligations as trustee for the Covered Trusts, causing damages to plaintiff and the Class.

### A.   U.S. Bank's Obligations to the Class

As set forth in the Governing Agreements for the Covered Trusts, U.S. Bank is granted certain rights that it is obligated to exercise for the benefit of the Class.  ¶¶40-43.  Specifically, if U.S. Bank discovers that one of the loans underlying the Covered Trusts (the "Loans") breaches one of the representations and warranties ("R&Ws") made by a "Depositor," "Loan Sellers/Sponsors," and/or an originator or Other Transferor of the Loans (*i.e.*, one of the "Warrantors") concerning the Loan's characteristics, U.S. Bank is required to notify the breaching Warrantor of the violation and, if the breach is not timely cured, to enforce the breaching Warrantor's obligation to either substitute or repurchase the defective Loan.  ¶¶47-48.

In addition to its contractual obligations to enforce R&W claims against the Warrantors, the Governing Agreements also require U.S. Bank to take steps to protect Class members whenever it becomes aware of loan servicing failures by the Covered Trusts' "Master Servicers" or "Servicers"[6]

---

[6]     For the Covered Trusts, the Master Servicers and Servicers were: Wells Fargo Bank, N.A.; Bank of America, N.A.; JPMorgan Chase Bank, N.A.; National City Mortgage Co.; Aurora Loan

amounting to "Events of Default."  ¶¶49, 52-54.  An Event of Default occurs whenever a Master Servicer or Servicer fails to "observe or perform in any material respect any . . . covenants or agreements of the Master Servicer [or Servicer, as applicable] set forth in [the Governing] Agreement[s]." ¶51.

Importantly, the Governing Agreements require U.S. Bank to act promptly to protect the Covered Trusts and the Class once it becomes aware of an Event of Default. ¶52. Upon an Event of Default, the Governing Agreements require U.S. Bank to: (1) notify and demand that the offending Master Servicer or Servicer cure the Event of Default and (2) give notice of uncured Events of Default to the Class. *Id.* Further, if the offending Master Servicer or Servicer do not timely cure the Event of Default, the Governing Agreements give U.S. Bank the power to institute legal action, terminate the offending Master Servicer or Servicer, or take over their servicing duties. *Id.* U.S. Bank is also required to notify Certificateholders of any uncured Events of Default so that the beneficiaries of the Covered Trusts, including members of the Class, can direct U.S. Bank on how to proceed. *Id.* The occurrence of an Event of Default also gives rise to a heightened duty requiring U.S. Bank to act as a fiduciary for Class members, *i.e.*, as a reasonably prudent person would act with regard to his own property under the circumstances. ¶¶53, 336.

**B.     U.S. Bank's Breaches of Contract and Duty of Trust**

The Complaint alleges that U.S. Bank discovered and had actual knowledge of R&W breaches, but failed to act as contractually obligated under the Governing Agreements. *See, e.g.*,

---

Services LLC; EMC Mortgage Corporation; Harbourside Mortgage Corporation; HSBC Mortgage Corporation (USA); American Home Mortgage Corp.; Waterfield; GreenPoint Mortgage Funding, Inc.; GMAC Mortgage Corporation; Select Portfolio Servicing, Inc.; Countrywide Home Loans Servicing LP; IndyMac Bank, FSB; SunTrust Mortgage, Inc.; New Century Mortgage Corporation; Wilshire Credit Corp.; PHH Mortgage Corp.; HomeEq Servicing Corp.; Washington Mutual Bank; and these entities' successors. *See* ¶182.

- 4 -

¶10.  For example, in addition to the litany of news reports, lawsuits, governmental actions, and congressional testimony publicizing the widespread lending failures by the Warrantors, the disastrous performance of the Loans and astoundingly-high delinquency rates itself caused U.S. Bank to have actual knowledge of R&W breaches.  *See generally* ¶¶63-92.  Indeed, by January 2009, most of the Covered Trusts were experiencing default rates ranging from 20% to 62% as well as significant losses that far exceeded historical losses – in excess of $930 million in losses within a few short years.  ¶91.  Moreover, in the following years, additional events revealed pervasive R&W breaches by many of the Warrantors to the Covered Trusts.  *See generally* ¶¶93-105.  By April 2011, U.S. Bank's knowledge of R&W breaches was absolute, when the extensive widespread lending abuses and intentional fraud committed by many of the Warrantors to the Covered Trusts and continued historically unprecedented default rates for the Loans were revealed.  *See generally* ¶¶106-152.  Despite actual knowledge of rampant R&W breaches, U.S. Bank failed to take the action it was contractually obligated to take under the Governing Agreements to protect the Covered Trusts and the Class.  ¶180.

