UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

ROYAL PARK INVESTMENTS SA/NV,
Individually and on Behalf of All Others
Similarly Situated,

                          Plaintiff,

    vs.

U.S. BANK NATIONAL ASSOCIATION, as
Trustee,

                        Defendant.

———————————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 14-cv-02590-VM

CLASS ACTION

PLAINTIFF'S REPLY MEMORANDUM OF
LAW IN FURTHER SUPPORT OF ITS
MOTION FOR CLASS CERTIFICATION
AND APPOINTMENT OF CLASS
REPRESENTATIVE AND CLASS
COUNSEL

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ..................................................................................................1

II.  ARGUMENT .......................................................................................................2

    A.  The Proposed Class Definition Is Objective and Workable ...................2

    B.  The Proposed Class Is Ascertainable .....................................................3

    C.  Common Questions of Law and Fact Predominate .................................5

        1.  USB's Statute of Limitations Defense Does Not Preclude
            Certification ..................................................................................5

        2.  Issues of Potential Assignments Are Speculative and Irrelevant.................6

        3.  Damages Can Be Proven on a Class-Wide Basis .......................8

    D.  The Class Is Numerous ..........................................................................10

    E.  RPI Is Both Adequate and Typical .......................................................11

    F.  A Class Action Is Superior ...................................................................13

III.  CONCLUSION...................................................................................................13

## TABLE OF AUTHORITIES

Page

**CASES**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
  __ U.S. __, 133 S. Ct. 1184 (2013) ........................................................................ 8

*Applestein TTEE FBO D.C.A. Grantor Tr. v. Province of Buenos Aires,*
  415 F.3d 242 (2d Cir. 2005) .................................................................................. 11

*Babcock v. Computer Assocs. Int'l,*
  212 F.R.D. 126 (E.D.N.Y. 2003) ........................................................................... 11

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
  222 F.3d 52 (2d Cir. 2000) ............................................................................... 12, 13

*Barr v. McGraw-Hill,*
  710 F. Supp. 95 (S.D.N.Y. 1989) ............................................................................ 5

*Brecher v. Republic of Arg.,*
  806 F.3d 22 (2d Cir. 2015) ............................................................................. 2, 3, 4

*Brisero v. ConAgra Foods Inc.,*
  844 F.3d 1121 (9th Cir. 2017) ......................................................................... 4, 6, 7

*Brown v. Hain Celestial Grp.,*
  No. C 11-03082 LB, 2014 WL 6483216
  (N.D. Cal. Nov. 18, 2014) ....................................................................................... 8

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC,*
  310 F.R.D. 69 (S.D.N.Y. 2015) .............................................................................. 8

*Comcast Corp. v. Behrend,*
  __ U.S. __, 133 S. Ct. 1426 (2013) ..................................................................... 8, 9

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.,*
  502 F.3d 91 (2d Cir. 2007) ................................................................................... 3, 4

*Dodona I, LLC v. Goldman, Sachs & Co.,*
  296 F.R.D. 261 (S.D.N.Y. 2014) ...................................................................... 7, 8, 12

*Dunnigan v. Metro. Life Ins. Co.,*
  214 F.R.D. 125 (S.D.N.Y. 2003) ............................................................................ 4

*Farey-Jones v. Buckingham,*
  132 F. Supp. 2d 92 (E.D.N.Y. 2001) ...................................................................... 6

- ii -

Page

*Fort Worth Emps. Ret. Fund v. J.P. Morgan Chase & Co.*,
   301 F.R.D. 116 (S.D.N.Y. 2014) .......................................................................2, 13

*Freeland v. Iridium World Commc'ns Ltd.*,
   233 F.R.D. 40 (D.D.C. 2006) ...................................................................................4

*Gregory v. Stewart's Shops Corp.*,
   No. 7:14-cv-33, 2016 U.S. Dist. LEXIS 89576
   (N.D.N.Y. July 8, 2016) ............................................................................................2

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
   239 F.R.D. 363 (S.D.N.Y. 2007) .............................................................................1

*In re Alstom SA Sec. Litig.*,
   253 F.R.D. 266 (S.D.N.Y. 2008) .............................................................................9

*In re Elec. Books Antitrust Litig.*,
   No. 11 MD 2293 (DLC), 2014 WL 1282293
   (S.D.N.Y. Mar. 28, 2014) ......................................................................................10

*In re Facebook, Inc.*,
   312 F.R.D. 332 (S.D.N.Y. 2015) .............................................................................3

*In re Fresh Del Monte Pineapples Antitrust Litig.*,
   No. 1:04-md-1628 (RMB), 2008 WL 5661873
   (S.D.N.Y. Feb. 20, 2008) .......................................................................................13

*In re Interpublic Sec. Litig.*,
   No. 02 Civ. 6527 (DLC), 2003 U.S. Dist. LEXIS 19784
   (S.D.N.Y. Nov. 7, 2003) ..........................................................................................9

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
   241 F.R.D. 435 (S.D.N.Y. 2007). ..........................................................................10

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
   209 F.R.D. 323 (S.D.N.Y. 2002) .............................................................................5

