```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
ROYAL PARK INVESTMENTS SA/NV,        :  14 Civ. 2590  (VM) (JCF)
individually and on behalf of all    :
others similarly situated,           :     MEMORANDUM
                                     :     AND  ORDER
          Plaintiff,                 :
                                     :
   - against -                       :
                                     :
U.S. BANK NATIONAL ASSOCIATION,      :
as Trustee,                          :
                                     :
          Defendant.                 :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

The defendant in this action, U.S. Bank National Association ("U.S. Bank"), has moved pursuant to Rule 37(b) of the Federal Rules of Civil Procedure to preclude the plaintiff, Royal Park Investments SA/NV ("Royal Park"), from introducing proof of damages as a sanction for failing to comply with a discovery order. U.S. Bank also seeks an order precluding Royal Park from serving as a class representative in this case. Royal Park opposes the motion and seeks an award of the attorneys' fees it has incurred in connection with litigating this dispute. The applications of both parties are denied.

Background

The factual background of this case is set forth at length in the decision resolving a prior sanctions motion filed by U.S. Bank, see Royal Park Investments SA/NV v. U.S. Bank National

1

Association, 319 F.R.D. 122, 124-26 (S.D.N.Y. 2016), and will not be repeated here. In that motion, U.S. Bank argued that Royal Park's claims should be dismissed because it had failed to produce documents (the "Assignor documents") within the possession of entities (the "Assignors") from which Royal Park had taken assignment of the claims it asserts in this action. Id. at 125-26. Those claims arise out of U.S. Bank's obligations as trustee in connection with trust certificates (the "Certificates") consisting of residential mortgage backed securities that the Assignors transferred to Royal Park. Id. at 124-25. I accepted many of U.S. Bank's contentions in the first sanctions motion, finding that Royal Bank had violated my prior order compelling the production of Assignor documents and that it had done so willfully. Id. at 126-27. However, I also determined that sanctions were not appropriate because U.S. Bank had failed to demonstrate that it had been prejudiced. Id. at 129-32. Nevertheless, I left the door open for U.S. Bank to show prejudice in at least one respect. I noted that

> U.S. Bank argues that it needs Assignor documents that have not yet been produced in order to rebut Royal Park's claimed damages. The defendant's theory is that some or all of the damages that Royal Park now claims were incurred prior to any breach by U.S. Bank and therefore could not have been caused by such a breach.

Id. at 131. Yet, I found that "[a]s convincing as this argument may be, it does not yet warrant foreclosing Royal Park's damages

2

evidence altogether. Neither party has proffered evidence from a damages expert suggesting that the missing documentation is or is not essential to a damages analysis." Id. Accordingly, I denied U.S. Bank's motion with the caveat that it could be renewed at such time as U.S. Bank could demonstrate prejudice. Id. at 132.

On March 3, 2017, the defendant reinstituted its motion. Shortly thereafter, Royal Park sought to stay briefing on the basis that it was about to produce valuation documents obtained from Fortis Bank SA/NV ("Fortis"), the principal Assignor, as well as from its own files. (Letter of Darryl J. Alvarado dated March 9, 2017, at 1). While I declined to issue an open-ended stay, I did provide a substantial extension of the schedule. (Text Order dated March 15, 2017). Briefing is now complete.

Analysis

U.S. Bank relies principally on declarations submitted by their expert witness, Christopher M. James, Ph.D. In his initial declaration, Dr. James concludes:

> Fortis took billions of Euros of impairment on the portfolio of assets it transferred to Royal Park in May 2009 (the "Transferred Assets"). While publicly available Fortis documents reveal that Fortis incurred massive losses on the Transferred Assets, they do not reflect individual security-specific impairments taken by Fortis. These impairments reflect contemporaneous evidence of actual losses incurred by Fortis. Because such impairments and other declines in fair value have significant real-world impact and are important evidence of loss of value before any alleged breaches by U.S. Bank, the Valuation Documents are essential to assess

3

the validity of Royal Park's claimed damages with respect to the Assigned Claims.

