UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- X

ROYAL PARK INVESTMENTS SA/NV,    :
Individually and on Behalf of All Others    :
Similarly Situated,    :    Civil Action No. 14-cv-02590-VM-RWL
   :
     Plaintiff,    :
   :
        v.    :
   :
U.S. BANK NATIONAL ASSOCIATION,    :
as Trustee,    :
   :
     Defendant    :

---------------------------------------------------------- X

**U.S. BANK NATIONAL ASSOCIATION'S MEMORANDUM OF LAW
IN SUPPORT OF ITS RULE 72 OBJECTIONS TO
MAGISTRATE JUDGE'S OCTOBER 19, 2017 ORDER**

MORGAN, LEWIS & BOCKIUS LLP

Tera M. Heintz*
Joseph E. Floren*
Benjamin P. Smith*
Ashley A.H. Krupski*
Kevin M. Papay*
One Market Street
San Francisco, CA 94114
Tel:      (415) 442-1000
Fax:      (415) 442-1001
benjamin.smith@morganlewis.com
tera.heintz@morganlewis.com
joseph.floren@morganlewis.com
ashley.krupski@morganlewis.com
kevin.papay@morganlewis.com
*admitted *pro hac vice*

Michael S. Kraut
101 Park Avenue
New York, NY  10178
Tel:      (212) 309-6000
Fax:      (212) 309-6001
michael.kraut@morganlewis.com

Attorneys for Defendant
U.S. Bank National Association, as Trustee

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  RELEVANT FACTS AND PROCEDURAL HISTORY .................................... 2

    A.  The Court Compelled RPI to Produce Relevant Assignor Documents. ............... 3

    B.  The November 9, 2016 Order Denied U.S. Bank's Motion for Sanctions Subject to Renewal With a Showing of Prejudice. ............................................... 3

    C.  U.S. Bank's Renewed Motion for Sanctions Is Supported By Evidence Demonstrating How U.S. Bank Has Suffered Prejudice. .................................... 3

    D.  Magistrate Judge Francis's October 19, 2017 Order Denied Sanctions Based on Erroneous Findings and an Improper Causation Standard. ................... 6

III.  STANDARD OF REVIEW ................................................................................ 7

IV.  ARGUMENT ...................................................................................................... 9

    A.  Judge Francis's Finding of No Prejudice Is Based Solely on Inadmissible Evidence. ............................................................................................................. 9

    B.  The Order's Finding of No Prejudice is Based on Mistaken, Unsupportable Interpretations of the Evidence Presented. ................................. 14

    C.  Judge Francis Applied the Wrong Causation Standard. ..................................... 16

V.  CONCLUSION ................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Colida v. Nokia Inc.*,
  No. 07 CIV 8056 KMW HBP, 2008 WL 4449419 (S.D.N.Y. Sept. 29, 2008),
  *aff'd*, 347 F. App'x 568 (Fed. Cir. 2009) ................................................................8

*Halliburton Co. v. Eric P. John Fund, Inc.*,
  134 S. Ct. 2398 (2014) ..........................................................................................18

*Mobil Shipping & Transp. Co. v. Wonsild Liquid Carriers Ltd.*,
  190 F.3d 64 (2d Cir. 1999) ......................................................................................8

*PowerShare, Inc. v. Syntel, Inc.*,
  597 F.3d 10 (1st Cir. 2010) .....................................................................................8

*Sahu v. Union Carbide Corp.*,
  746 F. Supp. 2d 609 (S.D.N.Y. 2010) .....................................................................8

*Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*,
  2017 WL 2840279 (S.D.N.Y. June 27, 2017) (Moses, Mag. J.) .............................8

*Sharma v. Skaarup Ship Mgm't Corp.*,
  916 F.2d 820 (2d Cir. 1990) ...............................................................................1,17

*Thomas E. Hoar, Inc. v. Sara Lee Corp.*,
  900 F.2d 522 (2d. Cir. 1990) ...................................................................................8

**Federal Statutes**

28 U.S.C.
  § 636(b)(1) ...............................................................................................................1

**Other Authorities**

Fed. R. Civ. P.
  72 ........................................................................................................................1,7,8
  72(a) ....................................................................................................................8,9
  72(b) .....................................................................................................................7, 8

Rule 37 .......................................................................................................................8

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72, Defendant U.S. Bank National Association, as Trustee, ("U.S. Bank") respectfully submits the following objections to Magistrate Judge Francis's October 19, 2017 Order ("Order," Dkt. 332).

## I.   INTRODUCTION

The Order erroneously finds that a series of adjudicated willful discovery violations by Plaintiff Royal Park Investments SA/NV ("RPI") should go un-remedied, notwithstanding that RPI's damages claims would be entirely or largely disproved by the documents RPI willfully failed to produce. And it permits RPI, having engineered the absence of the definitive evidence, to manufacture spurious factual disputes. To reach this result, the Order ignores or misconstrues the uncontradicted record evidence, inexplicably credits argument of RPI's counsel that is not only wholly bereft of evidentiary support, but also contrary to all evidence in the record, and overlooks the controlling law in several crucial respects. With fact discovery closed, the Court's intervention is needed to restore fairness and prevent prejudice to U.S. Bank.

