UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

ROYAL PARK INVESTMENTS SA/NV,
Individually and on Behalf of All Others
Similarly Situated,

                         Plaintiff,

        vs.

U.S. BANK NATIONAL ASSOCIATION, as
Trustee,

                      Defendant.

———————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 1:14-cv-02590-VM-RWL

CLASS ACTION

ROYAL PARK INVESTMENTS SA/NV'S
MEMORANDUM OF LAW IN
OPPOSITION TO U.S. BANK NATIONAL
ASSOCIATION'S RULE 72 OBJECTIONS
TO MAGISTRATE JUDGE'S OCTOBER 19,
2017 ORDER

1335153_1

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................1

II.    RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...............5

     A.     U.S. Bank's First Sanctions Motion ..............................................................5

     B.     Judge Francis Denies U.S. Bank's First Sanctions Motion ...................................6

     C.     Royal Park Produces Thousands of Fortis Valuation Documents and Secures BNPPF's Cooperation to Produce Even More ...........................................7

     D.     U.S. Bank's Second Sanctions Motion ..................................................................7

     E.     Judge Francis Denies U.S. Bank's Second Sanctions Motion................................9

     F.     U.S. Bank Objects to the Second Sanctions Order .................................................10

III.   LEGAL STANDARD...........................................................................................10

IV.    ARGUMENT .......................................................................................................13

     A.     Judge Francis Correctly Found that Royal Park Produced Final Impairment Figures Through the End of 2008 ....................................................13

     B.     Impairments for 1Q09 Were Limited to the Retained Portfolio...........................18

     C.     Impairments Taken on the Certificates After Q3 2008, if Any, Are Irrelevant, as Royal Park Was Responsible for Any Losses Incurred Thereafter ........................................................................................................20

     D.     Dr. James Has Not Offered a Credible Explanation for Why He Was Unable to Value Six of the Certificates at Issue ..................................................22

     E.     Judge Francis Correctly Rejected U.S. Bank's Causation Argument...................23

V.     CONCLUSION....................................................................................................25

# TABLE OF AUTHORITIES

Page

## CASES

*Advance Coating Tech., Inc. v. LEP Chem., Ltd.*,
  142 F.R.D. 91 (S.D.N.Y. 1992) ...................................................................4, 12

*Carbajal v. Warner*,
  2014 U.S. Dist. LEXIS 5083
  (D. Colo. Jan. 14, 2014) ...............................................................................16

*Cook v. Am. S.S. Co.*,
  134 F.3d 771 (6th Cir. 1998) ........................................................................16

*Gomez v. Martin Marietta Corp.*,
  50 F.3d 1511 (10th Cir. 1995) ......................................................................11

*Gusmao v. GMT Grp., Inc.*,
  2009 U.S. Dist. LEXIS 37092
  (S.D.N.Y. Apr. 30, 2009)...............................................................................20

*Halliburton Co. v. Eric P. John Fund, Inc.*,
  __ U.S. __, 134 S. Ct. 2398 (2014).............................................................24

*In re Lavender*,
  399 F. App'x 649 (2d Cir. 2010) ..................................................................12

*In re WorldCom, Inc.*,
  357 B.R. 223 (S.D.N.Y. 2006).......................................................................14

*Jensen v. Phillips Screw Co.*,
  546 F.3d 59 (1st Cir. 2008)............................................................................15

*Khatabi v. Bonura*,
  2017 U.S. Dist. LEXIS 61921
  (S.D.N.Y. Apr. 21, 2017)..........................................................................10, 11

*Kiobel v. Millson*,
  592 F.3d 78 (2d Cir. 2010).............................................................................10

*Leviton Mfg. Co. v. Greenberg Traurig LLP*,
  2011 U.S. Dist. LEXIS 77432
  (S.D.N.Y. July 13, 2011) ...............................................................................12

*Mastr Adjustable Rate Mortgs. Tr. 2006-OA2 v. UBS Real Estate Sec., Inc.*,
  295 F.R.D. 77 (S.D.N.Y. 2013) ....................................................................18

Page

*McNamee v. Clemens*,
 2014 U.S. Dist. LEXIS 46338
 (E.D.N.Y. Apr. 2, 2014)..................................................................................12

*Rezende v. Citigroup Glob. Mkts., Inc.*,
 2011 U.S. Dist. LEXIS 45480
 (S.D.N.Y. Mar. 11, 2011) ............................................................................4, 15

*Seabrook v. N.Y. City Health & Hosps. Corp.*,
 2015 U.S. Dist. LEXIS 8148
 (S.D.N.Y. Jan. 20, 2015).................................................................................15

*Sentis Grp., Inc. v. Shell Oil Co.*,
 559 F.3d 888 (8th Cir. 2009) ..........................................................................15

*Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*,
 2017 U.S. Dist. LEXIS 102304
 (S.D.N.Y. June 27, 2017)................................................................................11

*SJS Distrib. Sys. v. Sam's E., Inc.*,
 2013 U.S. Dist. LEXIS 147549
 (E.D.N.Y. Oct. 11, 2013) .................................................................12, 18, 22

*Sovulj v. United States*,
 2005 U.S. Dist. LEXIS 46700
 (E.D.N.Y Sept. 19, 2005)................................................................................18

*Steele v. Costco Wholesale Corp.*,
 2005 U.S. Dist. LEXIS 8348
 (E.D.N.Y. May 6, 2005) ..................................................................................11

*Thomas E. Hoar, Inc. v. Sara Lee Corp.*,
 900 F.2d 522 (2d Cir. 1990)...........................................................................11

*U.S. Info. Sys. v. IBEW Local Union No. 3*,
 2006 U.S. Dist. LEXIS 52870
 (S.D.N.Y. Aug. 1, 2006) ............................................................................15, 18

*U2 Home Entm't, Inc. v. Hong Wei Int'l Trading Inc.*,
 2007 U.S. Dist. LEXIS 59233
 (S.D.N.Y. Aug. 13, 2007) ................................................................................12

*United States ex rel. Brennan v. Fay*,
 353 F.2d 56 (2d Cir. 1965)..............................................................................20

- iii -

Page

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78j(b)...........................................................................................................................24

Federal Rules of Civil Procedure
    Rule 37....................................................................................................................11, 13
    Rule 72.........................................................................................................1, 6, 11, 12
    Rule 72(a).......................................................................................................................11
    Rule 72(b).......................................................................................................................12

Federal Rules of Evidence
    Rule 803............................................................................................................................4
    Rule 803(6).....................................................................................................................14
    Rule 807.........................................................................................................................14
    Rule 901.......................................................................................................................4, 14
    Rule 901(a).....................................................................................................................15

**SECONDARY AUTHORITIES**

12 Wright, Miller & Marcus, *Fed. Prac. & Proc.* (2d ed. 2017)
    §3068.2..........................................................................................................................11

## I.      INTRODUCTION

Defendant U.S. Bank N.A.'s ("U.S. Bank") Rule 72 objection to Judge Francis's October 19, 2017 order denying, for the second time, discovery sanctions against plaintiff Royal Park Investments SA/NV ("Royal Park") (Dkt. No. 339 (the "Objection")) is a desperate attempt to salvage its 19-months-long, meritless campaign for sanctions against Royal Park.  Since May 2016, U.S. Bank has clogged the Court's docket and wasted countless hours and hundreds of thousands of dollars on this issue, repeatedly changing its theory in the hopes of chancing upon *some* ground for sanctions.  It has failed utterly on each occasion.  It is far past time for this time-consuming, expensive, and manufactured distraction to be put to rest; U.S. Bank's Objection must be denied.

