**Robbins Geller Rudman & Dowd LLP**

| | | | | |
|---|---|---|---|---|
| Atlanta | Chicago | Melville | Philadelphia | San Francisco |
| Boca Raton | Manhattan | Nashville | San Diego | Washington, DC |

Darryl J. Alvarado
dalvarado@rgrdlaw.com

March 14, 2018

The Honorable Robert W. Lehrburger                                                                 VIA ECF
U.S.D.C., Southern District of New York
500 Pearl Street, Courtroom 18D
New York, NY 10007-1312

    Re:  *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, No. 1:14-cv-02590-VM-RWL

Dear Judge Lehrburger:

  I write on behalf of plaintiff Royal Park Investments SA/NV ("Royal Park") in response to defendant U.S. Bank's March 5, 2018 letter to the Court (ECF No. 371) (the "Letter") renewing its April 2017 motion for a protective order (ECF No. 221) precluding Royal Park from using statistical sampling and re-underwriting of a sample of loans to prove liability or damages. Royal Park renews its opposition to U.S. Bank's April 25, 2017 motion (ECF No. 220), and incorporates by reference the arguments and evidence set forth therein.[1] Further, the additional "precedent" U.S. Bank cites in its Letter is not "definitive" and does not "compel[]" the total preclusion of sampling to prove any aspect of plaintiff's claims or damages. *See* Letter at 2.

  ***Background***. On April 25, 2017, U.S. Bank filed an amended motion for a protective order asking Judge Francis to bar Royal Park from conducting a loan sampling analysis in this action. ECF No. 221. The motion was primarily based on U.S. Bank's citation to two decisions by Magistrate Judge Netburn in which she found, in the context of discovery under Rule 26, that the benefits of sampling in proving liability or damages in those actions were disproportionate to the effort required for such an analysis. *See id.* at 1-2. Royal Park opposed (and still opposes) U.S. Bank's motion for protective order on multiple grounds. *See* ECF No. 220.

  First, U.S. Bank is not entitled to a protective order where, as here, Royal Park has not sought any sampling-related discovery from U.S. Bank, and U.S. Bank is not obligated to undertake a sampling analysis of its own. *Id.* at 2.

  Second, U.S. Bank's objection to Royal Park's use of statistical sampling and re-underwriting is premature, as such objection is properly considered in the context of a *Daubert*

---

[1] It does not appear from its Letter that U.S. Bank intends to renew its request that sampling, if permitted by the Court, be conducted in stages. *Compare* ECF No. 371 at 1 ("writ[ing] to renew U.S. Bank's motion for a protective order to preclude Royal Park . . . from using statistical sampling and re-underwriting") *with* ECF No. 221 at 8 (requesting that, "[a]lternatively, the Court should at least require RPI to disclose its proposed sampling approach and methodology, and set a timetable for responses thereto and staged re-underwriting of the sampled loans"). However, to the extent that the Court construes the Letter to renew such request, Royal Park also renews its objections to such proposal. *See* ECF No. 220 at 9-10.

1390231_1

655 West Broadway Suite 1900 San Diego, CA 92101 Tel 619 231 1058 Fax 619 231 7423 www.rgrdlaw.com

Robbins Geller
Rudman & Dowd LLP

motion, argument at summary judgment, and/or an eventual motion *in limine*. *Id.* at 1.

Third, issuance of a protective order would improperly require the Court to make findings of fact and law, such as (i) the meaning of the term "discovery" under the Governing Documents; (ii) whether U.S. Bank had an obligation to investigate whether loans breached representations and warranties ("R&Ws") if provided general notice; (iii) whether Royal Park's theory of pervasive breach is permissible; and (iv) whether U.S. Bank relinquished its right to assert a "sole remedy" argument in breaching its contractual obligations. *See id.* at 3.

Fourth, setting aside the procedural flaws with U.S. Bank's motion, a protective order is unwarranted because sampling is highly relevant to Royal Park's liability and damages presentations. *Id.* at 5-8. This is because, *inter alia*, Royal Park has asserted that breaches were pervasive throughout the trusts at issue, and that U.S. Bank "discovered" breaching loans through evidence that it was aware of facts raising a suspicion as to (i) the remainder of loans in the trusts, (ii) Warrantors, and (iii) Servicers. *Id.* at 5-7. Sampling evidence will show what U.S. Bank would have found had it carried out its obligations following such discovery. *Id.*

Finally, sampling is particularly relevant here because Royal Park has claimed, and will prove, that U.S. Bank had actual knowledge or written notice of Events of Default ("EOD") in the trusts at issue, thereby requiring U.S. Bank to carry out its obligations pursuant to the heightened "prudent person" standard. *Id.* at 8. Under that standard, U.S. Bank was required – but failed – to investigate R&W breaches as a prudent person would, including by sampling the trusts experiencing EODs. *Id.* Indeed, as demonstrated by RMBS trustees' own use of sampling in instances where it *did* take action to investigate or enforce repurchase or replacement of loans that breached R&Ws, a "prudent person" would have sampled the loans in the trusts to determine the magnitude of material breaches. *See, e.g.*, *Deutsche Bank Nat'l Trust Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, No. 14-cv-3020, 2018 WL 583116, at *6 (S.D.N.Y. Jan. 25, 2018) (permitting plaintiff-trustee to use sampling in repurchase enforcement action).