Further, U.S. Bank had also obtained actual knowledge of rampant Events of Default impacting the Covered Trusts by at least October 2010.  *See generally* ¶¶181-218.  Specifically, the Master Servicers and Servicers by this time were engaged in widespread improper and/or illegal foreclosure proceedings and other loan servicing misconduct with respect to the Loans – and U.S. Bank actively participated in the misconduct.  *Id*.  In addition, U.S. Bank was also aware that the Master Servicers and Servicers knew of but failed to report countless Loans underlying the Covered Trusts that breached the Warrantors' R&Ws and, as a result, were likely to default.  *See* ¶244.  These Events of Default triggered U.S. Bank's fiduciary duty to act prudently on Class members' behalf.  However, U.S. Bank failed to take the requisite actions necessary to protect the Covered Trusts and

- 5 -

the Class.  *See* ¶¶298-304.  Instead, U.S. Bank acted to preserve its long-standing and lucrative business relationships with the Master Servicers, Servicers, and Warrantors – namely, by ignoring or assisting in conduct leading to the Events of Default.  *See* ¶305.

Consequently, thousands of defective Loans that breached R&Ws were not replaced, repurchased, or cured and rampant Events of Default went unchecked, in violation of the Governing Agreements' nearly identical provisions.  *See, e.g.*, Alvarado Decl., Ex. A, ¶¶21-24; *see also* ¶¶180, 245-294, 299.  High rates of foreclosure on Loans in the Covered Trusts have substantially driven up the Covered Trusts' expenses and losses, and the Class has suffered significant damages as a result of U.S. Bank's uniform common failures.  *See, e.g.*, ¶¶309-311.

## III.    ARGUMENT

Plaintiff's allegations present a single, common, predominant question of liability that is susceptible to common proof – whether U.S. Bank's common course of conduct breached the Governing Agreements' requirements.  Indeed, the predominance of common issues of fact and law, and the impracticability of bringing individual actions to redress U.S. Bank's wrongful conduct, renders this case ideally-suited for class certification.

Pursuant to Rule 23, class certification requires a two-step analysis.  First, a plaintiff must show that all four of the prerequisites of Rule 23(a) are satisfied: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation.  Fed. R. Civ. P. 23(a); *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010).  Second, a plaintiff must demonstrate that the action satisfies at least one of the subcategories of Rule 23(b).  In this action, plaintiff seeks certification under Rule 23(b)(3), which requires a showing that: (i) common questions of fact and law predominate over any individual questions; and (ii) a class action is superior to other available methods for adjudicating the

controversy.  Fed. R. Civ. P. 23(b)(3).  As further discussed below, each of the Rule 23(a) and 23(b)(3) requirements are met.

### A.        This Case Satisfies the Requirements of Rule 23(a)

#### 1.        The Class Is Numerous

Under Rule 23, a class is properly certified where "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Impracticable does not mean impossible; joinder may merely be difficult or inconvenient, rendering use of a class action the most efficient method to resolve plaintiffs' claims."  *Fogarazzo v. Lehman Bros.*, 263 F.R.D. 90, 96 (S.D.N.Y. 2009) (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007)).  The precise quantification or identification of potential class members is unnecessary at class certification "'because a court may make common sense assumptions regarding numerosity.'"  *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007).[7]  In this Circuit, the numerosity requirement is ***presumptively*** satisfied where there are 40 or more class members.  *See J.P. Morgan*, 301 F.R.D. at 131.  Importantly, the numerosity requirement is satisfied even where putative class members purchased across multiple RMBS offerings.  *See id.* ("'decisions in this district have concluded that a class may be certified even where certain sub-groups of that class do not meet the presumptive 40-member requirement'") (quoting *IndyMac*, 286 F.R.D. at 232); *Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D. 261, 266 (S.D.N.Y. 2014); *N.J. Carpenters Health Fund v. Residential Capital, LLC*, No. 08 CV 8781 (HB), 2013 U.S. Dist. LEXIS 180913, at *18 (S.D.N.Y. Dec. 27, 2013).

---

[7]        Citations and footnotes are omitted and emphasis is added unless otherwise noted.

Employing a conservative method of counting investors, plaintiff's expert has determined that there are at least 2,460 potential Class members in the Covered Trusts.  Alvarado Decl., Ex. A, ¶¶40-48.  Accordingly, the proposed Class clearly satisfies the numerosity requirement.

Further, investors in the Covered Trusts are geographically dispersed institutions and individuals with a wide range of investment amounts, from less than $10,000 to tens of millions of dollars.  *Id.*, ¶48; *see also Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) ("Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions [and] geographic dispersion of class members . . . .").  The joinder of these investors would be impractical. *See, e.g.*, *Merrill Lynch*, 277 F.R.D. at 105 (recognizing that joinder or individual adjudication of even 100 sophisticated investors' claims would be impractical).