*In re Rezulin Prods. Liab. Litig.*,
   210 F.R.D. 61 (S.D.N.Y. 2002) ...............................................................................6

*In re Rodriguez*,
   695 F.3d 360 (5th Cir. 2012) ...................................................................................2

- iii -

Page

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. 397 (S.D.N.Y. 2015) ............................................................8

*In re US Foodserv. Pricing Litig.*,
   729 F.3d 108 (2d Cir. 2013)...............................................................13

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001)..................................................................1

*In re Vitamin C Antitrust Litig.*,
   279 F.R.D. 90 (E.D.N.Y. 2012) ............................................................4

*In re WorldCom, Inc. Sec. Litig.*,
   219 F.R.D. 267 (S.D.N.Y. 2003) ..........................................................5

*Johnson v. Nextel Commc'ns, Inc.*,
   780 F.3d 128 (2d Cir. 2015)..................................................................7

*Kaplan v. S.A.C. Cap. Advisors, L.P.*,
   311 F.R.D. 373 (S.D.N.Y. 2015) (Marrero, J.)......................................8

*Langan v. Johnson & Johnson Consumer Cos.*,
   No. 3:13-cv-1470 (JAM), 2017 U.S. Dist. LEXIS 35703
   (D. Conn. Mar. 13, 2017)......................................................................3

*Lee v. ABC Carpet & Home*,
   236 F.R.D. 193 (S.D.N.Y. 2006) ........................................................10

*Mazzei v. Money Store*,
   288 F.R.D. 45 (S.D.N.Y. 2012) ............................................................2

*McLaughlin v. Am Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008)..................................................................6

*Process Am. v. Cynergy Holdings*,
   839 F.3d 125 (2d Cir. 2016)................................................................10

*Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
   277 F.R.D. 97 (S.D.N.Y. 2011) ..........................................................13

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015)..................................................................9

- iv -

Page

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)................................................................................................10

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
  No. 1:14-cv-04394-AJN-BCM, slip op. (S.D.N.Y. Mar. 21, 2017) .........................................2

*Ruiz v. Citibank, N.A.*,
  No. 10 Civ. 5950, 2015 WL 4629444
  (S.D.N.Y. Aug. 4, 2015) .....................................................................................................2

*Tsereteli v. Residential*,
  283 F.R.D. 199 (S.D.N.Y. 2012) ........................................................................................12

*United States v. City of New York*,
  276 F.R.D. 22 (E.D.N.Y. 2011) ........................................................................................7, 8

*Vaccariello v. XM Satellite Radio*,
  295 F.R.D. 62 (S.D.N.Y. 2011) ...........................................................................................6

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
  Rule 23 ......................................................................................................................4, 6, 7, 9
  Rule 23(b)(3)..................................................................................................................8, 9

17 Code of Federal Regulations
  §240.10b-5 ........................................................................................................................6

**SECONDARY AUTHORITIES**

1 Wm. B. Rubenstein, *Newberg on Class Actions*
  (5th ed. 2016 Supp.)
  §2:3 .................................................................................................................................11

1255526_1

## GLOSSARY OF DEFINED TERMS

| Defined Term | Full Name |
|---|---|
| Alvarado Decl. | Declaration of Darryl J. Alvarado in Support of Plaintiff's Reply Memorandum of Law in Further Support of Its Motion for Class Certification and Appointment of Class Representative and Class Counsel; Opposition to U.S. Bank's Motion to Exclude the Expert Report of W. Scott Dalrymple, CFA; and in Support of Plaintiff's Motion to Exclude the Expert Report and Testimony of Christopher M. James, Ph.D., filed concurrently herewith. *See* Dkt. No. 209. |
| Complaint | Class Action and Verified Derivative Complaint for Breach of the Trust Indenture Act, Breach of Contract, and Breach of Trust, Dated April 11, 2014. |
| Dalrymple Opp. | Plaintiff's Opposition to U.S. Bank's Motion to Exclude the Expert Report of W. Scott Dalrymple, filed concurrently herewith. *See* Dkt. No. 206. |
| Dalrymple Rebuttal | Rebuttal Report of W. Scott Dalrymple, CFA, dated April 14, 2017, filed concurrently herewith. *See* Dkt. No. 209, Ex. 14. |
| Dalrymple Report | Expert Report of W. Scott Dalrymple, CFA, dated December 21, 2016. *See* Dkt. No. 152, Ex. A. |
| DTC | The Depository Trust Company |
| EOD | Event of Default |
| Mot. | Plaintiff Royal Park Investments Sa/Nv's Memorandum of Law in Support of Its Motion for Class Certification and Appointment of Class Representative and Counsel. *See* Dkt. No. 151. |
| Opp. | Memorandum of Law in Opposition to Motion for Class Certification of Plaintiff Royal Park Investments SA/NV. *See* Dkt. No. 182. |
| R&W | Representation & Warranty |
| RPI | Royal Park Investments SA/NV |
| USB | U.S. Bank National Association |

I.    **INTRODUCTION**

RPI has demonstrated that the existence of USB's breaches of contract and trust, when those

breaches occurred, USB's knowledge of R&W violations and EODs, and how the Trusts were

damaged, are fundamental questions of fact that are subject to generalized proof for ***all*** class

members.  Mot. at 9-10, 14-20 (Dkt. No. 151).  The record to date shows that the Governing

Agreements for ***all*** of the Trusts contain substantially identical terms, and the same group of

individuals administered the Trusts pursuant to common policies and procedures.  *Id.*  Plainly,

evidence of USB's liability is common to ***all*** class members.