(Declaration of Christopher M. James dated March 3, 2017 ("James 3/3/17 Decl."), attached as Exh. A to Declaration of Tera M. Heintz dated March 3, 2017, ¶ 14).[1]  Dr. James observes that one document produced by Royal Park, a Purchase and Sale Agreement, shows that three of the Certificates at issue were transferred in June 2008 for a "clean price" of "0.00," purporting to represent "the fair market value of the Securities as of the Trade Date."  (James 3/3/17 Decl., ¶ 27).  According to Dr. James, "Documents reflecting these impairments show that there was no good-faith basis to believe that a market participant would have bought or sold certain of the Certificates at issue for any amount of money before the alleged breaches by [U.S. Bank]."  (James 3/3/17 Decl., ¶ 27).

Further, Dr. James opines that "[t]here is no comparable substitute for Fortis's contemporaneous Valuation Documents, particularly given the market uncertainty during the relevant time period and lack of available trading data and third party pricing

---

[1] Throughout this decision, I have occasionally alluded to documents that the parties marked as confidential.  I have serious doubts whether such a designation was appropriate in the first place, as the transactions took place years ago, and the information does not appear to have any current commercial value.  More importantly, the information was presented as part of an application to the Court and serves as the predicate for a judicial determination.  As such, it is presumptively subject to public access, and there is no apparent basis for rebutting that presumption.  See Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-20 (2d Cir. 2006).

information." (James 3/3/17 Decl., ¶ 14). And he argues that "trading and third party pricing data, even if available, are insufficient to assess damages as they do not contain sufficient information to disentangle loss in value due to the allegations as opposed to unrelated factors such as worsening economic conditions." (James 3/3/17 Decl., ¶ 14).

As noted above, Royal Park produced valuation documents subsequent to U.S. Bank's motion and to Dr. James' initial declaration, and depositions of Fortis witnesses were then taken as well. Accordingly, in connection with U.S. Bank's reply papers, Dr. James issued a second declaration in which he states:

> Fortis witnesses have . . . confirmed that the impairments (losses) recorded by Fortis for which some documents have now been produced likely totaled hundreds of millions of dollars and were recorded by Fortis <u>before</u> U.S. Bank is alleged to have breached any contract or otherwise acted improperly. . . .
>
> While confirming the fact, importance, and magnitude of these losses, Fortis witnesses have been unable to confirm the specific impairment loss figures applicable to the Certificates. Fortis witnesses have, however, confirmed the existence of several categories of still-unproduced Fortis documents that would both confirm the specific losses taken and likely show additional impairment losses on the 28 Certificates. Specifically, Fortis witnesses discussed the existence of: (1) documents regarding impairments taken by Fortis in the fourth quarter of 2008 and first quarter of 2009; (2) documents showing the <u>final</u> impairment figures recorded in the books and records of the Fortis affiliates that owned the At-Issue Assets; (3) documents specifying the rationale for those impairment figures and reflecting independent auditor and market valuations; and (4) documents modeling the values of the Certificates underlying CDOs.

5

(Declaration of Christopher M. James dated Aug. 25, 2017 ("James 8/25/17 Decl."), ¶ 3).

Royal Park's expert, W. Scott Dalrymple, takes issue with Dr. James' conclusions. First, he questions the significance to a damages calculation of valuing a Certificate at zero:

> Even if Fortis had valued the Certificates at zero prior to any alleged breach, one cannot simply conclude that the values of the Certificates would have <u>remained</u> at zero "but for" the alleged breaches. . . . [T]he value of a financial instrument can fluctuate over time. Therefore, there is no basis for concluding that a Certificate that is marketed at zero cannot increase in value based on subsequent developments.

(Declaration of W. Scott Dalrymple dated May 12, 2017 ("Dalrymple 5/12/17 Decl."), attached as Exh. 1 to Declaration of Darryl J. Alvarado dated May 12, 2017, ¶ 8). Second, he argues that Fortis' valuations of the Certificates are no more authoritative than those of any pricing service performing similar calculations, such as Interactive Data Corporation ("IDC"), whose valuations are publicly available, or indeed, of any other private investor like JPMorgan. (Dalrymple 5/12/17 Decl., ¶¶ 12, 14). Moreover, Fortis' own valuations would themselves have incorporated data from other entities like IDC. (Dalrymple 5/12/17 Decl., ¶ 13). Third, Mr. Dalrymple contends that a reliable damages analysis will ultimately rely on data from a variety of sources, so that the absence of particular Fortis documents would be immaterial. (Dalrymple 5/12/17 Decl., ¶ 17).