RPI's damages claims in this lawsuit are based on losses allegedly incurred by the purported Assignors of its claims.[1] In early 2016, Magistrate Judge Francis compelled RPI to produce relevant documents from its Assignors. Those documents include evidence of impairment losses (i.e., recognized losses) that RPI's Assignors recorded on the Certificates at issue in this action <u>before</u> U.S. Bank allegedly did anything wrong. Under well-settled New York law, damages must be determined as of the date of the alleged breach of contract. *See Sharma v. Skaarup Ship Mgm't Corp.*, 916 F.2d 820, 825-26 (2d Cir. 1990). Yet, although RPI alleged that U.S. Bank breached the contracts at issue no earlier than January 2009, the impairment evidence that RPI failed to produce would show that RPI's Assignors incurred most,

---

[1] *See* Dkt. 180 at 1, n.1 for a list of Assignors, all affiliated with RPI's predecessor, Fortis Bank (and sometimes referred to collectively as "Fortis"); *see also* Dkt. 1 at ¶ 28.

if not all, of the losses sought by RPI before any alleged breach, and for reasons having nothing to do with U.S. Bank.  In short, the Court ordered RPI to produce Assignor documents that could significantly diminish – or completely eliminate – RPI's damages claims.  RPI did not comply.

Despite finding a willful discovery violation by RPI, Magistrate Judge Francis subsequently denied U.S. Bank's sanctions motion for failure to show prejudice.  Respectfully, this finding is clear error because it (i) relies on patently incompetent assertions of RPI's counsel, unsupported by and in disregard of the uncontradicted record evidence; (ii) relies on factual findings that are unsupported by any evidence, admissible or otherwise; and (iii) turns on application of an erroneous legal standard.

These errors cannot be left unaddressed.  To do so would not only reward RPI's discovery malfeasance, but also materially impair U.S. Bank's ability to defend itself against RPI's purported multi-billion dollar claims.  U.S. Bank respectfully requests that the Court set aside Magistrate Judge Francis's October 19, 2017 Order and award appropriate sanctions based on the evidence presented in support of U.S. Bank's underlying motions.

## II.     RELEVANT FACTS AND PROCEDURAL HISTORY

U.S. Bank assumes that the Court is familiar with RPI's general allegations based on prior briefing in this action.  *See* Order at 1-2 (noting that "[t]he factual background of this case is set forth at length in" the Court's November 9, 2016 order, Dkt. 332); *see also* Dkt. 151 at 3-6 (summarizing RPI's allegations in RPI's Motion for Class Certification).  In summary, RPI asserts that U.S. Bank breached its contra      ctual duties as indenture trustee of 21 RMBS trusts, supposedly leading RPI and the putative class to incur losses of payment streams and losses of value on their investments in Certificates issued by those trusts.  The Order at issue was preceded by three related court orders and briefing establishing that U.S. Bank has been prejudiced by RPI's failure to produce Assignor impairment records that are crucial to U.S. Bank's defenses.

**A.  The Court Compelled RPI to Produce Relevant Assignor Documents.**

On March 15, 2016, U.S. Bank moved to compel RPI to produce responsive documents held by the Assignors from which RPI had obtained the Certificates at issue, including Fortis Bank and related entities ("Fortis").  Dkt. 75; *see* Order at 4-5 (summarizing procedural history of briefing).  The Court granted that motion by text order on March 30, 2016.  Dkt. 78.  On April 19, 2016, the Court denied RPI's request to stay the March 30, 2016 order and ordered RPI to produce the Assignor documents by May 20, 2016, "failing which U.S. Bank may move for an order of preclusion and/or any other appropriate remedy."  Dkt. 82.

**B.  The November 9, 2016 Order Denied U.S. Bank's Motion for Sanctions Subject to Renewal With a Showing of Prejudice.**

On May 27, 2016, after Royal Park failed to timely produce the relevant Assignor documents in violation of the Court's orders, U.S. Bank filed a motion for sanctions.  Dkt. 97.  In a November 9, 2016 order, Magistrate Judge Francis found that "Royal Park had violated [the Court's] prior order compelling the production of Assignor documents and that it had done so willfully."  Order at 2; *see* Dkt. 141.  However, he also determined that U.S. Bank had "not yet demonstrated prejudice flowing from its inability to gain access to the Assignor valuation documents."  Dkt. 141 at 23 (emphasis added); *see also* Order at 2.  Magistrate Judge Francis therefore denied U.S. Bank's motion for sanctions, but expressly invited U.S. Bank to "renew its application [for sanctions] when and if it can demonstrate that it has suffered prejudice as a consequence of Royal Park's failure to comply with [the Court's] order to produce documents in the possession of the Assignors."  Dkt. 141 at 25-26; *see also* Order at 2-3.

**C.  U.S. Bank's Renewed Motion for Sanctions Is Supported By Evidence Demonstrating How U.S. Bank Has Suffered Prejudice.**

Consistent with the Court's guidance, U.S. Bank filed a renewed motion for sanctions on March 3, 2017.  Dkt. 180 ("Sanctions Motion").  U.S. Bank submitted comprehensive evidence

in support of its Sanctions Motion, including an expert declaration from Professor Christopher

M. James.  Dkt. 180, Ex. A (the "Initial James Declaration") (under seal version submitted as Ex.

5 to Declaration of Tera Heintz submitted herewith).[2]  In the Initial James Declaration, Dr. James

offered expert testimony that Fortis's "Valuation Documents" identifying the impairment losses

and reasons for the impairments taken by Fortis on the Certificates are essential to U.S. Bank's

defense, and that RPI's failure to produce them harms U.S. Bank's ability to defend against

RPI's damages allegations.[3]  Initial James Decl. ¶ 13, 25-28, 40, 49 (Heintz Decl. Ex. 5).  He

concluded that (1) because the impairments taken by Fortis "have significant real-world impact

and are important evidence of loss of value before any alleged breaches by U.S. Bank," "the

Valuation Documents are essential to assess the validity of Royal Park's claimed damages with

respect to the Assigned Claims;" and (2) "[t]here is no comparable substitute for Fortis's

contemporaneous Valuation Documents."  *Id.* ¶ 14 (Heintz Decl., Ex. 5) (emphases added); *see*

*also* Order at 3-5 (summarizing some of Dr. James's conclusions).  In other words, Dr. James

offered informed, expert testimony that established, as ordered by Judge Francis, "prejudice

flowing from its inability to gain access to the Assignor valuation documents."  Dkt. 141 at 23.