U.S. Bank's quest for sanctions was initiated to obtain a strategic litigation advantage, not to obtain necessary discovery.  U.S. Bank's first baseless motion for sanctions was a sweeping indictment that Royal Park had failed to collect or produce *any* documents from Fortis Bank SA/NV ("Fortis"), the entity from which Royal Park acquired the certificates at issue in this case, despite the fact that document production had barely just begun.[1]  Worse, the first sanctions motion relied heavily upon an alleged Belgian "court opinion" that, as Judge Francis acknowledged in denying U.S. Bank's motion, was, in truth, "*not* a court decision at all, but an advocacy piece" written by lawyers opposing Royal Park. Dkt. No. 141 ("First Sanctions Order") at 11 n.4.[2]  Immediately upon losing its first sanctions motion, U.S. Bank sought to re-file a second sanctions motion.  This request was denied, and U.S. Bank was required to wait until after Royal Park had an opportunity to complete its document production before U.S. Bank moved, again, for sanctions based on a failure to produce documents.  Ultimately, Royal Park produced over *242,000 documents* from its files,

---

[1]      Incredibly, Royal Park had produced just *2%* of its total production when U.S. Bank filed its first motion for sanctions.

[2]      All emphasis is added and citations are omitted throughout unless otherwise indicated.

including more than *80,000* that were collected from Fortis in connection with Royal Park's formation.  (Royal Park's production in this action dwarfs U.S. Bank's production of approximately 55,000 documents, despite the fact that it is U.S. Bank's misconduct at the center of this action.)

In addition, over the next several months, Royal Park obtained the cooperation of BNP Paribas Fortis ("BNPPF," Fortis's successor) to search for and produce additional responsive documents.  BNPPF notified Royal Park that it would produce documents from its files on March 2, 2017, the evening before U.S. Bank's second motion for sanctions was due.  Royal Park promptly informed U.S. Bank that it would be receiving additional documents from BNPPF and that it would produce the documents to U.S. Bank as soon as available, thus eliminating any need for U.S. Bank to further burden the Court with the issue.  *See* Dkt. No. 185-1.  Undeterred, U.S. Bank filed its motion for sanctions anyway.

In its second motion for sanctions, U.S. Bank abandoned its extraordinary claim that *no* documents from Fortis had been collected or produced, asserting instead that Royal Park had failed to produce any "Fortis Valuation Documents."  *See* Dkt. No. 180.[3]  It also submitted the affidavit of Dr. Christopher James in support of its motion.  Dkt. No. 181-1.  Amazingly, though Dr. James asserted in his affidavit that Royal Park had not produced any Fortis Valuation ███████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████

---

[3]   U.S. Bank defined the "Fortis Valuation Documents" as "Assignor documents reflecting impairments taken and valuations assigned by the Assignors on Certificates at issue in this case."  Dkt. No. 180 at 2.

By the time Royal Park opposed U.S. Bank's second sanctions motion in May 2017 – one month prior to the fact discovery cut-off – Royal Park had produced an additional **10,000 documents** from BNPPF.  Rather than withdraw its motion for sanctions upon receipt of the documents, or even stay the motion so it could analyze whether it actually possessed the documents it claimed to need, U.S. Bank characteristically bulldozed ahead.[4]  By the time U.S. Bank filed its reply, the basis for its motion had fizzled to a claim that Royal Park had not produced Fortis's "final" impairment documents.  *See* Dkt. No. 302 at 3.  But as Royal Park demonstrated in its sur-reply, that assertion was also false.  Dkt. No. 310-1, 310-2.  Judge Francis's opinion denying U.S. Bank's second motion for sanctions was thorough, explaining that U.S. Bank had once again failed to demonstrate that it was prejudiced by any alleged deficiencies in Royal Park's production.

Unwilling to let the curtains close on its manufactured sideshow, U.S. Bank's Objection rehashes the same arguments and proffers the same evidence considered multiple times by Judge Francis, asks the Court to ignore the documentary evidence and testimony, overlook fatal shortcomings of its proffered expert opinions, and overrule Judge Francis's order denying – after consideration of more than **2,000** pages of briefing and supporting evidence – its second motion for sanctions.  The Objection must be denied, for multiple reasons.

First, Judge Francis correctly found that "Royal Park does appear to have produced final impairment figures through the end of 2008."  Dkt. No. 332 ("Second Sanctions Order") at 10.

---

[4]    That U.S. Bank *still* has not reviewed Royal Park's initial production is evident from U.S. Bank's most recent deposition of Danny Frans in November 2017, which U.S. Bank moved to compel, arguing that the BNNPF documents contained previously-unproduced documents related to Mr. Frans.  *See* Dkt. No. 313.  In opposing the motion to compel the deposition, Royal Park explained that the BNPPF documents were largely duplicative of the documents Royal Park collected from Fortis at its formation, proving that Royal Park had already collected and produced all relevant documents.  *See* Dkt. No. 318 at 2-3.  Judge Francis permitted U.S. Bank to depose Mr. Frans – for a *fourth* time – but "*solely related to the documents produced subsequent to his prior deposition*."  Dkt. No. 325 at 1-2.  Proving Royal Park correct, of the 44 BNPPF documents marked at Mr. Frans's deposition, at least 30 – nearly **70%** – were duplicates of documents produced from Royal Park's own files *before* Mr. Frans's prior deposition.

Preferring to ignore the voluminous evidence, however, U.S. Bank claims that the witness testimony and documents cited by Royal Park demonstrating that final impairment documents have been produced are "inadmissible."  To the contrary, the documents cited by Royal Park – including Fortis e-mails, documents on official Fortis letterhead, meeting minutes and official, audited Fortis Annual Reports – are admissible business records and authentic under Fed. R. Evid. 803 and 901, respectively.

Second, and fatal to U.S. Bank's Objection, evidence relied upon by the court in adjudicating a motion for sanctions **need not be admissible**.  *See Rezende v. Citigroup Glob. Mkts., Inc.*, 2011 U.S. Dist. LEXIS 45480, at *85-*88 (S.D.N.Y. Mar. 11, 2011).  That U.S. Bank does not like what the evidence shows, or that Judge Francis reviewed the evidence and found that Royal Park has produced what is required of it, is "nothing more than an attempt to substitute [its] interpretation of the evidence for that of the Magistrate."  *Advance Coating Tech., Inc. v. LEP Chem., Ltd.*, 142 F.R.D. 91, 95 (S.D.N.Y. 1992).

Third, Judge Francis correctly found, based on indisputable documentary evidence and testimony, that "any impairments taken for Q1 2009 are of limited relevance, since (1) 'the scope of the [Q1 2009] impairment exercise [was] limited to the retained portfolio,' that is, assets that Fortis had not sold to Royal Park and which, therefore, are **not** at issue here . . . , and (2) . . . any change in value after that date would be to the **benefit or detriment of Royal Park**."  Second Sanctions Order at 10.  U.S. Bank does not demonstrate any error in Judge Francis's analysis – it merely asks this Court to reach a different conclusion.  Such a request falls far short of demonstrating the clear error necessary to set aside the Second Sanctions Order.