Judge Francis denied U.S. Bank's motion without prejudice to renewal after objections to Judge Netburn's opinions were resolved. ECF No. 246. U.S. Bank renewed its motion following the issuance of *Blackrock Allocation Target Shares v. Wells Fargo Bank, N.A.*, No. 1:14-cv-9371-KPF-SN, 2017 WL 3610511 (S.D.N.Y. Aug. 21, 2017) ("*Wells Fargo* Order"), and *Royal Park Invs. SA/NV v. HSBC Bank USA Nat'l Ass'n*, No. 1:14-cv-09366-LGS-SN, ECF No. 483 (S.D.N.Y. Feb. 23, 2018) ("*HSBC* Order"), again arguing that these decisions should control. Since Judge Francis's denial, this issue has also been briefed by the parties in *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, No. 1:14-cv-04394 (AJN) (BCM) ("*Deutsche Bank*"), and oral argument on the matter is scheduled to take place before Judge Moses on March 21, 2018. *Deutsche Bank*, ECF No. 560.

**The *HSBC* Order and *Wells Fargo* Order do not compel preclusion of sampling**. Although U.S. Bank presents the *HSBC* Order and *Wells Fargo* Order as "new precedent," those opinions are in no way binding on this Court, nor are they "determinative," as U.S. Bank contends.

- 2 -

1390231_1

*See* ECF No. 371 at 2-3. Indeed, courts considering the application of sampling in RMBS actions have reached varied conclusions.[2]

For example, Judge Forrest held in *Morgan Stanley* that "statistical sampling is an appropriate means of attempting to prove both liability and damages" in a case where the plaintiff trustee demanded the repurchase or replacement of breaching loans – the same actions that Royal Park alleges U.S. Bank should have, but failed to, undertake on behalf of the trusts.[3] *See* 2018 WL 583116, at *14. If an RMBS trustee is permitted to use sampling when suing a sponsor for the repurchase of breaching loans, it follows that a certificateholder should be permitted to use sampling when suing a trustee for its failure to sue a sponsor for the repurchase of breaching loans. Judge Forrest also specifically rejected Morgan Stanley's argument that the "sole remedy" provisions of the Governing Agreements require "loan-by-loan" proof of material breaches in each loan, thereby precluding proof of pervasive breaches and globalized damages using sampling evidence – an argument that U.S. Bank also advances in this action, and a fundamental assumption underlying the *HSBC* Order. *Compare Morgan Stanley*, 2018 WL 583116, at *13-*15 *with HSBC* Order at 5. Finally, Judge Forrest "conclude[d] that it would be impracticable and inequitable to limit [plaintiff] to specific performance" on a loan-by-loan basis. *Morgan Stanley*, 2018 WL 583116, at *14.

***At a minimum, Royal Park should be permitted to sample with respect to loans for which U.S. Bank had actual knowledge or received written notice of breaches***. Royal Park has, to date, identified approximately 3,500 loans for which U.S. Bank had knowledge or notice of breaches of R&Ws. Royal Park should, at the very least, be permitted to prove the material defect rate among these loans by analyzing a statistically valid sample of those loans. As Judge Forrest explained, "proper statistical sampling is not a shot in the dark – it is a well-established and scientifically sound method of inferring (to varying degrees of certainty) how many individual loans in the pool contain material breaches." *Morgan Stanley*, 2018 WL 583116, at *14.

For the reasons contained herein and in Royal Park's May 2, 2017 correspondence (ECF No. 220), U.S. Bank's motion for protective order should be denied.

---

[2] *W. & S. Life Ins. Co. v. Bank of N.Y. Mellon*, No. A1302490, 2017 WL 3392856 (Ohio Ct. Common Pleas Aug. 4, 2017), to which U.S. Bank directs the Court, is *expressly* limited to the facts of that case and so inapplicable here.

[3] Although Judge Schofield in the *HSBC Order* distinguished authority permitting sampling where the cases were brought against originators and sponsors rather than trustees, Royal Park respectfully submits that its underlying assumptions for drawing such a distinction were incorrect. *See HSBC* Order at 6. Judge Schofield stated that cases against sponsors were different than those against trustees because "the duty of an originator or sponsor to underwrite each loan before issuing or purchasing it is not comparable to the limited and loan-specific nature of the trustee's duties under the PSAs. Originators and sponsors review each loan file and make R&Ws as to each loan." *Id.* It is not true, however, that sponsors review each loan file; indeed, they typically only review a small percentage of the loan files that are then sold into a trust. *See, e.g.*, *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 104 F. Supp. 3d 441, 471, 473 (S.D.N.Y. 2015). Critically, the language in the Governing Documents relied upon by plaintiffs in actions against sponsors demanding repurchase of breaching loans is the same language that required U.S. Bank to enforce repurchase of breaching loans. *See Morgan Stanley*, 2018 WL 583116, at *3; *see also, e.g.*, ECF No. 2, ¶¶44-48.

**Robbins Geller**
**Rudman & Dowd** LLP

Respectfully submitted,

*/s/ Darryl J. Alvarado*

DARRYL J. ALVARADO

DJA:llf

cc:     All Counsel (via ECF)