### 2.  There Are Questions of Law and Fact Common to the Class

The "commonality" requirement prescribes that a plaintiff show "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This requirement is construed liberally and courts demand only that the plaintiff's and class members' claims "share a common question of law or of fact."  *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  As this Court has recognized, the "commonality" requirement is a "low hurdle."  *Dodona I*, 296 F.R.D. at 267. Indeed, the Supreme Court held that "'*[e]ven a single [common] question' will do*."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).  A question is common if its answer will resolve an issue relevant to the claims on a class-wide basis "in one stroke" (*id.* at 350), regardless of whether it will "overshadow potential individual issues."  *In re U.S. Foodservice Inc. Pricing Litig.*, No. 3:07-MD-1894 (CFD), 2011 WL 6013551, at *4 (D. Conn. Nov. 29, 2011), *aff'd*, 729 F.3d 108 (2d Cir. 2013).

In this Circuit, courts routinely find that commonality is satisfied in cases where a defendant has, through a course of common conduct: (a) breached a fiduciary duty it owed to a particular group of people (*see, e.g.*, *AFTRA*, 269 F.R.D. at 348); (b) breached an obligation in a form contract (*see, e.g.*, *U.S. Foodservice*, 729 F.3d at 123-27; *Seekamp*, 2012 U.S. Dist. LEXIS 33295, at *11; *Fleisher*, 2013 U.S. Dist. LEXIS 99959, at *28); *or* (c) made a statement in RMBS documents that is allegedly untrue in light of a common course of conduct (*see, e.g.*, *J.P. Morgan*, 301 F.R.D. at 116; *IndyMac*, 286 F.R.D. at 233-35; *Merrill Lynch*, 277 F.R.D. at 106).

Here, the commonality requirement is similarly satisfied in light of the liability issues to be answered and the evidence obtained to date.  Plaintiff alleges that U.S. Bank breached identical or substantially identical contractual terms to which all Class members were beneficiaries and that such breaches gave rise to both contractual and common law claims.  *See, e.g.*, ¶¶4, 30, 41.  The Governing Agreements for *all* of the Covered Trusts contain substantially *identical* terms.  *See, e.g.*, Alvarado Decl., Ex. A, ¶¶21-24.  Moreover, the Complaint alleges, and the evidence adduced to date confirms, that U.S. Bank engaged in a common course of behavior, undertaken by the same group of individuals at U.S. Bank using common (yet flawed) policies and procedures.  *See, e.g.*, Alvarado Decl., Ex. B at 79:12-80:4, 185:16-186:18, 189:13-191:27, 201:5-207:5.  Thus, each Class member must answer the same common questions in order to prove her individual claims, including:

- Whether U.S. Bank discovered that the Loans breached R&Ws made by the Warrantors;

- Whether U.S. Bank had knowledge of the Master Servicers' and Servicers' Events of Default;

- Whether U.S. Bank violated its contractual duties by failing to declare Events of Default and enforce the R&Ws rights; and

- Whether Class members were damaged as a result of U.S. Bank's conduct and, if so, to what extent.

Similarly, Class members would also face common questions in order to establish their individual breach of contract and breach of duty claims.  For example, each Class member would have to answer the following common questions to prove her claims individually:

- Whether U.S. Bank owed a duty to Certificateholders to avoid conflicts of interest;

- Whether U.S. Bank had actual knowledge of Events of Default;

- Whether U.S. Bank failed to act prudently in exercising its rights and power under the Governing Agreements after becoming aware of Events of Default; and

- Whether U.S. Bank was conflicted because of its repeated business and lucrative relationship with the Master Servicers and Servicers.

Accordingly, the commonality requirement's "low hurdle" is easily cleared.  *Dodona I*, 296 F.R.D. at 267.

### 3.    Plaintiff's Claims Are Typical of the Class

Rule 23(a)(3)'s "typicality" requirement is satisfied where a plaintiff's claims are typical of the claims of the proposed Class.  *See* Fed. R. Civ. P. 23(a)(3); *Vivendi*, 242 F.R.D. at 84-85 ("'[T]he typicality inquiry focuses on whether the claims of the putative class representatives are typical of the class sharing common questions.'").  Typicality is satisfied where "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'"  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."  *Robidoux*, 987 F.2d at 936-37; *Kottler v. Deutsche Bank AG*, No. 05 Civ. 7773 (PAC), 2010 WL 1221809, at *2 (S.D.N.Y. Mar. 29, 2010) ("The focus of the typicality inquiry is not on the plaintiffs' behavior, but rather on the defendant's actions."); *see also Fleisher*, 2013 U.S. Dist. LEXIS 99959, at *35; *Merrill Lynch*, 277 F.R.D. at 106 ("'minor variations'" in plaintiff's claims do not defeat typicality).

- 10 -

Notably, typicality "'does **not** require factual identity between the named plaintiffs and the class members, only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'"  *Dodona I*, 296 F.R.D. at 267.