USB ignores the pervasive common issues and manufactures "individualized issues" of

damages, affirmative defenses,  and supposed "unique defenses."  These arguments are meritless.

USB's silence on the predominately common liability issues speaks volumes, for "[c]ommon issues

may predominate when ***liability can be determined on a class-wide basis***, even when there are some

individualized damages issues."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139

(2d Cir. 2001).[1]  Thus, "'when determining whether common issues predominate, ***courts focus on***

***the liability issue*** . . . and if the liability issue is common to the class, common questions

predominate over individual ones.'"  *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 372-

73 (S.D.N.Y. 2007).  Nor is RPI subject to any unique defenses that will distract from its ability to

represent the interests of class members, as it has done to date as named plaintiff and will continue to

do as class representative.[2]

---

[1]    Unless noted otherwise, all emphasis is added and all citations are omitted.

[2]    USB's heavy reliance upon a motion for voluntary dismissal of a different action by a different plaintiff as
evidence against certification in this case is misplaced.  Opp. at 1 (Dkt. No. 182) (citing *Ret. Bd. of the Policemen's
Annuity & Benefit Fund of the City of Chi. v. Bank of N.Y. Mellon*, No. 1:11-cv-05459, Dkt. No. 202 (S.D.N.Y. 2016)).
USB states that the case was dismissed "without any recovery," but fails to mention that the case was voluntarily
dismissed because 85% of the plaintiffs' claims were precluded by an ***$8 billion settlement*** in another action.  Alvarado
Decl., Ex. 1 at 5.

- 1 -

1255526_1

## II.    ARGUMENT

### A.    The Proposed Class Definition Is Objective and Workable

USB's claim that RPI's proposed class is "an unworkable fail-safe class" (Opp. at 5) is false – a fail-safe class definition would require members be damaged "as a result of the conduct for which USB is *found liable*." *See Gregory v. Stewart's Shops Corp.*, No. 7:14-cv-33 (TJM/ATB), 2016 U.S. Dist. LEXIS 89576, at *64-*65 (N.D.N.Y. July 8, 2016); *In re Rodriguez*, 695 F.3d 360, 369-70 (5th Cir. 2012).[3]  RPI's proposed class, on the other hand, does not contain any language presupposing liability, but merely links putative class members' alleged injuries to the particular misconduct ascribed to USB in the Complaint. *See* Mot. at 1.  Such a definition – requiring that class members have suffered damage as a result of defendant's misconduct – is standard in class definitions, and was recently approved by Judge Nathan in *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 1:14-cv-04394-AJN-BCM, Dkt. No. 350 at 25 (S.D.N.Y. Mar. 21, 2017) ("*Deutsche Bank* Order"); *see also Fort Worth Emps. Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 143-44 (S.D.N.Y. 2014) (same).

RPI's proposed class definition is also sufficiently definite.  USB's complaint that RPI's expert has not yet conclusively identified all investors damaged by USB's conduct is irrelevant – RPI is *not required* to identify "a complete list of class members at the certification stage." *Brecher v. Republic of Arg.*, 806 F.3d 22, 25 n.2 (2d Cir. 2015).  Further, USB's claim that investors who had assigned away their claims would lack Article III standing yet still be class members is circular and, in any event, incorrect.  To the extent that an assignor lacked any injury-in-fact by virtue of an assignment, the assignor would not be entitled to damages as a matter of law and would therefore be

---

[3]      The cases cited by USB do not suggest otherwise. *See Mazzei v. Money Store*, 288 F.R.D. 45, 55 (S.D.N.Y. 2012) (class definition including language that attorneys' fees at issue "were not permitted" constituted fail-safe class because it required merits, not standing, determinations before class members could be identified); *Ruiz v. Citibank, N.A.*, No. 10 Civ. 5950, 2015 WL 4629444, at *7 (S.D.N.Y. Aug. 4, 2015) (finding it inappropriate to modify state-law employment law classes to specifically exclude members "that were not improperly denied overtime").

excluded from the class. *See Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91,

101-02 (2d Cir. 2007); *see also Deutsche Bank Order* at 24 ("The Court is unaware of any case

denying class certification purely on the basis of a proposed class definition that could be read to

include both assignors and assignees of litigation rights, and it sees no reason to do so here.").

### B.   The Proposed Class Is Ascertainable

A class definition must be "'sufficiently definite so that it is administratively feasible for the

court to determine whether a particular individual is a member.'" *Brecher*, 806 F.3d at 24.  But

"'[t]he standard for ascertainability is not demanding.  It is designed only to prevent the certification

of a class whose membership is truly *indeterminable*.'" *In re Facebook, Inc.*, 312 F.R.D. 332, 352-

53 (S.D.N.Y. 2015).  The fact that such a process might be "'administratively burdensome,'" or

require "an analysis of the merits," does not render the class unascertainable. *See Langan v. Johnson

& Johnson Consumer Cos.*, No. 3:13-cv-1470 (JAM), 2017 U.S. Dist. LEXIS 35703, at *42-*43 (D.