Some of Mr. Dalrymple's contentions are unconvincing. For example, while he treats Fortis' taking an impairment as one viewpoint among many, it seems axiomatic that the more data points that are available, the more reliable the ultimate damage calculation is likely to be. And I am not persuaded that Fortis' valuation is no more accurate than that of any other entity engaged in the same exercise; as owner of the asset, it may well have had more incentive and perhaps more ability to obtain the relevant information. It certainly had an incentive to be accurate, since it was operating in a highly regulated legal environment, and any write-down of its assets would have real world consequences, including by reducing its ability to raise capital and diminishing shareholder equity. (James 3/3/17 Decl., ¶¶ 30-34). Finally, even if the valuing of a particular Certificate at zero does not mean that it has no value whatsoever, the magnitude of an impairment is highly relevant to any damages calculation.

Nevertheless, the issue here is not whether there is some additional information that would be helpful in a damages calculation; it is whether Royal Park has failed to produce information so necessary to that process that U.S. Bank has suffered prejudice warranting preclusion. See Distefano v. Law Offices of Barbara H. Katsos, PC, No. 11 CV 2893, 2017 WL 1968278, at *27 (E.D.N.Y. May 11, 2017) (denying adverse inference where "there is some indication that the missing information has been

(or could be) obtained from other sources, which weighs against finding prejudice here"); F.D.I.C. v. Horn, No. 12 CV 5958, 2015 WL 1529824, at *16 (E.D.N.Y. March 31, 2015) (same); SJS Distribution Systems, Inc. v. Sam's East, Inc., No. 11 CV 1229, 2013 WL 5596010, at *5 (E.D.N.Y. Oct. 11, 2013) (denying preclusion where other evidence remained available); Cedar Petrochemicals, Inc. v. Dongbu Hannong Chemical Co., 769 F. Supp. 2d 269, 293 (S.D.N.Y. 2011) (denying spoliation sanctions where "other evidence" available); Field Day, LLC v. County of Suffolk, No. 04 CV 2202, 2010 WL 1286622, at *14 (E.D.N.Y. March 25, 2010) (denying preclusion where "it is unclear that Plaintiffs suffered any prejudice as destroyed documents apparently have been otherwise obtained"); Golia v. Leslie Fay Co., No. 01 Civ. 1111, 2003 WL 21878788, at *10 (S.D.N.Y. Aug. 7, 2003) (finding that "misconduct has not robbed [the opposing party] of the only evidence on which they could base their case").[2]

U.S. Bank has not demonstrated prejudice. Dr. James himself has prepared estimated valuations for fifteen Certificates beyond those that were written down to zero. (James 8/25/17 Decl., ¶¶ 26-28 & tbl. 2). In doing so, he relied on a variety of sources, including Fortis documents and prices quoted by IDS and Bloomberg.

---

[2] Although the cases cited here by and large deal with sanctions for the spoliation of evidence, the concept of prejudice is no different when sanctions are sought in response to the failure to comply with a discovery order.

(James 8/25/17 Decl., ¶ 28 & nn.44-45 & tbl. 2 nn.3-4). Far from being definitive, the Fortis documents are sometimes in conflict with each other and with information obtained from independent sources. (James 8/25/17 Decl., ¶ 28 & tbl. 2 nn.4, 6 (finding "[f]or some Certificates, different Fortis documents supported substantially different potential impairment estimates" and "[t]here is conflicting Fortis documentation")). The process that Dr. James followed demonstrates that the goal of the valuation analysis (and, ultimately, of a damages calculation) is not to achieve scientific certainty, which is not possible in the context of valuing financial instruments, but to arrive at the most defensible judgment under the circumstances, something he has been able to do with the information provided.

To be sure, Dr. James found it "more challenging to determine likely impairments for the remaining six Certificates, as there was limited information in the documents produced by Royal Park about the impairments taken for Q3 2008, but no apparently reliable information available sufficient to support estimates for Q4 2008 and Q1 2009." (James 8/25/17 Decl., ¶ 29). According to Dr. James,

> Although some documents produced by Royal Park suggested possible impairment figures for five of these Certificates for Q4 2008 and/or Q1 2009, those documents (a) conflicted with other documents that suggested substantially different impairment figures for the same time periods; or (b) contained figures whose sources

9

>     were not identified and could not be substantiated; or
>     (c) both.