On August 25, 2017, U.S. Bank filed a reply brief and further evidence in support of its

Sanctions Motion, including a second expert declaration from Dr. James.  Dkt. 302 ("Reply

Brief") (Heintz Decl., Ex. 10);[4] Dkt. 303 (the "James Reply Declaration") (Heintz Decl. Ex. 11).

Citing new testimony from RPI's own witnesses and Fortis's own Head of Merchant Banking

---

[2] All sanctions-related filings that were previously submitted under seal are attached as exhibits
to the Heintz Declaration (hereinafter "Heintz Decl.").

[3] "Impairments" are losses required to be recorded by a financial institution (such as Fortis) in its
quarterly and annual financial statements based on declines in the "fair value" of securities held
for investment (such as the Certificates).  *See* Initial James Decl. ¶ 11 (Heintz Decl. Ex. 5).

[4] RPI filed an opposition to U.S. Bank's Sanctions Motion on May 12, 2017.  Dkt. 232.

Accounting, Mr. Alain Coppejans, Dr. James concluded that (i) "Fortis witnesses have confirmed that Fortis's impairments represent actual losses incurred by Fortis on the RMBS Certificates at issue in this case;" (ii) the testimony of Fortis witnesses "corroborates U.S. Bank's assertion that the vast majority of Royal Park's claimed losses occurred before, and thus could not have been caused by, any action or inaction of U.S. Bank"; and (iii) "Fortis witnesses have . . . confirmed the existence of several categories of still-unproduced Fortis documents that would both confirm the specific losses taken and likely show additional impairment losses on the 28 Certificates [at issue in this action]," including, among others, "documents regarding impairments taken by Fortis in the fourth quarter of 2008 and the first quarter of 2009," "documents showing the final impairment figures recorded in the books and records of the Fortis affiliates that owned the At-Issue Assets," and "documents specifying the rationale for those impairment figures. . . ." *See, e.g.*, James Reply Decl. ¶ 3 (Heintz Decl. Ex. 11); *see also id.* at ¶¶ 4, 8, 13, 15-16, 29, 41, 57.

There can be no question that Fortis's impairment losses are directly relevant to RPI's purported damages claims. As RPI's expert asserts, RPI seeks damages based on "declines in Certificate values," measured by a "valuation analysis" similar to the "fair value" methodologies employed by financial institutions to value their own investments. Expert Report of W. Scott Dalrymple, Dkt. 152-1, ¶¶ 56-57 (Heintz Decl. Ex. 7); *see also id.* ¶ 37. This is precisely what Fortis's impairments represent – the recognition of losses in value according to International Financial Reporting Standards ("IFRS") "fair value" standards – and that evidence is particularly invaluable here because it was a contemporaneous measure of actual losses by the owner of the Certificates, not a theory constructed in hindsight for litigation purposes. Reply Brief at 3-6 (Heintz Decl. Ex. 10); James Reply Decl. ¶ 6, 48, 53 (Heintz Decl. Ex. 11); James Initial Decl. ¶¶ 20-26 (Heintz Decl. Ex. 5). By failing to produce Fortis's records of its impairments, RPI has

freed itself to argue, for example, that many of the losses did not occur at all (as it did in its Sur-Reply), or that it had produced complete records of them (pointing to obviously incomplete spreadsheets that no one could authenticate). *See* Dkt. 315 ("U.S. Bank's Response to RPI's Sur-Reply") (Heintz Decl. Ex. 13).

On September 13, 2017, U.S. Bank filed a letter brief in further support of its Sanctions Motion, in which it pointed out numerous mischaracterizations and false assertions in RPI's supplemental opposition briefing.[5]   U.S. Bank's Response to RPI's Sur-Reply (Heintz Decl. Ex. 13).  Indeed, RPI's central arguments were unsupported by <u>any</u> evidence whatsoever. *See id.* at 4 (Heintz Decl. Ex. 13) ("RPI offers <u>no competent evidence</u> whatsoever in support of its assertion that it has produced the 'Valuation Documents' reflecting actual impairments and their bases.  RPI offers <u>only a content-free lawyer declaration</u> attaching (i) nine documents selected from RPI's production, neither authenticated nor described, and (ii) excerpts of five deposition transcripts that do not discuss those documents.") (emphasis added); *id.* at 5 (RPI's "disputes that Fortis incurred impairments in Q4 2008 and Q1 2009" appear to be "<u>based on its counsel's interpretation</u> of emails and excel spreadsheets.") (emphasis added); *id.* at 6 ("RPI claims (<u>again without competent evidentiary support</u>) that [relevant] certificates were transferred to RPI at prices set on August 31, 2008, at greater than zero . . . .") (emphasis added).

### D. Magistrate Judge Francis's October 19, 2017 Order Denied Sanctions Based on Erroneous Findings and an Improper Causation Standard.