Fourth, Judge Francis did not err in discounting Dr. James's assertion that he required additional impairment documents in order to value certain of the certificates because he was, in fact,

able to perform such analysis for 15 of the certificates at issue and conceded that pricing data was available for the remaining certificates. Moreover, Royal Park established that Dr. James's opinions regarding Royal Park's production were deeply flawed and unreliable.

Finally, Judge Francis correctly rejected U.S. Bank's causation argument, finding "[i]t is likely that causation will be proven through statistical analysis, not by reference to comments in an email authored by an employee of a Fortis affiliate." Second Sanctions Order at 11. Judge Francis explicitly considered and rejected U.S. Bank's arguments, finding that while internal Fortis documents might show *when* Fortis determined to impair an asset, they are irrelevant to the *cause* of damages. Indeed, causation and damages in this case are relatively straightforward – both will require an analysis to determine the increased cash flows that would have flowed to the Trusts had U.S. Bank fulfilled its duties, along with how those increased cash flows would have affected the certificates' value. In other words, U.S. Bank caused losses to the Trusts by failing to carry out its obligations, thereby preventing cash flows otherwise owed to the Trusts from being delivered to the Trusts. Commentary by one among thousands of certificateholders is simply irrelevant to the cause of the alleged damages.

Because U.S. Bank has failed to establish that Judge Francis committed clear error or that the findings in the Second Sanctions Order are contrary to law, its Objection must be denied.

## II.     RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.     U.S. Bank's First Sanctions Motion

On May 27, 2016, while the parties were still negotiating search terms to be used in identifying responsive documents for production, before the parties had begun document production in earnest, and more than a year before the discovery cutoff, U.S. Bank filed its first sanctions motion alleging that Royal Park had failed to produce broad categories of documents from Fortis.

- 5 -

*See* Dkt. Nos. 96, 97.  While U.S. Bank's first sanctions motion was pending, the parties continued to negotiate applicable search terms and custodians for their respective review and production of documents.  Evidencing the premature and baseless nature of U.S. Bank's first sanctions motion, 251,982 of the 257,975 total documents that have been produced to U.S. Bank to date – or **97.7%** – were produced after U.S. Bank's first sanctions motion was filed.  *See*  Declaration of Darryl J. Alvarado in Support of Royal Park Investments SA/NV's Memorandum of Law in Opposition to U.S. Bank National Association's Rule 72 Objections to Magistrate Judge's October 19, 2017 Order ("Alvarado Decl."), ¶3.

> ### B.      Judge Francis Denies U.S. Bank's First Sanctions Motion

On November 9, 2016, Judge Francis denied U.S. Bank's first motion for sanctions, holding that the only assignor documents that ***might*** be relevant are those related to Fortis's impairment and valuation of the certificates prior to the transfer to Royal Park.  *See* First Sanctions Order at 22-23. Judge Francis further held that U.S. Bank had not demonstrated that it would be prejudiced if any such documents were not produced.  *Id.*  Recognizing that the dispute presented was "not the usual case where the non-moving party has, after the issuance of a court order, exercised a choice not to comply with it," Judge Francis concluded that the existence of "prejudice is pivotal" to the determination of whether any sanctions are warranted.  *Id.* at 16-17.  Because "[n]either party ha[d] [yet] proffered evidence from a damages expert suggesting that the missing documentation is or is not essential to a damages analysis," Judge Francis denied U.S. Bank's motion without prejudice, holding that it could "renew its application ***when and if*** it can demonstrate that it has suffered prejudice as a consequence of Royal Park's failure to comply with [the Court's] order to produce documents in the possession of the Assignors."  *Id.* at 23, 25-26.

- 6 -

**C.      Royal Park Produces Thousands of Fortis Valuation Documents and Secures BNPPF's Cooperation to Produce Even More**

Although Royal Park's document production had only just begun, on November 17, 2016, U.S. Bank sought to immediately re-move for sanctions.  *See* Dkt. No. 143.  Royal Park opposed U.S. Bank's request, arguing that a renewed motion for sanctions should be filed, if at all, after the completion of fact and expert discovery.  Dkt. No. 142.  Judge Francis denied U.S. Bank's request and scheduled briefing to take place in February 2017.  *See* Dkt. No. 147.  The parties later stipulated that any renewed motion for sanctions would be filed in March 2017.  *See* Dkt. No. 175.

Meanwhile, Royal Park continued to expend substantial efforts and resources to obtain responsive documents from BNPPF, ultimately producing approximately 15,600 documents from BNPPF's files.  These documents supplemented Royal Park's own production of more than 240,000 documents from its files, thousands of which originated at Fortis.  *See* Alvarado Decl., ¶¶3-4.  Specifically, at the time of its formation, Royal Park collected thousands of documents from Fortis, more than ***80,000*** of which were produced to U.S. Bank.  *Id.*, ¶4; *see also* Dkt. No. 113 ¶¶19-30.  Among those documents are countless documents concerning valuation and impairments – the very documents underlying U.S. Bank's quest for sanctions.  Alvarado Decl., ¶¶5-6.

**D.      U.S. Bank's Second Sanctions Motion**

On March 3, 2017, Royal Park informed U.S. Bank that it had secured BNPPF's agreement to search for and produce documents from its files, which, as described above, resulted in the production of an additional 15,600 documents from BNPPF.  *See* Dkt. No. 185, Ex. 1.  U.S. Bank nevertheless filed its second motion for sanctions later that day, advancing the demonstrably false argument that Royal Park had failed to produce any Fortis Valuation Documents.  Dkt. Nos. 179, 180.  Because U.S. Bank's second sanctions motion concerned the very documents that Royal Park had either already produced or that BNPPF had recently agreed to produce, Royal Park sought to

- 7 -

stay briefing on the second sanctions motion pending the production of documents from BNPPF and the conclusion of the fact discovery period, which would remain open for another three months. *See* Dkt. Nos. 185, 188.  On March 15, 2017, "in the interest of addressing the pending issues on the merits," Judge Francis postponed the date for Royal Park's opposition to the second sanctions motion until May 2017.  Dkt. No. 189.

On May 15, 2017, Royal Park opposed U.S. Bank's second motion for sanctions, demonstrating that it had produced the documents U.S. Bank purported to need and that U.S. Bank had once again failed to identify any missing documents that were necessary for either Royal Park's or its own damages methodologies. *See* Dkt. No. 234.  Indeed, because U.S. Bank had not even proposed a damages methodology, it necessarily could not show that it was prejudiced by any alleged failure to produce hypothetical valuation documents. *Id.*

On reply, U.S. Bank abandoned its baseless claim that Royal Park had failed to produce any Fortis Valuation Documents, narrowing its argument yet again to the claim that it was missing documents evidencing "final impairments" – a category not even mentioned in its opening brief – for 4Q08 and 1Q09. *See* Dkt. No. 302.  Because Royal Park had indeed produced thousands of documents from Fortis, Royal Park expected that U.S. Bank would attempt to revise its arguments on reply; as a result, Royal Park immediately sought leave to file a sur-reply addressing U.S. Bank's newfound arguments and explaining that, in fact, final impairment documents had been produced. *See* Dkt. Nos. 310 (motion to file sur-reply), 310-1 (proposed sur-reply), 331 (order accepting Royal Park's sur-reply).  U.S. Bank then filed a sur-sur-reply letter brief on September 13, 2017 (*see* Dkt. No. 315), and Royal Park responded to U.S. Bank's sur-sur-reply on September 18, 2017 (*see* Dkt. No. 320).