Plaintiff's claims here indisputably arise from the same course of events as do the other Class members' claims.  *See, e.g.*, §I.A.2., *supra*.  Uniform practices employed by U.S. Bank that were applied across all of the Covered Trusts – namely, failure to give notice to the Master Servicers or Servicers of servicing breaches and failure to enforce R&Ws rights – give rise to plaintiff's and the Class's claims equally.  *Id.*

Indeed, plaintiff and the Class allege that U.S. Bank breached the same contractual and common law duties it owed to all Class members under the Governing Agreements for each Covered Trust.  That is, the course of conduct that gives rise to each Class member's claims is identical – U.S. Bank repeatedly failed to (i) give notice to each Covered Trust's Master Servicer or Servicer of its failure to fulfill its obligations; (ii) declare Events of Default when it knew they had occurred; and (iii) take any action regarding Loans that breached their R&Ws despite discovering such breaches. Multiple courts have found the typicality requirement satisfied under similar circumstances.  *See, e.g.*, *Policemen's Annuity and Benefit Fund v. Bank of Am., N.A.*, No. 1:12-CV-02865-KBF, 2015 U.S. Dist. LEXIS 177151 (S.D.N.Y. Mar. 16, 2015) (approving settlement class of breach of contract claims against trustee); *U.S. Foodservice*, 729 F.3d at 125-126 (certifying breach of contract claim class where underlying contracts varied); *Merrill Lynch*, 277 F.R.D. at 106-09 (rejecting defendants' unique defenses argument against typicality and recognizing that "as a global matter, Plaintiffs are not required, in proving typicality, to show that the situations of the named representatives and the class members are identical").

- 11 -

In sum, typicality is satisfied where, as here, "[t]he claims of the class members arise from the same course of events," *i.e.*, U.S. Bank's failure to fulfill its contractual and common law obligations owed to all Class members. *J.P. Morgan*, 301 F.R.D. at 132.

### 4.      Plaintiff Is Adequate

The adequacy requirement is also met.  "Rule 23(a)(4) requires a showing that the class representative will fairly and adequately protect the interests of other class members. . . .  The adequacy inquiry overlaps with the typicality inquiry, so that a finding of typicality usually suggests that the class representative will also satisfy the adequacy requirement." *Wallace v. Intralinks*, 302 F.R.D. 310, 316 (S.D.N.Y. 2014).  "The adequacy requirement is not demanding." *Id.*  "'Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2014 U.S. Dist. LEXIS 35326, at *18 (S.D.N.Y. Mar. 17, 2014) ("*DLJ*").

There are no antagonistic interests between plaintiff and the Class.  Indeed, plaintiff "'possess[es] the same interest and suffer[ed] the same injury as the class members.'" *Id.*  Plaintiff acquired and still holds Certificates in each of the Covered Trusts and was damaged as a result of U.S. Bank's failure to comply with its contractual and common law obligations.  Likewise, each Class member also acquired and held Certificates in the Covered Trusts, each was similarly damaged, and each shares the common goal of maximizing the amount recovered from U.S. Bank. *See* Alvarado Decl., Ex. A, ¶¶38-39, 54-56.

Royal Park is a limited liability company created by the Belgian State, Ageas (formerly known as Fortis Holding SA/NV), and BNP Paribas for the purpose of acquiring and managing a portion of Fortis Bank SA/NV's structured credit portfolio, which included its interests in the

- 12 -

Certificates at issue here (*i.e.*, the "legacy portfolio"). *See* ¶¶27-28; *see also* Alvarado Decl., Ex. C, ¶3. The transfer of the portfolio to Royal Park was accomplished upon the execution of the May 12, 2009 "Portfolio Transfer Agreement," which effectuated the assignment to Royal Park of all rights, title, and interest in the Certificates, including any claims held by the initial purchasers against U.S. Bank in this action. ¶28. In addition, Royal Park acquired RMBS in 2010 that were originally included within collateralized debt obligations ("CDOs") as part of the Portfolio Transfer Agreement. *Id.* The CDOs were liquidated in 2010 and Royal Park acquired certain of the RMBS within the CDOs along with all rights, title, and interest in such RMBS. *Id.*

Royal Park's mission is to minimize the downside risk and maximize recoveries on the legacy portfolio, including the Certificates. *See* Alvarado Decl., Ex. C, ¶3. Royal Park, like other members of the Class, suffered damages arising from U.S. Bank's conduct in failing to enforce R&W claims against the Warrantors and failing to protect investors in the Covered Trusts from loan servicing failures of which it was aware. *See* ¶24. Royal Park's interests are directly aligned with those of Class members – to maximize the amount recovered from U.S. Bank for its failure to fulfill its duties to the Class. *See, e.g.*, *Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 121 (E.D.N.Y. 2015) (no conflict of interest between class members and class representative candidate where interests in maximizing class recovery aligned).

Royal Park has taken its role and obligations to the putative Class seriously and has acted to protect diligently the interests of the Class. At each stage, plaintiff has actively participated in, supervised, and monitored the litigation. *See* Alvarado Decl., Ex. C, ¶4 (explaining that Royal Park "receive[s] regular status reports from Robbins Geller," "participate[s] in numerous discussions with counsel concerning strategy and significant developments in this case," and "has supervised and monitored, and continues to supervise and monitor, Robbins Geller's prosecution of this action").