Conn. Mar. 13, 2017) ("'[A]scertainability difficulties, while formidable, should not be made into a

device for defeating the action.'").

Here, the proposed class is readily determinable through transaction records, as USB has

itself used in distributing settlement proceeds to investors in the Trusts,[4] or through a notice and

claims process. *See* Alvarado Decl., Ex. 6, ¶¶11-28.  Where, as here, class members "may be

ascertained with reference to investor records, it is administratively feasible to determine whether an

investor is a member . . . .  Though documentation may be required, mini-hearings on the merits . . .

will not be." *In re Facebook*, 312 F.R.D. at 352-53.

---

[4]   *See, e.g.*, Alvarado Decl., Ex. 2



; *id.*, Ex. 3 at 666

; *id.*, Ex. 4

; *id.*, Ex. 5 at 140:17-19, 141:9-10

- 3 -

That the Certificates lack a "unique identifier" for each beneficial interest, as do shares of common stock and various other types of securities, does not render the process unworkable, or the class unascertainable.  Indeed, ███████████████████████████████████████

███████████████████████████████████████  See Alvarado Decl., Ex. 7 at 192:20-193:12. While the process may be difficult, and even imperfect, that is not a reason to deny class certification.  *See, e.g.*, *Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 136 & n.9 (S.D.N.Y. 2003) (where "an examination of the individual files of each of the participants" will determine class membership, "[t]he fact that this manual process may be slow and burdensome cannot defeat the ascertainability requirement"); *Brisero v. ConAgra Foods Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017) ("*ConAgra*") (noting that Rule 23 "'recognizes it might be *impossible* to identify some class members'") (emphasis in original).[5]

*Brecher* does not suggest a contrary result.  The sole holding in *Brecher* is that a class definition ordinarily should have temporal limitations.  Opp. at 10; *Brecher*, 806 F.3d at 25; *see also ConAgra*, 844 F.3d at 1126 n.6 ("In *Brecher* . . . administrative feasibility played no role in the court's decision, which instead turned on the principle that a class definition must be objective and definite.").  The Class here does not suffer from such a deficiency because it includes investors who "held" the certificates, avoiding the fundamental problem in *Brecher* of an "ever-changing composition."[6]  *Brecher*, 806 F.3d at 25; *see also Cordes*, 502 F.3d at 102-03.

---

[5]   *See also In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 116 (E.D.N.Y. 2012) ("[A] class is not rendered unascertainable merely because an analysis of data is necessary to determine class membership."); *Freeland v. Iridium World Commc'ns Ltd.*, 233 F.R.D. 40, 45-46 (D.D.C. 2006) ("[A]ny difficulty by individual class members in tracing their particular [securities] . . . is a secondary issue to be resolved *after* the predominant issue of Defendant Underwriters' liability has been decided.") (collecting cases).

[6]   Judge Nathan recently suggested that a temporal limitation be included in the proposed class definition in *Deutsche Bank*, and has permitted RPI to refile its class certification motion with a modified class definition.  *Deutsche Bank* Order at 21.  While RPI respectfully disagrees that further specificity with regard to the temporal limits of the class definition is necessary, to the extent there is any ambiguity, RPI submits that an end date of "60 days after notice of class certification and opportunity to opt-out is issued," would be an appropriate and definite temporal limitation.  The exact

C.    **Common Questions of Law and Fact Predominate**

Numerous questions of law and fact central to determination of USB's liability are capable of class-wide resolution. *See* Mot. at 9-10, 14-20. These fundamental questions are subject to common proof even if ultimately, as USB asserts, breaches and EODs "must be established 'loan-by-loan and trust-by-trust.'" Opp. at 27. Indeed, these questions must be answered by *any* plaintiff, whether litigating individually or as part of a class. *See* Mot. at 15; Dalrymple Rebuttal, ¶¶46-57. That all of the Trusts were administered pursuant to common policies and procedures further demonstrates that common questions of fact and law predominate in this case. *See* Mot. at 15-17. ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*See* Complaint, ¶233; Alvarado Decl., Ex. 8 at 64:18-65:2; Alvarado Decl., Ex. 9 at 42:25-43:9. The existence and nature of the common relationships between USB and the Master Servicers, Servicers, and other deal parties will similarly provide common proof concerning class members' claims.