(James 8/25/17 Decl., ¶ 29). This information gap is not sufficient, however, to provide a basis for sanctions. First, it is not apparent how the data for these Certificates differs from that available for the others which, according to Dr. James, was also inconsistent, but which was adequate for him to conduct an analysis. Second, Royal Park does appear to have produced final impairment figures through the end of 2008. (Exhs. 3-5 attached to Declaration of Darryl J. Alvarado dated Sept. 8, 2017 ("Alvarado 9/8/17 Decl."), attached as Exh. B to Letter of Darryl J. Alvarado dated Sept. 8, 2017). Third, any impairments taken for Q1 2009 are of limited relevance, since (1) "the scope of the [Q1 2009] impairment exercise [was] limited to the retained portfolio," that is, assets that Fortis had not sold to Royal Park and which, therefore, are not at issue here (Exh. 12 attached to Alvarado 9/8/17 Decl., at 1), and (2) any losses suffered by Fortis were realized as of August 31, 2008, since, according to the terms of the transfer to Royal Park, any change in value after that date would be to the benefit or detriment of Royal Park. (Exh. 9 attached to Alvarado 9/8/17 Decl., at 173).

Apart from the issue of documentation for the Q4 2008 and Q1 2009 periods, U.S. Bank raises two additional concerns. First, it contends that without additional valuation documents, it cannot

ascertain the cause for the loss of value of the Certificates, something that is sure to be a contested issue. (James 3/3/17 Decl., ¶¶ 14, 22). While U.S. Bank has demonstrated a reasonable basis for seeking information about <u>when</u> the Certificates lost value, it has not explained how information exclusively in the possession of Royal Park or the Assignors would shed light on <u>why</u> any such losses occurred. It is likely that causation will be proven through statistical analysis, not by reference to comments in an email authored by an employee of a Fortis affiliate.

Second, U.S. Bank complains that many of the documents that Royal Park has produced could not be authenticated. This is not surprising given the lapse of time since they were created. But, in any event, the solution for this problem rests with the Court's application of evidentiary principles at trial, not with the imposition of a preclusion order. U.S. Bank's motion to preclude Royal Park from introducing evidence of damages is therefore denied.

U.S. Bank's application to preclude Royal Park from serving as class representative is also denied. Even if there were a basis for such relief, it would be inappropriate for me to grant it while a motion for class certification is pending before the Court.

Royal Park's application for an award of attorneys' fees is denied as well. The production of Assignor documents pursuant to my Order has been tardy and, ultimately, incomplete. While there

is not a sufficient basis for sanctions, Royal Park must share the responsibility for the costs generated by this motion practice.

Conclusion

For the reasons discussed, U.S. Bank's motion for sanctions (Docket no. 179) is denied, as is Royal Park's application for an award of attorneys' fees.

SO ORDERED.

*[signature]*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
        October 19, 2017

Copies transmitted this date:

Cody R. Lejeune, Esq.
Hillary B. Stakem, Esq,
Arthur C. Leahy, Esq.
Jennifer N. Caringal, Esq.
Steven W. Pepich, Esq.
Darryl J. Alvarado, Esq.
J. Marco Janoski Gray, Esq.
Lucas F. Olts, Esq.
Juan C. Sanchez, Esq.
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

Christopher M. Wood, Esq.
Robbins Geller Rudman & Dowd LLP
414 Union Street, Suite 900
Nashville, TN 37219

Samuel H. Rudman, Esq.
Robbins Geller Rudman & Dowd LLP
58 South Service Road
Suite 200
Melville, NY 11747

Michael S. Kraut, Esq.
Morgan Lewis & Bockius LLP
101 Park Ave.
New York, NY 10178

Benjamin P. Smith, Esq.
Rollin B. Chippey, Esq.
Tera M. Heintz, Esq.
Morgan Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105

Thomas F. Berndt, Esq.
Peter C. Ihrig, Esq.
Michael A. Collyard, Esq.
Samuel L. Walling, Esq.
Robins Kaplan LLP
800 LaSalle Ave., Suite 2800
Minneapolis, MN 55402

David Leichtman, Esq.
Sherli Furst, Esq.
Stacey P. Slaughter, Esq.
Robins Kaplan LLP
601 Lexington Ave., Suite 3400
New York, NY 10022

David E. Marder, Esq.
Morgia D. Holmes, Esq.
Robins Kaplan LLP
800 Boylston St., 25th Floor
Boston, MA 02199

Hillel I. Parness, Esq.
Parness Law Firm, PLLC
136 Madison Ave., 6th Floor
New York, NY 10016