On October 19, 2017, Magistrate Judge Francis issued the Order denying U.S. Bank's Sanctions Motion.  Dkt. 332 (the "Order") (Heintz Decl. Ex. 16).  U.S. Bank objects to several

---

[5] RPI filed a sur-reply on September 8, 2017.  Dkt. 310 ("RPI's Sur-Reply") (Heintz Decl. Ex. 12).  RPI filed a further sur-reply on September 18, 2017.  Dkt. 320 (Heintz Decl. Ex. 15). Magistrate Judge Francis accepted all rounds of briefing submitted on this matter from both parties.  Dkt. 331.

erroneous findings in the Order, which together form the basis for Magistrate Judge Francis's

overarching conclusion that "U.S. Bank has not demonstrated prejudice."  Order at 8.

Specifically, Magistrate Judge Francis held that sanctions were not warranted for three reasons:

> First, it is not apparent how the data for [the certificates for which Dr. James could not 'reach a conclusion as to Fortis's likely impairment losses as of Q1 2009'] differs from that available for the others which . . . was adequate for him to conduct an analysis.

> Second, Royal Park does appear to have produced final impairment figures through the end of 2008.  (Exhs. 3-5 attached to Declaration of Darryl J. Alvarado dated Sept. 8, 2017 ('Alvarado 9/8/7 Decl.'), attached as Exh. B to Letter of Darryl J. Alvarado dated Sept. 8, 2017).

> Third, any impairments taken for Q1 2009 are of limited relevance, since (1) 'the scope of the [Q1 2009] impairment exercise [was] limited to the retained portfolio,' that is, assets that Fortis had not sold to Royal Park and which, therefore, are not at issue here (Exh. 12 attached to Alvarado 9/8/17 Decl., as 1), and (2) any losses suffered by Fortis were realized as of August 31, 2008, since, according to the terms of the transfer to Royal Park, any change in value after that date would be to the detriment of Royal Park.  (Exh. 9 attached to Alvarado 9/8/17 Decl., at 173).

Order at 10 (formatting modified for emphasis).  Magistrate Judge Francis also concluded that

"[i]t is likely that causation will be proven through statistical analysis," which is contrary to law.

Order at 10-11.  As explained below, each of these findings in the Order constitutes clear error, is

contrary to law, or both.

### III.   STANDARD OF REVIEW

In response to timely objections from a party, Federal Rule of Civil Procedure 72 requires

a district court judge to "determine de novo any part of [a] magistrate judge's disposition [of a

pretrial matter dispositive of a claim or defense] that has been properly objected to . . . [and]

accept, reject, or modify the recommended disposition; receive further evidence; or return the

matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b).

By contrast, Rule 72 requires a district court judge to "modify or set aside any part of [a pretrial matter not dispositive of a party's claim or defense referred to a magistrate judge] that is clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a).  A finding is "clearly erroneous" when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Mobil Shipping & Transp. Co. v. Wonsild Liquid Carriers Ltd.*, 190 F.3d 64, 67-68 (2d Cir. 1999).  A finding is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law or rules of procedure."  *Sahu v. Union Carbide Corp.*, 746 F. Supp. 2d 609, 613 (S.D.N.Y. 2010) (quoting *MacNamara v. City of N.Y.*, 249 F.R.D. 70, 77 (S.D.N.Y. 2008)).  "[T]here is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and review under Rule 72(b)'s de novo standard."  *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010).

"Whether motions for sanctions are dispositive or non-dispositive is currently a contested point of law within the Second Circuit."  *Colida v. Nokia Inc.*, No. 07 CIV 8056 KMW HBP, 2008 WL 4449419, at *2, n.4 (S.D.N.Y. Sept. 29, 2008), *aff'd*, 347 F. App'x 568 (Fed. Cir. 2009).  The Second Circuit has stated that "[m]atters concerning discovery generally are considered 'nondispositive' of the litigation," but recognized that "the imposition of certain sanctions under Rule 37, in some instances, may be considered 'case-dispositive,' requiring de novo review."  *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d. Cir. 1990).  U.S. Bank's Sanctions Motion seeks dispositive relief, including the preclusion of RPI's damage claims for all purportedly assigned claims.  On that basis, the Court should review the objected-to findings in Magistrate Judge Francis's Order under the *de novo* standard. [6]

---

[6] Nevertheless, some courts have determined the governing standard under Rule 72 based on any sanction the magistrate judge actually imposed, rather than the dispositive nature of the relief sought by the motion.  *See, e.g.*, *Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*, 2017 WL

Regardless which standard the Court applies, it should reach the same determination and set aside the Order for the reasons below.

### IV.     ARGUMENT

The Order's ultimate finding that "U.S. Bank has not demonstrated prejudice" was based on several findings that are clearly erroneous or contrary to law, any of which provides a sufficient basis for the Court to set aside the Order.

### A.     Judge Francis's Finding of No Prejudice Is Based Solely on Inadmissible Evidence.

#### 1.     Challenged Finding #1:  "Royal Park does appear to have produced final impairment figures through the end of 2008."

Magistrate Judge Francis erred in finding that "Royal Park does appear to have produced final impairment figures through the end of 2008."  Order at 10.  No admissible evidence supports that finding.  The Order cites three documents attached to a content-free attorney declaration.  *Id.* (citing Dkt. 310, Exs. 3-5 to Ex. B).  RPI's Sur-Reply asserts, without substantiation or evidentiary support, that these documents are "final line-by-line impairments" taken by Fortis for each quarter from Q4 2007 through Q4 2008.  RPI Sur-Reply at 3 (Heintz Decl. Ex. 12).  But RPI's <u>counsel's assertions</u> about the nature or significance of those three documents – documents that have not been authenticated, and for which no witness has laid any foundation or testified to their contents – <u>is not admissible evidence</u>.[7]  U.S. Bank's Response to RPI's Sur-Reply at 4 (Heintz Decl. Ex. 13).