### E.   Judge Francis Denies U.S. Bank's Second Sanctions Motion

On October 19, 2017, Judge Francis held that "U.S. Bank has not demonstrated prejudice" warranting any sanctions against Royal Park.  Second Sanctions Order at 8.  In so finding, Judge Francis noted that U.S. Bank's proffered expert, Dr. James, was able to prepare "estimated valuations for fifteen certificates" at issue by "rel[ying] on a variety of sources, including Fortis documents and prices quoted by IDS and Bloomberg."  *Id.*  Tellingly, the Fortis documents upon which Dr. James based his valuation opinions were the very documents that U.S. Bank accused Royal Park of failing to produce as the basis for its second sanctions motion (*see* Dkt. No. 180), but that had actually been produced to U.S. Bank ***four to ten months prior*** to the filing of that motion. *See* Dkt. Nos. 310-1 at 3-4, 310-12.

Judge Francis also found that "[t]he process that Dr. James followed demonstrates that the goal of the valuation analysis (and, ultimately, of a damages calculation) is not to achieve scientific certainty, which is not possible in the context of valuing financial instruments, but to arrive at the most defensible judgment under the circumstances, ***something he has been able to do with the information provided***."  Second Sanctions Order at 9.  Accordingly, Judge Francis held that while it may be "more challenging to determine likely impairments for . . . six [of the] certificates"[5] (*id.*) because of a purported lack of data for 4Q08 and 1Q09 impairments, the alleged "information gap [was] not sufficient . . . to provide a basis for sanctions" (*id.* at 10):

> ***First***, it is not apparent how the data for these Certificates differs from that available for the others which, according to Dr. James, was also inconsistent, but which was adequate for him to conduct an analysis.  ***Second***, Royal Park does appear to have

---

[5]   The six certificates that Dr. James claims were "more challenging" to value are: GPMF 2007-AR3 M2, GPMF 2007-AR2 2M2, GPMF 2007-AR3 M1, GPMF 2007-AR2 2A3, GPMF 2007-AR3 A3 and SARM 2006-9 B1-II.  Dkt. No. 303, ¶29, Tbl. 3.  Dr. James did not even attempt to value the remaining seven certificates (*see id.*, ¶13, Tbl. 1), and instead recycled U.S. Bank's speculative claim that "Fortis ***likely*** took across-the-board 100% impairments" on those M3 or below certificates.  *See id.*, ¶¶26-34; Dkt. No. 310-1 at 8-9.

produced final impairment figures through the end of 2008. . . . ***Third***, any impairments taken for Q1 2009 are of limited relevance, since (1) "the scope of the [Q1 2009] impairment exercise [was] limited to the retained portfolio," that is, assets that Fortis had not sold to Royal Park and which, therefore, are not at issue . . . , and (2) any losses suffered by Fortis were realized as of August 31, 2008, since, according to the terms of the transfer to Royal Park, any change in value after that date would be to the benefit or detriment of Royal Park.

*Id.* at 9-10.

All told, in denying U.S. Bank's motion for sanctions for a second time, Judge Francis thoroughly examined more than ***2,000 pages*** of briefing and supporting evidence comprising at least ***25 docket entries*** and spanning a period of ***19 months***. *See* Dkt. Nos. 96-98, 110-114, 117-118, 142, 147, 175, 179-181, 185, 187-188, 233-234, 302-303, 310, 315-316, 320.

### F.    U.S. Bank Objects to the Second Sanctions Order

On November 2, 2017, U.S. Bank filed its Objection to Judge Francis's Second Sanctions Order. *See* Dkt. No. 339. U.S. Bank objects to "five specific findings," four of which disagree with how Judge Francis considered facts and evidence and one of which disagrees with Judge Francis's statement concerning causation. *Id.* at 19. U.S. Bank requests that the Second Sanctions Order be set aside and that the Court award "appropriate sanctions," but does not specify what sanctions might be appropriate, because there are none. *Id.*

## III.   LEGAL STANDARD

On an objection to an order deciding a motion for sanctions, the court must look to the "effect of the sanction – if imposed" to determine the applicable standard of review. *Khatabi v. Bonura*, 2017 U.S. Dist. LEXIS 61921, at *9 (S.D.N.Y. Apr. 21, 2017) (citing *Kiobel v. Millson*, 592 F.3d 78, 97 (2d Cir. 2010)). "[I]n determining between dispositive and non-dispositive discovery sanctions, the critical factor is what sanction the magistrate judge ***actually imposes***, rather than the one requested by the party seeking sanctions." *Khatabi*, 2017 U.S. Dist. LEXIS 61921, at *9

(emphasis in original); *see also Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519-20 (10th Cir. 1995) (rejecting argument that magistrate judge's order should be reviewed *de novo* because litigant sought entry of a default judgment and explaining that "[e]ven though a movant requests a sanction that would be dispositive, if the magistrate judge does not impose a dispositive sanction," the order is treated as non-dispositive under Rule 72(a)); *Steele v. Costco Wholesale Corp.*, 2005 U.S. Dist. LEXIS 8348, at *4 (E.D.N.Y. May 6, 2005) (same); *see also* 12 Wright, Miller & Marcus, *Fed. Prac. & Proc.* §3068.2 (2d ed. 2017) (disputes about handling of discovery ordinarily viewed as nondispositive under Rule 72 and treated as dispositive only when "the magistrate judge actually imposes" a dispositive sanction).

Here, where U.S. Bank is objecting to Judge Francis's **denial** of sanctions, U.S. Bank's objection is subject to the highly deferential "clearly erroneous or contrary to law" standard of review under Rule 72(a). *See, e.g., Khatabi*, 2017 U.S. Dist. LEXIS 61921, at *10-*11 (holding that where magistrate judge "did not impose any terminating sanctions, the Court treats his ruling as non-dispositive and considers whether his Order is clearly erroneous or contrary to law"); *Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*, 2017 U.S. Dist. LEXIS 102304, at *27 (S.D.N.Y. June 27, 2017) (holding that "'[i]f a moving party requests a dispositive sanction, but the magistrate judge declines to impose it, the judge's decision is governed by Rule 72(a),' and may be modified or set aside only if 'clearly erroneous or contrary to law'"). Thus, the Second Sanctions Order may be modified or set aside only if found to be "clearly erroneous or contrary to law."[6]

---

[6]   U.S. Bank's suggestion that the Second Sanctions Order is subject to *de novo* review because its motion "seeks dispositive relief, including the preclusion of RPI's damage claims" (Objection at 8), is belied by clear authority holding that the relief sought in the underlying motion is **irrelevant** to the standard of review, which is determined by the sanction **actually imposed**, if any. *See Shanghai Weiyi*, 2017 U.S. Dist. LEXIS 102304, at *27; *see also Khatabi*, 2017 U.S. Dist. LEXIS 61921, at *10-*11 (same).  The case cited by U.S. Bank, *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, is in accord.  *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) (noting that "the **imposition** of certain sanctions under Rule 37, in some instances, may be considered 'case-dispositive,' requiring de novo review").  Regardless, in denying U.S. Bank's first