- 13 -

Through its experienced counsel, plaintiff has, *inter alia*, authorized the investigation of the facts and the filing of the Complaint, successfully litigated this action past the motion to dismiss stage, pursued discovery from U.S. Bank and numerous third parties, and has responded to substantial discovery requested by U.S. Bank, including sitting for a Rule 30(b)(6) deposition. *See id.* In fact, Royal Park's discovery efforts have led to the production by U.S. Bank of nearly 34,000 documents and an additional 92,000 documents from relevant third parties. For its part, Royal Park has already produced nearly ***175,000 documents*** (totaling over ***1.2 million pages***) to date. Royal Park has also certified that it is willing and able to provide further deposition and trial testimony, oversee further motion practice, and participate in settlement discussions. *See* Alvarado Decl., Ex. C, ¶5.

In sum, Royal Park "understands that as class representative, it owes a fiduciary duty to all members of the class and will seek to obtain the largest recovery for the class." *Id.*, ¶6. Thus, Royal Park's actions along with the common interest it shares with the Class in prosecuting this case to a successful resolution, fully satisfy Rule 23(a)(4)'s adequacy standard.

### B.   The Requirements of Rule 23(b)(3) Are Also Satisfied

In addition to meeting the prerequisites of Rule 23(a), this action also satisfies Rule 23(b)(3)'s requirements that common questions of law or fact predominate over individual questions and that a class action is the superior method to adjudicate this dispute.

#### 1.   Common Questions of Law and Fact Predominate Under Rule 23(b)

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The predominance requirement is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized

- 14 -

proof.'" *U.S. Foodservice*, 729 F.3d at 118 (quoting *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010)).  This standard "'does not require a plaintiff to show that there are no individual issues.'"  *IndyMac*, 286 F.R.D. at 236.  Instead, it requires that "'a court's inquiry [be] directed primarily toward whether the issue of liability is common to members of the class.'"  *See J.P. Morgan*, 301 F.R.D. at 136 (quoting *IndyMac*, 286 F.R.D. at 236).

In order to prevail on its breach of contract claims, the Class must demonstrate "'(1) the existence of a contract, (2) performance of the contract by one party, (3) breach by the other party, and (4) damages suffered as a result of the breach.'"  *Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, 109 F. Supp. 3d 587, 596-97 (S.D.N.Y. 2015).  The primary common questions the Class must address to establish its breach of contract claims will be whether U.S. Bank: (1) failed to enforce R&W breaches upon discovering them; (2) failed to notify Master Servicers and Servicers of their failures to fulfill their obligations after learning of Events of Default; (3) failed to declare Events of Default when it learned of them; (4) failed to act as a reasonable person would to protect its own assets after learning of Events of Default; and (5) failed to notify investors upon learning of breaches and Events of Default.  With respect to the Class's breach of trust claims, the predominant question will be whether U.S. Bank put its own interests ahead of the Class when it failed to take the necessary actions despite knowing of Events of Default and R&W breaches.  All of these questions will necessarily be answered through common proof.

Indeed, the existence and scope of U.S. Bank's contractual duties and obligations to Class members will be established through common evidence – specifically, the substantially identical provisions of the Governing Agreements for the Covered Trusts.  With respect to these obligations, the requirements imposed on and conduct expected of U.S. Bank is the same for all of the Covered Trusts and as to all Class members.  *U.S. Foodservice*, 729 F.3d at 124.

- 15 -

In fact, each of the Covered Trusts' Governing Agreements used substantially identical language to outline U.S. Bank's duties to Certificateholders.  *See, e.g.*, Alvarado Decl., Ex. A, ¶¶21-24 & Attachments 1, 2.  Thus, while there are several contracts at issue in the action, no individualized inquiries will be necessary.  Under similar circumstances, courts in this Circuit have regularly found the predominance requirement to be satisfied.  *See, e.g.*, *Fleisher*, 2013 U.S. Dist. LEXIS 99959, at *41-*42 ("There is widespread agreement that certification under Rule 23(b)(3) is warranted for claims that involve contracts that . . . contain the same or essentially the same terms.").[8]

Common evidence will also be used to demonstrate that U.S. Bank breached the obligations outlined above.  As U.S. Bank's corporate designee testified, ████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████

---

[8]     Even where multiple contracts are at issue, class treatment is nonetheless appropriate so long as the relevant provisions are similar, thereby causing individual issues not to predominate.  *Wu v. Pearson Educ., Inc.*, 277 F.R.D. 255, 265 (S.D.N.Y. 2011) (granting class certification when the court was "called upon to consider contracts that [took] a number of different forms" because claims asserted "require[d] the interpretation of a single provision that varie[d] little in its form from contract to contract"); *see also Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) (holding that "[b]ecause all of the dealer agreements were materially similar" whether the defendant breached its obligation to reduce the wholesale price of gas "was a question common to the class and the issue of liability was appropriately determined on a class-wide basis"), *aff'd*, 545 U.S. 546 (2005).