1.    **USB's Statute of Limitations Defense Does Not Preclude Certification**

As USB concedes, class members are standing in the shoes of the "record owner" – here, DTC, "in the name of its nominee, Cede & Co." *See* Opp. at 10, 29. As such, the applicable statute of limitations *for the entire class* is that which applies to Cede & Co., a New York corporation. *See Barr v. McGraw-Hill*, 710 F. Supp. 95, 98 (S.D.N.Y. 1989). In any event, "'the mere fact that [an affirmative statute of limitations defense] may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones.'" *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 303 (S.D.N.Y. 2003). USB cites no case declining to

---

membership of the class need only be ascertainable "'at some point in the case.'" *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002).

certify a class solely on the basis of the speculative prospect of statute of limitations conflicts, and such a result would be particularly inappropriate here given the myriad common questions.[7]

### 2. Issues of Potential Assignments Are Speculative and Irrelevant

The "individualized determinations" concerning potential assignments raised by USB are illusory. Opp. at 11-12. That claims related to the Certificates may have been assigned is not unique to this case; indeed, virtually *any* claim related to *any* security is assignable and has never been a bar to class certification. *See* N.Y. GOL §13-101 ("Any claim or demand can be transferred, except" certain types of claims not present here); *see also Farey-Jones v. Buckingham*, 132 F. Supp. 2d 92 (E.D.N.Y. 2001) (Rule 10b-5 securities claims assignable). To the extent class member assignment issues arise, the circumstances surrounding those assignments can be easily determined through a notice and claims process, at which time putative class members must identify themselves, their purchases or sales, and any assignments. *See* Alvarado Decl., Ex. 6, ¶¶22-24, 27; *see also ConAgra*, 844 F.3d at 1131 ("At the claims administration stage, parties have long relied on 'claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court' to validate claims. Rule 23 specifically contemplates the need for such individualized claim determinations after a finding of liability."). Indeed, despite *thousands* of securities class action settlements and judgments, RPI is aware of *no* situation where a court had to adjudicate assignment disputes in resolving a class action (and USB cites none).

---

[7] If determinations of which statute of limitations applies are required, the application of such statute is formulaic and subject to common proof, as it will be *USB's knowledge* of a breach of R&W or EOD that initiates its obligations under the Governing Documents and commences any statute of limitation. Thus, USB's cases are inapposite because in each, the affirmative defenses were predicated on individualized issues of *plaintiffs' knowledge*. *See McLaughlin v. Am Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008) (statute of limitations defense required individual proof where statute began based on individual plaintiffs' discovery of alleged fraud); *Vaccariello v. XM Satellite Radio*, 295 F.R.D. 62, 67-68 (S.D.N.Y. 2011) (issues of individual plaintiffs' knowledge implicated by voluntary payment doctrine); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 67 (S.D.N.Y. 2002) (individual issues as to whether each plaintiff followed doctor's instructions with regard to drug usage).

- 6 -

Moreover, "the proper comparison is not between class litigation and no litigation at all, but between class litigation and actions conducted separately by individual class members." *United States v. City of New York*, 276 F.R.D. 22, 49 (E.D.N.Y. 2011); *see also id.* at 48-49 (even if resolution of individual questions is also required, greater economies of scale will be achieved by "adjudicating common claims in a class proceeding"). As this Court has recognized, "the mere fact that claims ***could*** be asserted independently is not a reason to defeat class certification" as "each investor's prosecution of independent lawsuits 'would risk disparate results among those seeking redress . . . would exponentially increase the costs of litigation for all, and would be a particularly inefficient use of judicial resources.'" *Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D. 261, 271 (S.D.N.Y. 2014) (emphasis in original).[8] It is beyond absurd to suggest that it would be ***more*** efficient for each class member to litigate its case separately just because one-off assignment issues ***may*** arise during the claims process.[9]

Finally, USB's contention that the Court "must" consider the effect of (non-existent) assignment issues before certifying the proposed Class is misleading. In *Johnson v. Nextel Commc'ns, Inc.*, 780 F.3d 128, 140-42 (2d Cir. 2015), a case relied upon by USB, the ***merits*** of the individual class members' claims were governed by conflicting state laws, vitiating common liability

---

[8]    To the extent that any class member was assigned the litigation rights to bring the claims in this action, that individual or entity would have to prove the existence of the assignment through documentation ***regardless*** of whether it brought claims against USB individually or as a class member. A class action will simply facilitate this process and provide an opportunity for investors to more efficiently litigate the overwhelmingly common issues. *See ConAgra*, 844 F.3d at 1132 ("[W]e see no reason to refuse class certification simply because [a class member] will present her [standing] affidavit in a claims administration process after a liability determination has already been made.").

[9]    USB's contention that identifying "current owners" presents "threshold" questions "even before the merits are considered," is contrary to controlling law. Opp. at 14. If such questions exist, they can be resolved through a notice and claims process after the central issues in this case – USB's contractual and other violations – are decided. *See, e.g., City of New York*, 276 F.R.D. at 50; *see also ConAgra*, 844 F.3d at 1131 ("Rule 23 specifically contemplates the need for such individualized claim determinations ***after*** a finding of liability.").