---

2840279, at *8-9 (S.D.N.Y. June 27, 2017) (Moses, Mag. J.) ("[i]f a moving party requests a dispositive sanction, but the magistrate judge declines to impose it, the judge's decision is governed by Rule 72(a).") (internal citations and quotations omitted).

[7] In relying on this incompetent "evidence," Magistrate Judge Francis also erroneously brushed aside U.S. Bank's objections to consideration of the assertions by RPI's counsel, misconstruing the issue as though U.S. Bank sought sanctions for RPI's inability to authenticate impairment records (which was not the case; actual impairment records were not produced).  Order at 11.

Making matters worse, <u>all</u> of the admissible evidence in the record showed that RPI's counsel's unsupported assertions were false:  the documents were <u>not</u> Fortis's actual impairment records.  Fortis's former head of Merchant Banking Accounting, Mr. Alain Coppejans, testified that final impairment documents were kept only by Fortis's "local" accountants, that the impairment numbers could change based on discussions between the local accountants and Fortis's auditors, and that only the local accountants kept track of both the numbers <u>and</u> the loss-causing events that precipitated the impairments.  *See* Reply Brief at 5 (Heintz Decl. Ex. 10); James Reply Decl. ¶ 19 (Heintz Decl. Ex. 11).  Notably, the documents referenced by RPI's counsel contained no reference to the objective loss events tied to the impairments, which Mr. Coppejans testified were kept by Fortis "local" accountants.  *See* U.S. Bank's Response to RPI's Sur-Reply at 4 (Heintz Decl. Ex. 13); James Reply Decl. ¶ 19 (Heintz Decl. Ex. 11).  Moreover, Mr. Coppejans confirmed that the document that RPI's counsel claimed to represent Q4 2008 impairments was <u>not</u> Fortis's record of those impairments, as evidenced by the face of the document, which refers solely to Q4 2008 "market prices," not impairment amounts.  *See* Reply Brief at 5 (Heintz Decl. Ex. 10) (citing James Decl. ¶ 19 (Heintz Decl. Ex. 11)); *id.* at 6, n.3 (citing James Decl. ¶ 56).

Further, RPI's only two witnesses – litigation consultants who have been paid more than €4 million by RPI and whom Judge Francis specifically found have vested interests in the outcome of this case – testified that they had no ability to confirm whether the documents referenced by RPI's counsel contained "final" impairment figures.  Dkt. 218 at 5.  Mr. Weemaes testified that he did not know what auditor's comments looked like, or where such documents could be found.  *See* U.S. Bank's Response to RPI's Sur-Reply at 8 (Heintz Decl. Ex. 13); James Reply Decl., Ex. B (Heintz Decl. Ex. 11); Heintz Decl. in Support of U.S. Bank's Response to

RPI's Sur-Reply, Ex. A (Heintz Decl. Ex. 14).  Mr. Frans likewise testified that he had nothing to do with impairments taken after August 2008, and did not know whether impairments were even taken.  *See* Reply Brief at 7 (Heintz Decl. Ex. 10); James Reply Decl. ¶ 16 (Heintz Decl. Ex. 11).  Thus, there was no admissible evidence before the Court to rebut Dr. James' assertion that, despite U.S. Bank's expert's best efforts to locate them, RPI has not produced "spreadsheets . . . showing Q4 2008 or Q1 2009 impairments affecting the At-Issue Assets."  Initial James Decl. ¶ 16 (Heintz Decl. Ex. 5); James Reply Decl. ¶ 59 (Heintz Decl. Ex. 11).

This issue is critically important because, as U.S. Bank previously explained, RPI's failure to produce the final impairment documents and supporting work papers, which would identify the specific events that precipitated the losses, has allowed RPI to manufacture disputes about whether Fortis took certain impairments, why it did so, and whether Fortis took any impairments at all for Q4 2008 and Q1 2009.  *See* Reply Brief at 2 (Heintz Decl. Ex. 10).  This is despite Mr. Coppejans' testimony (supported by Dr. James) that Fortis was <u>required by law</u> to recognize impairments for the At-Issue Assets for both Q4 2008 and Q1 2009 – and the complete absence of evidence to the contrary.  *See Id*.; James Reply Decl. ¶ 17 (Heintz Decl. Ex. 11).  For these reasons, Magistrate Judge Francis's finding that "Royal Park does appear to have produced final impairment figures through the end of 2008" is clearly erroneous.

> **2.      Challenged Finding #2:  "[A]ny impairments taken for Q1 2009 are of limited relevance, since . . . 'the scope of the [Q1 2009] impairment exercise [was] limited to the retained portfolio,' that is, assets that Fortis had not sold to Royal Park and which, therefore, are not at issue here. . . ."**

Magistrate Judge Francis similarly erred in finding that "any impairments taken for Q1 2009 are of limited relevance, since . . . 'the scope of the [Q1 2009] impairment exercise [was] limited to the retained portfolio,' that is, assets that Fortis had not sold to Royal Park and which, therefore, are not at issue here. . . ."  Order at 10 (citing RPI's Sur-Reply at 5-6).