- 11 -

Under the "clearly erroneous" standard of review, a district court may reverse a magistrate's finding only if it is "'left with the definite and firm conviction that a mistake has been committed.'" *Leviton Mfg. Co. v. Greenberg Traurig LLP*, 2011 U.S. Dist. LEXIS 77432, at *2 (S.D.N.Y. July 13, 2011).  Similarly, under the "contrary to law" standard of review, a district court may reverse a finding only if it finds that the magistrate "'fail[ed] to apply or misapplie[d] relevant statutes, case law or rules of procedure.'"  *McNamee v. Clemens*, 2014 U.S. Dist. LEXIS 46338, at *6 (E.D.N.Y. Apr. 2, 2014).  "The party seeking to overturn a magistrate judge's decision thus carries a ***heavy burden***."  *U2 Home Entm't, Inc. v. Hong Wei Int'l Trading Inc.*, 2007 U.S. Dist. LEXIS 59233, at *4 (S.D.N.Y. Aug. 13, 2007).  Where, as here, a party objecting to a magistrate's discovery order merely disagrees with the judge's interpretation or application of evidence or law, the order may not be set aside or modified.  *See, e.g.*, *Advance Coating*, 142 F.R.D. at 95 (denying Rule 72 objection where "Defendants' objections to the Report amount[ed] to nothing more than an attempt to substitute their interpretation of the evidence for that of the Magistrate").

On the underlying motion, U.S. Bank was required to establish prejudice in order to obtain sanctions.  First Sanctions Order at 16.  Where the discovery at issue has been produced to the moving party, no meaningful prejudice can be established.  *See In re Lavender*, 399 F. App'x 649, 653 (2d Cir. 2010) (affirming denial of sanctions and noting that it was within court's discretion to find that inconvenience to movant did not amount to "meaningful prejudice" from delayed production of documents); *SJS Distrib. Sys. v. Sam's E., Inc.*, 2013 U.S. Dist. LEXIS 147549, at *14

---

sanctions motion, Judge Francis made clear that no claim-dispositive sanctions were warranted.  *See* First Sanctions Order at 15 (holding that "dismissal of Royal Park's claims would be unnecessarily draconian").  Thus, the only sanctions potentially available on U.S. Bank's second motion were necessarily non-dispositive.  The non-dispositive nature of the Second Sanctions Order is evidenced by the form of the order itself, which was an order denying U.S. Bank's motion, rather than a Report and Recommendation to this Court, as would have been required to dispose of a claim or defense.  *See* Fed. R. Civ. P. 72(b).  Nevertheless, even if the Court were to review the Second Sanctions Order *de novo*, U.S. Bank's Objection would still fail because it cannot show that it suffered any prejudice.

(E.D.N.Y. Oct. 11, 2013) (denying Rule 37 sanctions where "other evidence about the circumstances" defendants were interested in were "still available to defendant" and "[d]efendant . . . obtained at least some of the spoliated evidence" from other sources).

As described herein, Judge Francis's Second Sanctions Order was correctly decided and supported by applicable law and thousands of pages of briefing and exhibits.  As a result, U.S. Bank cannot carry its "heavy burden" and its Objection should be overruled.

## IV.   ARGUMENT

### A.   Judge Francis Correctly Found that Royal Park Produced Final Impairment Figures Through the End of 2008

Royal Park produced thousands of Fortis Valuation Documents to U.S. Bank that it collected from Fortis at its inception.  *See* Dkt. No. 234 at 9-10; *see also* Dkt. No. 233, ¶¶3-13 (describing the types and sources of the voluminous Fortis-era documents collected and produced in this case).  Recognizing that the production of these documents completely undermined its motion, U.S. Bank revised its argument on reply, arguing – for the first time – that it was missing "final" impairment documents for two quarters of the years-long relevant time period.  *See* Dkt. No. 302.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████  Judge Francis cited these precise documents in concluding that "Royal Park does appear to have produced final impairment figures through the end of 2008."  Second Sanctions Order at 10.  It was neither clear error nor a mistake of law for Judge Francis to find that U.S. Bank failed to demonstrate any prejudice based on the

- 13 -

evidence Royal Park presented, which established that Royal Park *had* produced the "final" impairment figures that U.S. Bank claimed were missing.

Preferring sanctions over the evidence it pretends to need, U.S. Bank asks the Court to reject the evidence of impairments as not "admissible."  Objection at 9-10. ███████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████[7] This argument fails for several reasons.

***First***, the documents cited, which memorialize Fortis's quarterly impairments and were created and transmitted by Fortis's senior personnel with personal knowledge of the process, are admissible as "[r]ecords of regularly conducted activity."  Fed. R. Evid. 803(6); *see also In re WorldCom, Inc.*, 357 B.R. 223 (S.D.N.Y. 2006) (holding that bank's balance sheet "is admissible as a business record under Rule 803(6) of the Federal Rules of Evidence, or under the general exception found in Rule 807 of the Federal Rules of Evidence").

***Second***, because the documents were produced from Fortis's electronic and hard-copy files in the manner in which they were originally stored and bear "indicia of reliability," such as names of Fortis employees, e-mail addresses, and letterhead, the documents are authentic under Fed. R. Evid.

---

[7]     These documents are a small sample of the myriad other Fortis Valuation Documents produced to U.S. Bank.  Although both U.S. Bank and Dr. James falsely claimed in their opening papers that Royal Park had failed to produce *any* Fortis Valuation Documents (Dkt. Nos. 180, 181), the truth is that (a) Royal Park had produced thousands of Fortis Valuation Documents and (b) Dr. James admitted that he only reviewed *two* documents produced by Royal Park prior to making this accusation.  *See* Dkt. No. 234 at 4, 13-14. Moreover, despite Royal Park's representation in its opposition that the exhibits it attached were but a "small sample of the exhaustive [valuation] documents" (*id.* at 12), Dr. James admits in his reply declaration that he limited his personal review of valuation and impairment documents *to only those documents attached to Royal Park's opposition*.  Dkt. No. 303, ¶57; *see also* Dkt. No. 310-1 at 4 n.4.

- 14 -

901.  *See, e.g.*, *U.S. Info. Sys. v. IBEW Local Union No. 3*, 2006 U.S. Dist. LEXIS 52870, at *18, *20 (S.D.N.Y. Aug. 1, 2006) (finding documents to have "sufficient internal indicia of authenticity to meet the requirements of Rule 901(a)" where they were "printed on . . . letterhead . . . , list the names of team members who attended [the meeting] and those who did not, and describe in considerable detail contemporaneous tasks to be completed" and noting that "[a] party producing a document is in a better position to know whether the document is authentic than the party seeking it in discovery"); *Seabrook v. N.Y. City Health & Hosps. Corp.*, 2015 U.S. Dist. LEXIS 8148, at *4 n.2 (S.D.N.Y. Jan. 20, 2015) ("The requirement of authentication 'does ***not*** erect a particularly high hurdle,' one which is easily satisfied here by the documents' indicia of reliability, such as their standard form and appearance, letterhead, and signatures . . . ."); *see also* Dkt. No. 113, ¶¶19-26 (former Fortis employee and Royal Park CEO declaring that Royal Park searched for and collected Fortis documents needed for the operation of Royal Park, including documents stored in Fortis electronic files named "Deal Analysis," "Deal Documentation," "Impairments," "Monitoring & Surveillance," "US RMBS Analysis," "Valuation" and "Research"); Dkt. No. 233, ¶¶3-14 (explaining in detail the sources of the myriad documents collected directly from Fortis).