[9] Thus, a discrete number of account managers and account administrators were responsible for administering U.S. Bank's trustee duties for all of

---

9

1217552_1

the Covered Trusts.  *See* Ex. J.  Accordingly, "'[e]ach of the Certificates purchased by the Plaintiffs and the Class were [administered] pursuant to [the] same process by the same Defendants.'"  *Merrill Lynch*, 277 F.R.D. at 113.  "The alleged flaws common to that process" would "be the subject of common proof."  *Id*.

Indeed, U.S. Bank's conduct, which was subject to the common controls established by its various policies and procedures, will predominate as to each Covered Trust.  *See J.P. Morgan*, 301 F.R.D. at 136 (common questions predominate where "[t]he class members' proof of liability will principally require an examination of the [defendant's conduct] pursuant to the same basic process"); *Merrill Lynch*, 277 F.R.D. at 113 (same).  Likewise, U.S. Bank's alleged discovery that a vast number of underlying Loans violated R&Ws made in the Governing Agreements will also be subject to common proof.  *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 163 (2d Cir. 2012) (recognizing that class-wide evidence will be offered to prove that a given entity abandoned its stated underwriting guidelines).

For example, the Class will commonly seek to prove that the Loans underlying the Covered Trusts breached the R&Ws in the Governing Agreements through loan sampling and re-underwriting.  Courts have regularly found loan sampling and re-underwriting to be an appropriate method to answer common questions of whether loans in multiple offerings were originated in breach of stated guidelines.  *See DLJ*, 2014 U.S. Dist. LEXIS 35326, at *30-*31 ("'[I]nformation . . . to the effect that underwriting guidelines were actually followed . . . [is] largely subject to generalized proof.'"); *J.P. Morgan*, 301 F.R.D. at 137 (same).  Common evidence of the Covered Trusts' massive economic losses, widely disseminated investigative reports of origination and servicing failures and predatory schemes at issue here will all be common to the Class – and will collectively demonstrate that U.S. Bank knew of the myriad problems in the Covered Trusts.

- 18 -

Lastly, each Class member's damages will be measured by a common methodology based on U.S. Bank's and third parties' published data with respect to the performance of the Loans and a re-underwriting analysis of a sample of the Loans.  As set forth in plaintiff's expert report, with respect to R&W breaches, the impact of U.S. Bank's alleged failure to act can be measured by analyzing the extent to which losses in each Covered Trust were associated with Loans that breached the Warrantor's R&Ws.  Alvarado Decl., Ex. A, ¶¶36-39, 49-58.  The analysis will include an examination of Loans within a Covered Trust to identify those that were materially and adversely affected by the Warrantors' R&W breaches and to determine the extent to which losses on these Loans would have been avoided if U.S. Bank had enforced the Warrantors' obligations to repurchase, replace, or cure defective loans.  *Id.*  Specifically, this analysis will involve modeling collateral cash flows assuming Warrantors had fulfilled their obligations to allow the trust to "put-back" loans whose value was affected by R&W breaches.  *Id.*  Similar to claims related to U.S. Bank's alleged failure to enforce R&W provisions, the impact of the alleged servicing failures will also involve the analysis of Loans within a Covered Trust to identify Events of Default by Master Servicers and Servicers and to assess the extent to which these resulted in higher losses or lower value to the collateral pool.  *Id.*  The damage calculations are capable of being performed in a formulaic manner such that each Class member's damages calculation is performed in the same manner.  *Id.*, ¶58.

Although the specific amount of each Class member's damages may vary, this "does not defeat certification [since] the method of calculating damages is [still] common to the class." *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 181 (S.D.N.Y. 2008); *see also Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (upholding well-established rule in Second Circuit that "'the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class

certification' under Rule 23(b)(3)"); *Dodona I*, 296 F.R.D. at 271 (noting that where, as here, plaintiff's expert has offered a "class-wide methodology for calculation of damages, any necessary individual inquiries are a far cry from the scope of individualized issues of proof that would defeat a finding of predominance under Rule 23(b)(3)").  As a result, plaintiff will be able to establish U.S. Bank's liability and the amount of any damages through generalized proof and a class-wide, common methodology, respectively.  Thus, Rule 23(b)(3)'s predominance requirement is satisfied.[10]

### 2.    A Class Action Is Superior

Rule 23(b)(3) also requires plaintiff to establish "superiority," that a class action is a better way to proceed versus some other method.  Courts have uniformly recognized that the class action device is superior to other available methods for the fair and efficient resolution of class actions.

To determine whether the "superiority" requirement of Rule 23(b)(3) is satisfied, the Court must consider the following:

(A)    the class members' interests in individually controlling the prosecution . . . of separate actions;

(B)    the extent and nature of any litigation concerning the controversy already begun by . . . class members;

(C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)    the likely difficulties in managing a class action.

*See* Fed. R. Civ. P. 23(b)(3).  Here, each factor weighs strongly in favor of class certification.