- 7 -

questions.  Here, by contrast, there is no dispute or conflict whatsoever that New York law applies in determining USB's liability to *all* class members.[10]

### 3.    Damages Can Be Proven on a Class-Wide Basis

RPI has established that damages in this case can be calculated on a class-wide basis.  Mot. at 19-20; Dalrymple Report, ¶¶49-58.  Dalrymple explains that damages can be measured by using liability determinations – which would first be resolved on a class-wide basis and then incorporated into his damages model and allocated to the Certificates.  *See* Dalrymple Report, ¶¶54-58; Dalrymple Rebuttal, ¶¶50-53.  This proposed methodology clearly meets the low threshold required for commonality.  *See Kaplan v. S.A.C. Cap. Advisors, L.P.*, 311 F.R.D. 373, 382 (S.D.N.Y. 2015) (Marrero, J.) (argument that "determination of damages will require individualized inquiries" insufficient to defeat class certification where "[p]laintiffs make class-wide claims for damages and have demonstrated that calculation of individual class members' damages will rely on objective class-wide methodology"); *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 99 (S.D.N.Y. 2015) ("[p]laintiffs' model survives the *minimal scrutiny* required under *Comcast* and Rule 23(b)(3)") (citing *Comcast Corp. v. Behrend*, __ U.S. __, 133 S. Ct. 1426 (2013)); *Dodona I*, 296 F.R.D. at 271 (same).  That USB disagrees with the merits of RPI's proposed expert damages framework, which will be utilized during the expert discovery, summary judgment, and trial phases, is not a basis to deny class certification.[11]  *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, __ U.S.

---

[10]    USB's feigned horror at resolving this speculative choice of law question is baseless.  *See* Opp. at 10-12.  As noted in *City of New York*, a case whose merits involved disparate impact violations against black firefighters, "[i]f the City is daunted by the prospect of obtaining discovery from thousands of claimants relating to issues of mitigation and noneconomic losses, it should be absolutely terrified by the prospect of relitigating the aggregate amount of backpay and the characteristics of a firefighter's employment thousands of times over."  276 F.R.D. at 48-49.  Similarly, USB should be "absolutely terrified by the prospect of relitigating" (*id.*) the myriad loans in breach of an R&W, EODs, and whether USB had knowledge of such breaches and EODs.

[11]    Contrary to USB's suggestion, RPI need not calculate damages at this stage.  *See In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 414 (S.D.N.Y. 2015) ("nothing in *Comcast* requires an expert to perform his analyses at the class certification stage); *Brown v. Hain Celestial Grp.*, No. C 11-03082 LB, 2014 WL 6483216, at *19 (N.D. Cal. Nov. 18,

- 8 -

__, 133 S. Ct. 1184, 1191 (2013) ("the office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'method' best suited to adjudication of the controversy 'fairly and efficiently'"); *see also* Dalrymple Opp., §§II.B.-D.

Confronted with Dalrymple's class-wide damages methodology, USB argues that damages allocation issues bar certification. Opp. at 25. But as Dalrymple explains, "issues related to specific investors' rights to ***recover damages*** have no bearing on the actual ***calculation of damages*** on a class-wide basis." Dalrymple Rebuttal, ¶68. Indeed, any inquiries concerning damages allocation "will become an intra-class matter accomplished pursuant to a court-approved plan of allocation, and such individual damages allocation issues are insufficient to defeat class certification." *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 277 (S.D.N.Y. 2008); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527 (DLC), 2003 U.S. Dist. LEXIS 19784, at *15-*16 (S.D.N.Y. Nov. 7, 2003) ("If individualized damage issues do arise, an appropriate allocation may be made a later stage . . . .").

The remainder of USB's scattershot damages arguments ignore RPI's proposed methodology, misstate the law, and raise irrelevant issues. Opp. at 25-26. In *Comcast*, the Supreme Court held that a damages methodology must only be "capable" of measuring damages "attributable to" or "resulting from" the plaintiff's theory of liability. 133 S. Ct. at 1433; *see also Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015). Contrary to USB's repeated assertions, RPI's proposed damages methodology would measure ***only*** those damages arising from breaches for which USB is liable, and therefore is directly tied to RPI's theory of liability. *See* Dalrymple Rebuttal, ¶¶19-22, 78-90; Dalrymple Opp., §II.B.

Further, USB's speculation that certain hypothetical factors, such as the cost or duration of put-back claims or the financial condition of warrantors, could have affected damages is irrelevant:

_____

2014) ("The point for Rule 23 purposes is to determine whether there is an acceptable class-wide [damages] approach, not to actually calculate under that approach before liability is established.").

"'the wrongdoer shall bear the risk of the uncertainty which his own wrong has created.'" *In re Elec. Books Antitrust Litig.*, No. 11 MD 2293 (DLC), 2014 WL 1282293, at *16 (S.D.N.Y. Mar. 28, 2014); *see also Process Am. v. Cynergy Holdings*, 839 F.3d 125, 141 (2d Cir. 2016) ("Therefore, a plaintiff need only show a 'stable foundation for a reasonable estimate' of the damages incurred as a result of the breach [, and] the burden of any uncertainty as to the amount of damages is on the breaching party."). Moreover, speculative arguments regarding damage offsets do "not inject a need for 'individualized inquiry for each . . . class member' [as the] disputes concerning the existence and relevance of [offsets] are themselves susceptible to class-wide argument and proof." *In re Elec. Books*, 2014 WL 1282293, at *20. Finally, Dalrymple's methodology can account for USB's hypothetical factors, if determined to be relevant. *See* Dalrymple Rebuttal, ¶¶79-84.[12]