Here, again, Magistrate Judge Francis's finding relies entirely on RPI's counsel's unsupported (and erroneous) assertions about a document that has not been authenticated by anyone, and for which no witness has laid any foundation or testified to its contents, i.e., inadmissible evidence.  The <u>only</u> admissible evidence in the record was Mr. Coppejans' testimony and Dr. James' expert opinion that Fortis was legally required under IFRS to take impairments for all of the Certificates through the end of Q1 2009 because Fortis was then the legal owner of record for those securities.  *See* Reply Brief at 5 (Heintz Decl. Ex. 10); James Reply Decl. ¶ 17 (Heintz Decl. Ex. 11); Initial James Decl., ¶ 3 (Heintz Decl. Ex. 5).  Not only was this testimony never rebutted, RPI's witnesses also confirmed that they had no knowledge or ability to rebut this testimony.  Mr. Frans had no involvement with impairment decisions after August 2008, and thus had no knowledge about impairments taken by Fortis after that time.  *See* U.S. Bank's Response to RPI's Sur-Reply at 5-7 (Heintz Decl. Ex. 13); Reply Brief at 7 (Heintz Decl. Ex. 10); James Reply Decl. ¶ 16 (Heintz Decl. Ex. 11).  And Mr. Weemaes confirmed that he had no basis to understand whether further impairments were taken after August 2008, and certainly no basis to explain how Fortis could evade IFRS requirements mandating that impairments be taken.  *See Id.*; James Reply Decl. ¶ 16, n.21 (Heintz Decl. Ex. 11).

RPI's willful failure to produce the Q1 2009 impairment records deprived U.S. Bank of definitive evidence regarding losses actually incurred by the Fortis entities and the reasons why they incurred those losses.  RPI has since capitalized on its willful discovery violations by disputing the existence, amount, and reasons for impairments in Q4 2008 and Q1 2009— representing tens of millions of dollars in claimed damages—that it would not have been able to

dispute if it had produced the documents as ordered.[8]  James Reply Decl. ¶ 58 (Heintz Decl. Ex. 11).  For these reasons, the Order's finding that "any impairments taken for Q1 2009 are of limited relevance since . . . 'the scope of the [Q1 2009] impairment exercise [was] limited to . . .' assets that Fortis had not sold to Royal Park and which, therefore, are not at issue here" is clearly erroneous.

### 3.    Challenged Finding #3 (Basis #1): "[A]ny losses suffered by Fortis were realized as of August 31, 2008, since, according to the terms of the transfer to Royal Park, any change in value after that date would be to the detriment of Royal Park."

Magistrate Judge Francis similarly erred in finding that "any losses suffered by Fortis were realized as of August 31, 2008, since, according to the terms of the transfer to Royal Park, any change in value after that date would be to the detriment of Royal Park."  Order at 10 (citing a single exhibit, Dkt. 310, Ex. 9 to Ex. B (Heintz Decl. Ex. 12)).  Here, again, the assertions in RPI's Sur-Reply – which Magistrate Judge Francis clearly adopts – <u>are not evidence</u>.[9]  The finding is based solely on RPI's counsel's interpretation of a document that has not been authenticated, and for which no witness has laid a proper foundation or testified to its contents. *See* U.S. Bank's Response to RPI's Sur-Reply at 4 (Heintz Decl. Ex. 13).

More significantly, <u>all</u> of the admissible evidence is to the contrary.  Both Mr. Coppejans and Dr. James testified that Fortis was legally required to, and did, recognize impairment losses

---

[8] Indeed, as detailed below, this discovery failure precludes any defense on this basis as to six of the Certificates at issue in this action.  *Id.* ¶ 34; *see* Section IV(B)(2).

[9] In this regard, Magistrate Judge Francis may have been confused by RPI's assertion that impairment losses after August 2008 were later "reversed" by Fortis (though RPI elsewhere contends those impairments did not even occur) following its RMBS portfolio sale to RPI in May 2009.  Even if true (and there is no evidence for it), RPI's unsubstantiated assertion would not change the fact that such losses actually were recognized in the interim, and would provide excellent evidence to U.S. Bank now to defend RPI's claims that such losses were caused by later alleged conduct of U.S. Bank.  *See* U.S. Bank's Response to RPI's Sur-Reply at 4-7 (Heintz Decl. Ex. 13).

after August 2008, and through at least Q1 2009 as the legal owners of the Certificates.  *See* Reply Brief at 5 (Heintz Decl. Ex. 10); James Reply Decl. ¶ 17 (Heintz Decl. Ex. 11).  They also both testified that such impairments reflected <u>incurred losses</u> taken by Fortis with real-world impacts on Fortis, including on its profit and loss financial statements, taxes and dividends paid, and regulatory capital requirements.  *See* Reply Brief at 3 (Heintz Decl. Ex. 10); James Reply Decl. ¶ 7 (Heintz Decl. Ex. 11).  RPI offered <u>no</u> admissible evidence to the contrary.  For this reason, and the reasons stated above, Magistrate Judge Francis's finding that "any impairments taken for Q1 2009 are of limited relevance since . . . any losses suffered by Fortis were realized as of August 31, 2008, since . . . any change in value after that date would be to the detriment of Royal Park" is clearly erroneous.

### B.      The Order's Finding of No Prejudice is Based on Mistaken, Unsupportable Interpretations of the Evidence Presented.

Two of Magistrate Judge Francis's findings underpinning the denial of sanctions are clear mistakes based on his apparent misreading of the evidence and parties' arguments.

#### 1.      Challenged Finding #3 (Basis #2): "[A]ny losses suffered by Fortis were realized as of August 31, 2008, since, according to the terms of the transfer to Royal Park, any change in value after that date would be to the detriment of Royal Park."