   ***Third***, and fatal to U.S. Bank's Objection, evidence offered in support of or opposition to a discovery motion – including motions seeking and opposing sanctions – ***need not be admissible***. *See, e.g.*, *Rezende*, 2011 U.S. Dist. LEXIS 45480, at *86 (holding that a sanctions motion, even if case-dispositive, is not equivalent to a summary judgment motion with respect to the evidentiary standard required because "the purposes of summary judgment and sanctions motions, and their governing standards, are analytically distinct"); *Jensen v. Phillips Screw Co.*, 546 F.3d 59, 66 n.5 (1st Cir. 2008) ("We do not suggest that the rules of evidence necessarily apply to factfinding in the context of sanctions.  ***That is not the case***."); *Sentis Grp., Inc. v. Shell Oil Co.*, 559 F.3d 888, 901

(8th Cir. 2009) ("[W]hile the Federal Rules of Evidence do not necessarily apply in the context of a motion for sanctions, evidence relied upon must, at a minimum, bear indicia of reliability."); *Cook v. Am. S.S. Co.*, 134 F.3d 771, 774 (6th Cir. 1998) (holding that the district court did not err in not applying the Federal Rules of Evidence in evaluating sanctions motion); *Carbajal v. Warner*, 2014 U.S. Dist. LEXIS 5083, at *6 (D. Colo. Jan. 14, 2014) (same).  Thus, U.S. Bank's (incorrect) contention that the documents considered by Judge Francis are "not admissible evidence" is wholly irrelevant.  Objection at 9.

The evidence proffered by Royal Park – contemporaneous e-mails, documents on official Fortis letterhead, and Fortis Annual Reports produced from the files of Royal Park or Fortis – and testimony from percipient witnesses clearly bear indicia of reliability.  That these documents reflect final impairments is further substantiated by the plain text of the documents themselves.  ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[8]  As Judge Francis correctly recognized, "the solution for [U.S. Bank's complaint concerning authenticity] rests with the Court's application of evidentiary principles at trial, not with the imposition of a preclusion

---

[8]    To the extent there are any authentication issues, they are due to U.S. Bank's own negligence (or strategy) in failing to raise the issue of final impairment documents prior to the deposition of Mr. Coppejans, and for failing to provide Mr. Coppejans with metadata or parent e-mails in order for him to identify the expansive spreadsheets put before him.  *See* Dkt. No. 310-1 at 4 n.5 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮  Notably, U.S. Bank also neglected to authenticate the documents with later Fortis deponent Bruno Thiery as well, despite the fact that his deposition took place in November 2017, ***after*** briefing on the second sanctions motion was complete and after issuance of the Second Sanctions Order.

order."  Second Sanctions Order at 11; *see also id.* (finding any issues with authentication "not surprising given the lapse of time since they were created").

**Finally**, U.S. Bank relies on cherry-picked excerpts from Mr. Coppejans's deposition to argue that the impairment documents cited by Judge Francis "were not Fortis's actual impairment records," claiming that Mr. Coppejans testified that the final impairment documents were kept only by Fortis's "local" accountants.  Objection at 10.[9] ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[9]    U.S. Bank intermittently argues that the documents in question cannot be the final impairment documents because the line-by-line impairments do not include "justifications" for those impairments – even though U.S. Bank does not explain what it thinks it is missing in the way of "justifications."  In truth, however, Royal Park has provided voluminous documents and hours of testimony describing Fortis's valuation and impairment methodologies and bases therefor, including Fortis's pricing processes, fair value techniques, and impairment policies, guidelines, and factors.  *See, e.g.*, Dkt. No. 234 at 10-13.  As Judge Francis held, U.S. Bank "has not explained how information exclusively in the possession of Royal Park or the Assignors would shed light on **why** any such losses occurred."  Second Sanctions Order at 11 (emphasis in original).

- 17 -

███████████████████████[10]██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

In essence, U.S. Bank argues that the Court should ignore the voluminous, contemporaneous evidence of impairments before it and, instead, assume that other, unidentified documents exist and support its (unarticulated) damages position. This argument fails. *See, e.g.*, *SJS Distrib.*, 2013 U.S. Dist. LEXIS 147549, at *14 (sanctions unwarranted where "it cannot be said that the destroyed records would have corroborated defendant's account of events"); *Mastr Adjustable Rate Mortgs. Tr. 2006-OA2 v. UBS Real Estate Sec., Inc.*, 295 F.R.D. 77, 86 (S.D.N.Y. 2013) ("The party seeking sanctions must demonstrate the loss of discovery-relevant information" that "would have been favorable to the moving party."); *Sovulj v. United States*, 2005 U.S. Dist. LEXIS 46700, at *16 (E.D.N.Y Sept. 19, 2005) (sanctions inappropriate where any assertion that missing evidence was relevant was "pure speculation").

### B.   Impairments for 1Q09 Were Limited to the Retained Portfolio

The official minutes of the Fortis Impairment Committee's April 2009 meeting establish that

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████[11]  Contrary to U.S. Bank's contention, Judge Francis did not rely "entirely on R[oyal Park]'s

---

[10]   U.S. Bank also claims that a document attached to Royal Park's opposition to U.S. Bank's second sanctions motion "was not Fortis's record of [Q4 2008] impairments." Objection at 10.  Of course, Royal Park had no obligation to point U.S. Bank to "final" impairment documents in its opposition, nor did it have any reason to do so since U.S. Bank's opening motion made no mention of "final" impairment documents.

[11]   For the reasons discussed in §IV.A., *supra*, these minutes, produced from Fortis's files and reflecting the date of the meeting, the attendees, and the tasks to be completed, are authentic. *See, e.g.*, *U.S. Info. Sys.*, 2006 U.S. Dist. LEXIS 52870, at *20 (finding meeting minutes authentic where they were "printed on . . . letterhead . . . , list the names of team members who attended and those who did not, and describe in considerable detail contemporaneous tasks to be completed").

counsel's . . . assertions about a document" in recognizing the scope of the 1Q09 impairment exercise (Objection at 12); rather, Judge Francis quoted the plain text of the minutes, which speaks for itself.  Second Sanctions Order at 10.  Further evidencing the fact that the 1Q09 impairment exercise was limited to the retained portfolio are additional contemporaneous Fortis documents showing no impairments were taken in 1Q09 on assets set to be transferred to Royal Park.  *See, e.g.,*

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████

      U.S. Bank argues that Judge Francis erred in considering this indisputable evidence because it is "inadmissible," and that Judge Francis should have, instead, (1) considered only a cherry-picked snippet of Mr. Coppejans's deposition where he merely agreed with counsel's question regarding whether Fortis ***should have*** conducted an impairment exercise and then (2) concluded that Fortis ***actually did*** conduct such an exercise.  Objection a 12.  As an initial matter, U.S. Bank's argument that the evidence cited by Royal Park concerning the lack of 1Q09 impairments is "inadmissible" and not "authentic" fails for the reasons described in §IV.A., *supra*.  More importantly, the contemporaneous evidence shows that Fortis did ***not*** conduct such an exercise on the assets soon-to-be-sold to Royal Park in 1Q09, and speculative testimony a ***decade*** later suggesting that Fortis should have conducted an impairment exercise cannot establish that Fortis actually did conduct such

an exercise.[12]  *See, e.g.*, *United States ex rel. Brennan v. Fay*, 353 F.2d 56, 59 (2d Cir. 1965)

("Where testimony is in conflict with contemporaneous documents we can give it little weight.");

*Gusmao v. GMT Grp., Inc.*, 2009 U.S. Dist. LEXIS 37092, at *30 n.14 (S.D.N.Y. Apr. 30, 2009)

(noting that testimony that "contradicts contemporaneous documentary evidence" will "not be

credited").