First, there is no overwhelming interest by Class members to proceed individually.  "'[T]he existence of large individual claims that are sufficient for individual suits is no bar to a class,'"

---

[10]    With respect to plaintiff's tort claim – the breach of trust claim – Royal Park seeks punitive damages, as well as the profits U.S. Bank derived from its breach of trust/conflict of interest.  Both types of damages are readily determinable on a class-wide basis following the determination of compensatory damages, as described herein.

particularly where, as here, "'the advantages of unitary adjudication exist to determine the defendant's liability.'" *AFTRA*, 269 F.R.D. at 355; *accord IndyMac*, 286 F.R.D. at 243; *Merrill Lynch*, 277 F.R.D. at 121; *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918, at *42 (S.D.N.Y. July 27, 2007) (noting that any class members who "would prefer to individually control the prosecution of their claims . . . have the opportunity to opt out or be represented by counsel of their own choice"). Moreover, and as already discussed, the sizes of Class members' investments vary widely, from less than $10,000 to tens of millions of dollars. *See* Alvarado Decl., Ex. A, ¶48.

Additionally, the maintenance of a class action in this District ensures an efficient expenditure of resources, will save an enormous amount in litigation costs for all parties, and will allow the parties to more efficiently prosecute their claims and defenses. *See Indymac*, 286 F.R.D. at 243; *Seekamp*, 2012 U.S. Dist. LEXIS 33295, at *41. Further, because the proposed Class members are located in geographically dispersed areas (*see* Alvarado Decl., Ex. A, ¶48), and because a majority of the Certificates in the Covered Trusts were issued by registrants in this District which has overseen the majority of complex cases relating to mortgage-backed securities, the Southern District of New York is a desirable forum for this class action.

Finally, plaintiff does not foresee any management difficulties that will preclude this case from being maintained as a class action. Consistent with the requirements of Rule 23(b)(3), the certification of this case as a class action would not only be superior to other available methods for fairly and efficiently adjudicating the controversy, it would also be the ***best method*** for fairly and efficiently litigating the claims of all members of the proposed Class.

- 21 -

**C.     The Court Should Appoint Plaintiff's Counsel as Class Counsel Under Rule 23(g)**

The last requirement of Rule 23(g)(4) is that the Court must appoint counsel who will fairly and adequately represent the Class.  In appointing class counsel, Rule 23(g)(1)(A) requires the Court to consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A); *AFTRA*, 269 F.R.D. at 346.

Plaintiff is represented by Robbins Geller, whose lawyers have served as class counsel in hundreds of securities class actions.  *See* Alvarado Decl., Ex. K.  Courts in this Circuit have repeatedly recognized the expertise and ability of Robbins Geller lawyers to effectively litigate complex class actions, including RMBS class actions.  *See, e.g.*, *Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 158 (S.D.N.Y. 2012) ("[C]ourts within this Circuit have repeatedly found Robbins Geller to be adequate and well-qualified for the purposes of litigating class action lawsuits."); *Sgalambo v. McKenzie*, 268 F.R.D. 170, 174 (S.D.N.Y. 2010) (characterizing Robbins Geller as a "highly competent plaintiffs' firm[] with substantial securities class action experience"); *J.P. Morgan*, 301 F.R.D. at 135 (noting Robbins Geller's "experience[] in securities class action litigation" and finding it "qualified to conduct this [RMBS] lawsuit"); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, No. 1:08-cv-10783 (LAP), Transcript at 11 (S.D.N.Y. May 2, 2016) (noting in connection with final approval of precedent-setting RMBS class action that Robbins Geller can be "proud of what you've done for your clients.  You've done an extraordinarily good job.").

In addition, since engaged to conduct this litigation, Robbins Geller has demonstrated its willingness to commit substantial time and resources to representing the proposed Class in this action and has undertaken significant discovery to uncover the evidence needed to support the Class's claims.  *See*, §III.A.4., *supra*.  The ability of Robbins Geller to fairly and adequately represent the interests of the Class further leads to the conclusion that the requirements of Rule 23(a)(4) and Rule 23(g) are satisfied and that plaintiff's counsel should be appointed as Class Counsel pursuant to Rule 23(g).

## IV.     CONCLUSION

For the foregoing reasons, Royal Park respectfully requests the Court to: (a) certify this action as a class action pursuant to Rule 23(a) and Rule 23(b)(3); (b) appoint Royal Park as the representative of the proposed Class; and (c) appoint Robbins Geller as Class Counsel.