### D.    The Class Is Numerous

Dalrymple has identified approximately 2,460 potential class members. Dalrymple Report, ¶¶40-48. Although numerosity is presumed in the Second Circuit where there are at least 40 class members, USB argues that no class member can be *counted* for purposes of numerosity until it is *proven* to be an eligible claimant. That is not the law. *See Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993) ("Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement."); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 203 (S.D.N.Y. 2006) ("Although the number of plaintiffs might change [the putative class of 44], currently is at least 40, and thus numerosity is presumed.").[13]

---

[12]       *See also* Alvarado Decl., Ex. 7 at 157:1-6 ████████████████████

████████████████████████

[13]       Even assuming *arguendo* that a full half of the potential class members identified by Dalrymple were to be excluded for the reasons put forward by USB, there would still be more than *1,200* putative class members. Opp. at 28; *see In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 241 F.R.D. 435, 442 (S.D.N.Y. 2007) (emphasizing that courts "'may make common-sense assumptions that support a finding of numerosity'").

USB's claim that RPI is required to show that particular absent class members have standing to establish numerosity is wrong.  *See Babcock v. Computer Assocs. Int'l*, 212 F.R.D. 126, 130 (E.D.N.Y. 2003) ("Standing and numerosity are two separate unrelated inquiries.").[14]  In any event, to the extent that litigation authorizations are required, class members could easily obtain them from Cede & Co. and could easily provide any other required documentation at the claims administration stage.[15]  *See Applestein TTEE FBO D.C.A. Grantor Tr. v. Province of Buenos Aires*, 415 F.3d 242 (2d Cir. 2005) (authorization to sue from the registered Holder may be granted subsequent to the filing of the lawsuit); *see also* Alvarado Decl., Ex. 6, ¶¶22-24, 27.

### E.    RPI Is Both Adequate and Typical

USB does not contest that RPI has a strong interest in vigorously pursuing this case on behalf of the class.  Rather, it speculates that RPI is inadequate because RPI faces a "potentially fatal sanctions motion."  *See* Opp. at 30.  But Judge Francis has already ruled that, even if USB could demonstrate prejudice caused by RPI's "failure" to produce valuation documents from its assignors, "dismissal of Royal Park's claims would be unnecessarily draconian."  Dkt. No. 141 at 15. Moreover, in order for *any* sanction to be warranted, USB must show that it is significantly prejudiced by the lack of assignor documents, something it has already failed to do once and will certainly fail to do on its second bite at the apple, as: (i) RPI has produced *thousands* of documents that it gathered from the assignors, which USB simply ignores; (ii) RPI will soon produce additional documents from the assignors; (iii) ███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

---

[14]    *See also* 1 Wm. B. Rubenstein, *Newberg on Class Actions* §2:3, at 9 (5th ed. 2016 supp.) ("'[Absent] members need not make any individual showing of standing because the standing issue focuses on whether the named plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court.'").
[15]    *See, e.g.*, Alvarado Decl., Ex. 10 ███████████████████████████████████████████

███████████████████████████████████████████████████

██████████████;[16] and (iv) USB has not identified a single relevant valuation document that it has reason to believe exists in the assignors' files that RPI has not produced.

In truth, RPI has participated fully in discovery, vigorously litigated the putative class's claims, and will continue to do so. Specifically, RPI has produced more than *241,000 documents* (USB – a paltry 54,000 documents), sat for several depositions, and responded to dozens of discovery requests. While USB may prefer to make RPI's supposed "discovery violations" the focus of this litigation for strategic purposes, it has no valid basis for doing so, and no basis for claiming that RPI is subject to "unique defenses" that result solely from USB's unseemly and over-muscular litigation strategy. *See* Opp. at 30.

The sundry of other "unique defenses" raised by USB are equally meritless. ███████

███████████████████████████████████████████████████

███████ Second, RPI indisputably possesses all litigation rights for those Certificates it was assigned by Fortis entities under Belgian and New York law. *See* Dkt. No. 141 at 19; Alvarado Decl., Ex. 12; *id.*, Ex. 13; N.Y. GOL §13-107. Third, USB's assertion that RPI will be unable to show damages for any servicing EODs or breaches of contract for particular trusts is equal parts incorrect and irrelevant. *See* Opp. at 30-31. It is well-established that an otherwise qualified class member may serve as class representative even if it is later proven not to have suffered damages related to a particular security. *See Dodona I*, 296 F.R.D. at 268; *Tsereteli v. Residential*, 283 F.R.D. 199, 208 (S.D.N.Y. 2012).[17]

---

[16]    *See also* Alvarado Decl., Ex. 7 at 244:23-245:9 █████████████████████████████████

[17]    USB's reliance on *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000), is misplaced. In *Baffa*, a securities fraud case, a proposed class representative's claims were found to be atypical because the defendant established that she (i) was a sophisticated broker with access to more information than other class members; (ii) had bought the stock at issue after the rest of the class; and (iii) relied on a unique investment strategy in

Finally, the fact that RPI owned different Certificates than other investors does not create conflicts that prohibit RPI from serving as class representative.  Courts certifying RMBS classes have recognized that a class member need not have purchased in every tranche or every Trust to serve as class representative.  *See Fort Worth*, 301 F.R.D. at 134 ("'[i]nherent in any class action is the potential for conflicting interests among the class representatives, class counsel, and absent class members'" but only "fundamental" conflicts can preclude certification); *see also Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 108 (S.D.N.Y. 2011) ("'While investors' repayment rights may vary slightly based on the seniority of the tranches they purchased, this does not present a "fundamental" conflict within the class.'").