The Order's finding that "any losses suffered by Fortis were realized as of August 31, 2008," somehow rendering irrelevant the impairment losses actually recognized by Fortis in the subsequent eight months, is a clear mistake.  Order at 10 (emphasis added).  No evidence or submissions from either party supports this finding.  Even RPI argues—without competent evidentiary support—that Fortis's losses were "realized" when Fortis sold the Certificates to RPI in May 2009.  See RPI's Sur-Reply at 6.  But no evidence or submissions from either party supports this finding.  Even RPI argues—without competent evidentiary support—that Fortis's losses were "realized" when Fortis sold the Certificates to RPI in <u>May 2009</u>.  *See* RPI's Sur-

Reply at 6 (quoting Dkt. 310, Ex. 11 to Ex. B) (Heintz Decl. Ex. 12); Sanctions Motion at 5-6

(Heintz Decl. Ex. 4); *see also* Dkt. 1 at ¶ 27 (RPI's acquisition dates for Certificates in May 2009

and later).  And RPI seeks damages based on losses in value, whether "realized" or not; thus, the

unrealized losses actually recognized by Fortis are highly relevant.  U.S. Bank's Response to

RPI's Sur-Reply at 10 (Heintz Decl. Ex. 13).

In reality, the undisputed evidence showed that Fortis continued to own the Certificates in

the interim, and continued to recognize massive impairment losses on its entire RMBS portfolio

during that period, which included the depths of the international financial crisis.  James Decl.

¶¶16-18, 27-29, 32-33 (Heintz Decl. Ex. 11).  Thus, the Order's finding that "any losses suffered

by Fortis were realized as of August 31, 2008" is a clear error that lends no support to its finding

of no prejudice.

> **2.      Challenged Finding #4:  "[I]t is not apparent how the data for [the six
> certificates for which US Bank's expert could not 'reach a conclusion
> as to Fortis's likely impairment losses as of Q1 2009'] differs from
> that available for the others which . . . was adequate for him to
> conduct an analysis."**

Magistrate Judge Francis's finding that "it is not apparent how the data for [the six

certificates for which US Bank's expert could not 'reach a conclusion as to Fortis's likely

impairment losses as of Q1 2009'] differs from that available for the others which . . . was

adequate for him to conduct an analysis" is another clear mistake.  Order at 10 (emphasis added).

This finding, again, ignored extensive, unrefuted evidence.

Mr. Coppejans testified that Fortis's "impairments were based on the 'market price' of

the security," and that "Fortis would estimate the 'market price' of a security by adopting pricing

data provided by third-party pricing services" and, if necessary, looking to "price quotes

provided by market participants." James Reply Decl. ¶ 25 (Heintz Decl. Ex. 11).  Because RPI

has not produced the actual impairment records, Dr. James relied on this testimony to estimate

the impairments likely taken by Fortis for 15 of the at issue Certificates.  For the six Certificates discussed in the Order, however, Dr. James explained that there were <u>no</u> pricing service data or price quotes from market participants, which presented a <u>complete barrier</u> to Dr. James' ability to estimate impairments taken by Fortis in Q4 2008 and Q1 2009, before any alleged wrongdoing by U.S. Bank.  *Id.* ¶ 29, Table 3; *see also id.* ¶28, ¶ 34, Table 4 (listing the cumulative estimated impairment or loss amount for six certificates as "Unknown").[10]

For these reasons, Magistrate Judge Francis's finding that "it is <u>not apparent</u>" why Dr. James could not reach a conclusion as to Fortis's likely impairment losses for six certificates is a clear mistake.

### C.    Judge Francis Applied the Wrong Causation Standard.

1.    **Challenged Finding #5:  "It is likely that causation will be proven through statistical analysis, not by reference to comments in an email authored by an employee of a Fortis affiliate."**

Magistrate Judge Francis dismissed US Bank's concern "that without additional valuation documents, it cannot ascertain the cause for the loss of value of the Certificates" based on his statement that "[i]t is likely that causation will be proven through statistical analysis . . . ."  Order at 10-11.  That assertion is contrary to law.

---

[10] Dr. James also clearly explained that RPI's willful failure to produce Q4 2008 and Q1 2009 Fortis impairment documents prejudices U.S. Bank's ability to refute RPI's damages claims for <u>all</u> 28 certificates at issue.  *See id.* ¶ 16 ("[W]e have been unable to locate spreadsheets produced by Royal Park showing Q4 2008 or Q1 2009 impairments affecting [any of] the At-Issue Assets.") (Heintz Decl. Ex. 11).  Because of this Dr. James could not confirm the Q4 2008 and Q1 2009 impairment amounts for any of the 28 Certificates in the absence of the improperly withheld Fortis records, but he could only "<u>estimate</u> . . . these additional impairment losses . . . for <u>many</u> [i.e., all but six] of the Certificates based upon the impairment methodology employed by Fortis at the time, and as testified to by Mr. Coppejans."  *Id.* ¶ 18 (emphasis added).  The Order improperly allows RPI to dispute those estimates and assumptions, when the definitive evidence that RPI failed to produce would eliminate all such disputes.  *See* James Reply Decl. ¶ 16, 18-19 (Heintz Decl. Ex. 11); Reply Brief at 4-9 (Heintz Decl. Ex. 10); U.S. Bank's Response to Sur-Reply at 5-7 (Heintz Decl. Ex. 13).  The Order entirely ignores this prejudice to U.S. Bank.

As the Second Circuit has made clear:

> The proper measure for damages for breach of contract is <u>determined by the loss sustained or gain prevented at the time and place of breach</u>.  Measuring contract damages by the value of the item at the time of the breach is eminently sensible and actually takes expected lost future profits into account.  The value of the assets for which there is a market is the discounted value of the stream of future income that the assets are expected to produce.  For this reason, New York courts have explicitly upheld damage awards <u>based on what knowledgeable investors</u> anticipated the future conditions and performance would be at the time of breach and have <u>rejected awards</u> based on what the actual economic conditions and performance were <u>in light of hindsight</u>.