### C.   Impairments Taken on the Certificates After Q3 2008, if Any, Are Irrelevant, as Royal Park Was Responsible for Any Losses Incurred Thereafter

The uncontroverted evidence establishes that ███████████████████████████

██████████████████████████████████████████████████████████████████

█████ Alvarado Decl., Ex. 2 at 104:21-25; *see also id.*, Ex. 3 at 183:21-184:7; *id.*, Ex. 4 at 220:16-

221:1; *id.*, Ex. 5 at 292:17-293:11, 294:4-15; *id.*, Ex. 6 at 172 (2008 Fortis Annual Report); Dkt. No.

310-2, Ex. 2 at 197 (2009 Fortis Annual Report); Dkt. No. 310-2, Ex. 6 ████████████████

██████████████████████████████████████████████████████████████████

████████████████. Thus, as Fortis explained in its official 2008 Annual Report, any impairments or

changes in value to the certificates after August 31, 2008, were borne solely by Royal Park:

> According to the agreement, the risks related to the valuation of the Portfolio Out were conditionally transferred to [Royal Park] based on a valuation as per 31 August 2008, with the exception of the exchange rate risk, the interest payments and the redemptions. ***That means that although ownership of the Portfolio Out will not be transferred to [Royal Park] until the realisation date, any change in the value of the Portfolio Out since 31 August 2008 will be to the benefit or detriment of [Royal Park].***

---

[12] ████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
███████████████████████████████████████████

1335153_1

Alvarado Decl., Ex. 6 at 172.[13]  That is, upon the transfer of the assets to Royal Park on May 12, 2009, the only difference in the sales price from the August 31, 2008 valuation accounted for redemption and exchange risk fluctuations – *not* any additional impairments.  Dkt. No. 320, Ex. 1 at 108:3-23; Dkt. No. 310-2, Ex. 2 at 197.  Judge Francis correctly considered this evidence in finding that "any losses suffered by Fortis were realized as of August 31, 2008, since, according to the terms of the transfer to Royal Park, any change in value after that date would be to the benefit or detriment of Royal Park."  Second Sanctions Order at 10.

Fortis did conduct an impairment exercise in December 2008, but, as explained in Fortis's official 2009 Annual Report, this exercise was conducted merely as a "fall-back scenario in case the Protocole d'Accord with BNP Paribas [*i.e.*, the creation of Royal Park] would not take effect."  Dkt. No. 310-2, Ex. 2 at 197; *see also id.*, Ex. 11 at 28:17-29:10 ███████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████  Of course, the sale was consummated a few months later at the August 2008 prices, rendering any subsequent impairments irrelevant.

Moreover, U.S. Bank ignores that impairments are ███████████████████████████ █████████████████████████████████████████████[14]  Dkt. No. 310-2, Ex. 2 at 66; *see also id.*, Ex. 7 at 87:7-15 ████████████████████████████████████████

---

[13]   The excerpt of the Fortis 2008 Annual Report previously submitted as Dkt. No. 310-2, Ex. 9, inadvertently omitted page 172.  That page is included in Exhibit 6 to the Alvarado Decl., submitted herewith.  Additionally, the report is publicly available in its entirety at https://www.bnpparibasfortis.com/docs/default-source/pdf-(en)/archives/fortis-bank-sa-nv-2008.pdf?sfvrsn=2.

[14]   U.S. Bank falsely claims that there is no evidence that impairment losses taken after August 2008 were ever reversed, despite Royal Park's citation to Fortis's consolidated income statement for the first half of 2009 attributing the reversal of €289 million in impairments to the sale of the portfolio to Royal Park.  *See* Dkt. No. 310-2, Ex. 14.

████████████████████████████████████████████ That Fortis *incurred* its

losses on the assets on the sale date of May 12, 2009, does not alter the fact that the amount of loss

was *set* as of August 31, 2008, or that any additional impairments beyond that date were suffered by

Royal Park, not Fortis. *See* Dkt. No. 310-1 at 7. Thus, Judge Francis correctly ruled that any losses

post-August 2008 were borne by Royal Park. Second Sanctions Order at 10.

### D.     Dr. James Has Not Offered a Credible Explanation for Why He Was Unable to Value Six of the Certificates at Issue

In finding that U.S. Bank failed to establish that any inconsistent or missing information was

"*so necessary*" to the valuation process for six certificates, Judge Francis emphasized that U.S. Bank

and Dr. James failed to credibly explain this distinction, as it was "not apparent how the data for

the[] certificates" with a purported "information gap" differed "from that available for the others

which, according to Dr. James, was also inconsistent, but which was adequate for him to conduct an

analysis." Second Sanctions Order at 7, 10; *see also SJS Distrib.*, 2013 U.S. Dist. LEXIS 147549, at

*15 (sanctions unwarranted where "it cannot be said that the destroyed records would have

corroborated defendant's account of events" and "[d]efendant . . . obtained at least some of the

spoliated evidence" from other sources).

U.S. Bank now claims that Dr. James was unable to perform any type of analysis on a

handful of certificates because "there were no pricing service data or price quotes from market

participants." Objection at 16. Yet, the December 2008 impairments that Royal Park highlighted in

its sur-reply include impairment figures for at least three of those certificates. *See* Dkt. No. 310-2,

Ex. 5. Further, Royal Park has produced countless Fortis Valuation Documents that contain market

prices for the certificates that could have been used to estimate their value – just as Dr. James did for

the other 15 certificates. *See*, *e.g.*, Alvarado Decl., Ex. 7 ███████████████████

████████████████████████████████████████████████████████████

████.[15]  As Judge Francis explained, the goal of the damages calculation in this case "is not to achieve scientific certainty, which is not possible in the context of valuing financial instruments, but to arrive at the most defensible judgment under the circumstances."  Second Sanctions Order at 9.

### E.   Judge Francis Correctly Rejected U.S. Bank's Causation Argument

In rejecting U.S. Bank's argument that it could not "ascertain the cause for the loss of value of the certificates" without additional valuation documents, Judge Francis correctly noted that "[i]t is likely that causation will be proven through statistical analysis, not by reference to comments in an email authored by an employee of a Fortis affiliate."  Second Sanctions Order at 11.  This finding served as an independent basis for finding that U.S. Bank had suffered no prejudice from any purported lack of Fortis documents, and is clearly supported by the testimony proffered to date from each party's expert.