DATED:  December 21, 2016                    Respectfully submitted,

ROBBINS GELLER RUDMAN
   & DOWD LLP
ARTHUR C. LEAHY
STEVEN W. PEPICH
LUCAS F. OLTS
DARRYL J. ALVARADO
HILLARY B. STAKEM


s/ DARRYL J. ALVARADO
DARRYL J. ALVARADO

655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
artl@rgrdlaw.com
stevep@rgrdlaw.com
lolts@rgrdlaw.com
dalvarado@rgrdlaw.com
hstakem@rgrdlaw.com

- 23 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

Attorneys for Plaintiff

- 24 -

**APPENDIX A**

1.      Banc of America Funding 2007-C Trust ("BAFC 2007-C")

2.      BNC Mortgage Loan Trust 2007-2 ("BNCMT 2007-2")

3.      Bear Stearns Asset Backed Securities I Trust 2006-AC2 ("BSABS 2006-AC2")

4.      Bear Stearns Asset Backed Securities I Trust 2006-AC5 ("BSABS 2006-AC5")

5.      GreenPoint Mortgage Funding Trust 2007-AR1 ("GPMF 2007-AR1")

6.      GreenPoint Mortgage Funding Trust 2007-AR2 ("GPMF 2007-AR2")

7.      GreenPoint Mortgage Funding Trust 2007-AR3 ("GPMF 2007-AR3")

8.      Home Equity Asset Trust 2006-5 ("HEAT 2006-5")

9.      Home Equity Asset Trust 2006-6 ("HEAT 2006-6")

10.     Lehman XS Trust 2006-10N ("LXS 2006-10N")

11.     Lehman XS Trust 2006-15 ("LXS 2006-15")

12.     Lehman XS Trust 2007-7N ("LXS 2007-7N")

13.     MASTR Asset Backed Securities Trust 2006-HE2 ("MABS 2006-HE2")

14.     Merrill Lynch Mortgage Investors Trust 2006-WMC2 ("MLMI 2006-WMC2")

15.     Structured Adjustable Rate Mortgage Loan Trust 2006-9 ("SARM 2006-9")

16.     Structured Asset Securities Corporation Mortgage Loan Trust 2006-NC1 ("SASC 2006-NC1")

17.     Structured Asset Securities Corporation Mortgage Loan Trust 2006-WF2 ("SASC 2006-WF2")

18.     Structured Asset Securities Corporation Mortgage Loan Trust 2006-WF3 ("SASC 2006-WF3")

19.     Structured Asset Securities Corporation Mortgage Loan Trust 2007-EQ1 ("SASC 2007-EQ1")

20.     Structured Asset Securities Corporation Mortgage Loan Trust 2007-WF1 ("SASC 2007-WF1")

21.     WaMu Mortgage Pass-Through Certificates Series 2007-OA2 Trust ("WAMU 2007-OA2"

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 21, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 21, 2016.

s/ DARRYL J. ALVARADO
DARRYL J. ALVARADO

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  DAlvarado@rgrdlaw.com

1217552_1

# Mailing Information for a Case 1:14-cv-02590-VM-JCF Royal Park Investments SA/NV v. U.S. Bank National Association

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com,nhorstman@rgrdlaw.com,lmix@rgrdlaw.com

- **Thomas F. Berndt**
  tberndt@robinskaplan.com,mschroeder@robinskaplan.com

- **Jennifer Nunez Caringal**
  jcaringal@rgrdlaw.com

- **Rollin Bernard Chippey**
  rchippey@morganlewis.com,robert.thompson@morganlewis.com

- **Michael Collyard**
  mcollyard@robinskaplan.com,rhoule@robinskaplan.com,tklukow@robinskaplan.com

- **Sherli Furst**
  SFurst@RobinsKaplan.com

- **Tera Marie Heintz**
  theintz@morganlewis.com,dlang@morganlewis.com,ewoodward@morganlewis.com

- **Morgia Dampf Holmes**
  mholmes@robinskaplan.com

- **Peter Cooper Ihrig**
  pihrig@robinskaplan.com

- **Joseph Marco Janoski Gray**
  mjanoski@rgrdlaw.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Michael Stephan Kraut**
  mkraut@morganlewis.com,rschaffer-goldman@morganlewis.com,nymanagingclerk@morganlewis.com

- **Arthur C. Leahy**
  artl@rgrdlaw.com,jillk@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **David Leichtman**
  dleichtman@robinskaplan.com,bchan@robinskaplan.com,aoyewoleturner@robinskaplan.com

- **Cody R. Lejeune**
  clejeune@rgrdlaw.com

- **Martin Richard Lueck**
  mlueck@robinskaplan.com,jaangell@robinskaplan.com

- **David E. Marder**
  DMarder@RobinsKaplan.com,KRichardson@RobinsKaplan.com,LDimillio@RobinsKaplan.com

- **Lucas F. Olts**
  lolts@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Hillel Ira Parness**
  hip@hiplaw.com,hillel.parness@gmail.com

- **Steven W. Pepich**
  stevep@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com

- **Stacey Paige Slaughter**
  sslaughter@robinskaplan.com,mrud@robinskaplan.com

- **Benjamin Patrick Smith**
  bpsmith@morganlewis.com,dlang@morganlewis.com,rbohnet@morganlewis.com,ewoodward@morganlewis.com

- **Hillary B. Stakem**
  hstakem@rgrdlaw.com

- **Chelsea Walcker**
  cwalcker@robinskaplan.com,mschroeder@robinskaplan.com

- **Samuel Lewis Walling**
  swalling@robinskaplan.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,HDeshmukh@rgrdlaw.com,e_file_sf@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)