### F.    A Class Action Is Superior

A class action is the superior method of addressing the claims herein.  Contrary to USB's assertions, there are no overwhelming manageability concerns that the trier of fact could not resolve. *See* Opp. at 32.  Moreover, class actions "can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery," as is the case here.  *In re US Foodserv. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013).[18]

## III.    CONCLUSION

Plaintiff's Motion should be granted in its entirety.

DATED: April 14, 2017                                      Respectfully submitted,


                                                     s/ DARRYL J. ALVARADO
                                                     DARRYL J. ALVARADO

---

purchasing the stock in the first place. *Id.* at 59-60.  None of these circumstances, or a reliance requirement, exist or are relevant here.

[18]    Unlike in *In re Fresh Del Monte Pineapples Antitrust Litig.*, No. 1:04-md-1628 (RMB), 2008 WL 5661873 (S.D.N.Y. Feb. 20, 2008), RPI has established that damages can be measured on a class-wide basis, that the class can be ascertained and given proper notice, and that damages can be properly distributed.

1255526_1

ROBBINS GELLER RUDMAN
  & DOWD LLP
ARTHUR C. LEAHY
STEVEN W. PEPICH
LUCAS F. OLTS
DARRYL J. ALVARADO
HILLARY B. STAKEM
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
artl@rgrdlaw.com
stevep@rgrdlaw.com
lolts@rgrdlaw.com
dalvarado@rgrdlaw.com
hstakem@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

Attorneys for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 14, 2017.

s/ DARRYL J. ALVARADO
DARRYL J. ALVARADO

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  DAlvarado@rgrdlaw.com

# Mailing Information for a Case 1:14-cv-02590-VM-JCF Royal Park Investments SA/NV v. U.S. Bank National Association

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com,nhorstman@rgrdlaw.com,lmix@rgrdlaw.com

- **Thomas F. Berndt**
  tberndt@robinskaplan.com,mschroeder@robinskaplan.com

- **Jennifer Nunez Caringal**
  jcaringal@rgrdlaw.com

- **Rachael Catherine Chan**
  rachael.chan@morganlewis.com,mary.jensen@morganlewis.com

- **Rollin Bernard Chippey**
  rchippey@morganlewis.com,robert.thompson@morganlewis.com

- **Michael Collyard**
  mcollyard@robinskaplan.com,rhoule@robinskaplan.com,tklukow@robinskaplan.com

- **Joseph Edward Floren**
  joseph.floren@morganlewis.com

- **Sherli Furst**
  SFurst@RobinsKaplan.com

- **Tera Marie Heintz**
  theintz@morganlewis.com,dlang@morganlewis.com,ewoodward@morganlewis.com

- **Morgia Dampf Holmes**
  mholmes@robinskaplan.com

- **Peter Cooper Ihrig**
  pihrig@robinskaplan.com

- **Joseph Marco Janoski Gray**
  mjanoski@rgrdlaw.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Michael Stephan Kraut**
  mkraut@morganlewis.com,rschaffer-goldman@morganlewis.com,anna.goldenhersh@morganlewis.com,nymanagingclerk@morganlewis.com

- **Ashley Anelcha Krupski**
  akrupski@morganlewis.com

- **Arthur C. Leahy**
  artl@rgrdlaw.com,jillk@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **David Leichtman**
  dleichtman@leichtmanlaw.com,aoyewoleturner@robinskaplan.com

- **Cody R. Lejeune**
  clejeune@rgrdlaw.com

- **Martin Richard Lueck**
  mlueck@robinskaplan.com,jaangell@robinskaplan.com

- **David E. Marder**
  DMarder@RobinsKaplan.com,KRichardson@RobinsKaplan.com,LDimillio@RobinsKaplan.com

- **Lucas F. Olts**
  lolts@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Kevin Papay**
  kevin.papay@morganlewis.com

- **Hillel Ira Parness**
  hip@hiplaw.com,hillel.parness@gmail.com

- **Steven W. Pepich**
  stevep@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com

- **Stacey Paige Slaughter**
  sslaughter@robinskaplan.com,mrud@robinskaplan.com

- **Benjamin Patrick Smith**
  bpsmith@morganlewis.com,dlang@morganlewis.com,rbohnet@morganlewis.com,ewoodward@morganlewis.com

- **Hillary B. Stakem**
  hstakem@rgrdlaw.com

- **Chelsea Walcker**
  cwalcker@robinskaplan.com,mschroeder@robinskaplan.com

- **Samuel Lewis Walling**
  swalling@robinskaplan.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,HDeshmukh@rgrdlaw.com,e_file_sf@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)