*Sharma v. Skaarup Ship Mgm't Corp.*, 916 F.2d 820, 825-26 (2d Cir. 1990) (emphases added).

The unrebutted, unequivocal testimony of Mr. Coppejans was that Fortis's impairment decisions squarely tracked this legal standard.  *See* Reply Brief at 4 (Heintz Decl. Ex. 10); James Reply Decl. ¶ 6 (Heintz Decl. Ex. 11).  Mr. Coppejans testified that, under IFRS requirements, Fortis was required to and did determine its impairments based on how a "knowledgeable, willing investor" would have valued the securities at the time.  *See* Reply Brief at 4 (Heintz Decl. Ex. 10); James Reply Decl. ¶ 6 (Heintz Decl. Ex. 11).  Evidence of the impairments taken by Fortis was thus crucial to prove that the losses that RPI sought as damages in this case <u>could not have been caused</u> by U.S. Bank because the losses were incurred by Fortis <u>before</u> any alleged breach of contract by U.S. Bank.  *See* Reply Brief at 9 (Heintz Decl. Ex. 10); Initial James Decl. ¶ 21 (Heintz Decl. Ex. 5); James Reply Decl. ¶ 49 (Heintz Decl. Ex. 11).  Such evidence would directly rebut RPI's entire causation theory that Fortis's losses were caused by loss of subordination due to U.S. Bank's alleged failure to perform its contractual obligations, which did not allegedly begin, until, at the earliest, January 2009.  *Id.*

The Order's vague reference to statistics ignores both this controlling legal standard and the unrebutted evidence.  Magistrate Judge Francis held, without legal or evidentiary citation, that causation would likely be determined through statistical evidence.  <u>No</u> evidence supports this conclusion: RPI's expert never testified that causation would or could be determined by

statistics.  *See* James Reply Decl. ¶¶ 37-39, 41 (Heintz Decl. Ex. 5) (explaining that Mr.

Dalrymple "did not know how the alleged damages of any putative class member would be

calculated," "did not know what economic consequences would be caused by U.S. Bank's

alleged breaches," and "Mr. Dalrymple's theory of causation is that U.S. Bank's alleged failure

to seek repurchase of loans that had breaches of representations and warranties caused a loss of

collateral to the Trusts, which in turn, reduced the amount of subordination (or credit protection)

underlying certain Certificates, which in turn, caused the "value" of the Certificates to

decrease.").

     Nor is there any legal support for this determination.  Magistrate Judge Francis may have

been relying (erroneously) upon the law governing securities fraud cases, in which an investor

may prove that a fraudulent misrepresentation caused losses based on a statistical event study

measuring the impact of a subsequent corrective disclosure on the efficient market for a publicly

traded security.  Even if such law and associated causation theories could be borrowed and

applied to this breach of contract action (which they cannot, under the governing New York

law), those principles still would be irrelevant here.  The law is clear that such statistical

evidence cannot be used to prove causation where the market is not "efficient."  *See, e.g.*,

*Halliburton Co. v. Eric P. John Fund, Inc.*, 134 S. Ct. 2398, 2408 (2014) (to establish rebuttable

presumption of reliance (transaction causation) in a securities fraud case, plaintiff must prove

"(1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) <u>that</u>

<u>the stock traded in an efficient market</u>, and (4) that the plaintiff traded the stock between the time

the misrepresentations were made and when the truth was revealed.") (emphasis added).  The

unrebutted evidence in this case is that the RMBS market in which the Certificates sporadically

traded was <u>not</u> efficient at the times of the alleged breaches.  As explained by Dr. James, market

conditions "were distorted during the timeframe at issue," such that there was "no single price for Certificates during this period of distortion."  Initial James Decl. ¶ 42 (Heintz Decl. Ex. 5); *see also id.* ¶ 56.

Judge Francis's determination that causation will likely be determined through statistics, as opposed to contemporaneous impairment documents that squarely tracked the legal measure of breach of damages, was thus both legal error and clearly erroneous on the undisputed facts.

## V.   <u>CONCLUSION</u>

U.S. Bank objects to five specific findings in the October 19, 2017 Order.  The first four findings comprise the entirety of Magistrate Judge Francis's bases for finding that U.S. Bank suffered no prejudice due to RPI's failure to produce assignor documents reflecting the timing and scope of impairments taken by Fortis.  *See* Order at 11 (stating that "U.S. Bank has demonstrated a reasonable basis for seeking information about when the Certificates lost value . . . .") (emphasis in original).  U.S. Bank respectfully submits that striking any of these erroneous findings is a sufficient basis to set aside Magistrate Judge Francis's October 19 Order and award appropriate sanctions against RPI.

U.S. Bank also submits that the fifth objected-to finding, in which Magistrate Judge Francis further attributes his finding of no prejudice to his application of a causation standard that is contrary to law, presents an independently sufficient basis for the Court to set aside Magistrate Judge Francis's October 19 Order and award appropriate sanctions against RPI.

The appropriate sanctions should be those that the Court determines necessary to prevent further prejudice to U.S. Bank – up to and including precluding RPI from asserting damages allegedly incurred by its Assignors or, if the Court finds sufficient, the intermediate measures suggested by U.S. Bank to prevent RPI from exploiting its willful failure to comply with its

discovery obligations to obtain strategic or tactical advantage in this litigation.  *See* Reply at 10

(Heintz Decl. Ex. 10).


Dated:  November 2, 2017                    Respectfully submitted,

                                            MORGAN, LEWIS & BOCKIUS, LLP

                                            By: ___*/s/Joseph E. Floren*_____
                                                    Joseph E. Floren

                                            Attorneys for Defendant
                                            U.S. Bank National Association, as Trustee