U.S. Bank claims that this finding ignored its oft-repeated and erroneous argument that "damages in this case could not have been caused by U.S. Bank because the losses were incurred by Fortis before any alleged breach of contract."  Objection at 17.  Contrary to U.S. Bank's assertions, however, Judge Francis explicitly considered this argument when he acknowledged that U.S. Bank had "demonstrated a reasonable basis for seeking information about *when* the certificates lost value," but had failed to establish "how information exclusively in the possession of Royal Park or the Assignors would shed light on *why* any such losses occurred."  Second Sanctions Order at 10-11 (emphasis in original).  That is, while the *timing* of realized losses may be potentially relevant to

---

[15]   One of the six certificates at issue – SARM 2006-9 B1II – originated from the Pacific Pinnacle CDO.  To the extent valuation materials related to this certificate exist and are not present in Royal Park's or Fortis's records, they would likely be in the possession of the third-party collateral managers for the CDO.  *See generally Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, No. 14-CV-04394-AJN-BCM, Order (S.D.N.Y. Jan. 26, 2017) (Dkt. No. 324).  As Judge Moses held in *Deutsche Bank*, however, the "Collateral Managers are not themselves assignors of any of the claims upon which [Royal Park] now sues," and Royal Park is under no obligation to produce documents from these entities.  *Id.* at 6.

- 23 -

U.S. Bank's causation defense, U.S. Bank's continued insistence on impairment "justifications" and other valuation documents have no bearing on the expert analysis that will be used to prove the damages **caused** by U.S. Bank.[16]

Further, U.S. Bank's entire causation defense theory relies on the false proposition that U.S. Bank's contractual breaches "did not allegedly begin, until, at the earliest, January 2009." Objection at 17. To the contrary, the Complaint dedicates nearly 30 paragraphs to information in 2007 and 2008 evidencing U.S. Bank's knowledge of widespread breaches of representations and warranties. *See* Dkt. No. 2, ¶¶63-92. Indeed, Royal Park clearly alleged that "[t]he facts that were publicly available to U.S. Bank in the period immediately after the Covered Trusts were formed indicated that the truth of the Warrantor's representations and warranties about the Mortgage Loans in the Covered Trusts was questionable." *Id.*, ¶66. Moreover, U.S. Bank's reference to *Halliburton Co. v. Eric P. John Fund, Inc.*, __ U.S. __, 134 S. Ct. 2398, 2408 (2014), and statistical event studies to determine market efficiency in a §10(b) securities fraud case is a red herring – Royal Park has never suggested using such an event study in this case.

U.S. Bank's causation argument also ignores that impairments ███████████████ ███████████████████████████████████ Dkt. No. 310-2, Ex. 2 at 66; *see also* Dkt. No. 310-2, Ex. 7 at 87:7-15 ██████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[16]   Indeed, recent testimony from Fortis witness Bruno Thiery confirmed that the impairment "justifications" were "defined ex ante." Alvarado Decl., Ex. 9 at 66:4-7. That is, if the impairment methodology "was via prices there was a policy describing how the prices were collected, by who, what were the conditions to accept a price. If it was a model, it was built, presented to a committee that approved the use of the model and the, and its imitations and we applied that to the valuation." *Id.* at 66:7-14.

Thus, even if Fortis impaired certificates by 100% for financial reporting purposes prior to an alleged breach, "one cannot simply conclude that the values of the certificates would have ***remained*** at zero 'but for' the alleged breaches." Dkt. No. 233-1, ¶8 (emphasis in original). Instead, had U.S. Bank carried out its contractual and common law obligations, the Trusts would have experienced increased cash flows such that the "'but-for' value of a certificate could be above zero." *Id.*, ¶9. By failing to carry out its duties, U.S. Bank prevented the Trusts from receiving their entitled cash flows and thereby caused certificateholders' losses.

Royal Park's expert will conduct an analysis to determine the increased cash flows that would have flowed to the Trusts had U.S. Bank fulfilled its duties, along with how those cash flows would have affected the certificates' value. Internal Fortis impairment documents and commentary are not relevant to this analysis (*id.*, ¶¶6, 17), and Judge Francis correctly rejected U.S. Bank's faulty causation arguments to the contrary.

## V.     CONCLUSION

For the reasons set forth above, U.S. Bank's Objection should be denied in its entirety.

DATED:  December 7, 2017                    Respectfully submitted,

                                                  ROBBINS GELLER RUDMAN
                                                    & DOWD LLP
                                                ARTHUR C. LEAHY
                                                STEVEN W. PEPICH
                                                LUCAS F. OLTS
                                                DARRYL J. ALVARADO
                                                HILLARY B. STAKEM

                                              _____

                                                DARRYL J. ALVARADO

655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
artl@rgrdlaw.com
stevep@rgrdlaw.com
lolts@rgrdlaw.com
dalvarado@rgrdlaw.com
hstakem@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
CHRISTOPHER M. WOOD
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

Attorneys for Plaintiff

- 26 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 7, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 7, 2017.

DARRYL J. ALVARADO

ROBBINS GELLER RUDMAN
 & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  dalvarado@rgrdlaw.com

# Mailing Information for a Case 1:14-cv-02590-VM-RWL Royal Park Investments SA/NV v. U.S. Bank National Association

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com,nhorstman@rgrdlaw.com,lmix@rgrdlaw.com

- **Thomas F. Berndt**
  tberndt@robinskaplan.com,mschroeder@robinskaplan.com

- **Rachael Catherine Chan**
  rachael.chan@morganlewis.com,mary.jensen@morganlewis.com

- **Rollin Bernard Chippey**
  rchippey@morganlewis.com,robert.thompson@morganlewis.com

- **Michael Collyard**
  mcollyard@robinskaplan.com,rhoule@robinskaplan.com

- **Joseph Edward Floren**
  joseph.floren@morganlewis.com

- **Sherli Furst**
  SFurst@RobinsKaplan.com

- **Tera Marie Heintz**
  theintz@morganlewis.com,dlang@morganlewis.com,ewoodward@morganlewis.com

- **Morgia Dampf Holmes**
  mholmes@robinskaplan.com

- **Peter Cooper Ihrig**
  pihrig@robinskaplan.com

- **Joseph Marco Janoski Gray**
  mjanoski@rgrdlaw.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Michael Stephan Kraut**
  mkraut@morganlewis.com,rschaffer-goldman@morganlewis.com,anna.goldenhersh@morganlewis.com,nymanagingclerk@morganlewis.com

- **Ashley Anelcha Krupski**
  akrupski@morganlewis.com

- **Arthur C. Leahy**
  artl@rgrdlaw.com,jillk@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Martin Richard Lueck**
  mlueck@robinskaplan.com,jaangell@robinskaplan.com

- **David E. Marder**
  DMarder@RobinsKaplan.com,KRichardson@RobinsKaplan.com,LDimillio@RobinsKaplan.com

- **Lucas F. Olts**
  lolts@rgrdlaw.com,karenc@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Kevin Papay**
  kevin.papay@morganlewis.com

- **Hillel Ira Parness**
  hip@hiplaw.com,hillel.parness@gmail.com

- **Steven W. Pepich**
  stevep@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com

- **Stacey Paige Slaughter**
  sslaughter@robinskaplan.com,mrud@robinskaplan.com

- **Benjamin Patrick Smith**
  bpsmith@morganlewis.com,dlang@morganlewis.com,rbohnet@morganlewis.com,ewoodward@morganlewis.com

- **Hillary B. Stakem**
  hstakem@rgrdlaw.com

- **Chelsea Walcker**
  cwalcker@robinskaplan.com,mschroeder@robinskaplan.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,e_file_sd@rgrdlaw.com,HDeshmukh@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)