USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__7/9/2018____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ROYAL PARK INVESTMENTS SA/NV,          :       14 Civ. 2590 (VM) (RWL)
individually and on behalf of all others similarly :
situated,                              :       **MEMORANDUM AND ORDER**
                                       :
                    Plaintiff,         :
                                       :
              - against -              :
                                       :
U.S. BANK NATIONAL ASSOCIATION,        :
as Trustee,                            :
                                       :
                    Defendant.         :
------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

This is a residential mortgage-backed securities ("RMBS") case in which Plaintiff Royal Park Investments SA/NV ("Royal Park"), an investor in the securities at issue, claims Defendant U.S. Bank National Association ("U.S. Bank"), trustee of the trusts holding the securities, breached its contractual and fiduciary duties. More particularly, Royal Park alleges that it and other investors lost investment funds because U.S. Bank failed to enforce its rights to require the RMBS issuer to repurchase defective loans underlying the securities. The case involves more than 86,000 loans underlying 21 trusts. U.S. Bank now moves for a protective order to preclude discovery on statistical sampling as a means to establish liability and damages. After having considered the parties' extensive briefing and argument, and for the reasons set forth below, U.S. Bank's motion is GRANTED.

## Procedural Background

Royal Park filed this putative class action on April 11, 2014. After three years of discovery skirmishes, U.S. Bank wrote to the Court on May 2, 2017, requesting a case

management conference to "discuss whether sampling discovery and related expert discovery is appropriate in this case."[1]  After further letter briefing, on June 1, 2017, the Honorable James C. Francis IV, United States Magistrate Judge, denied without prejudice U.S. Bank's motion for a protective order to prohibit sampling discovery.[2]  Judge Francis explained that the same issue addressed by U.S. Bank's motion was the subject of two other opinions rendered by another United States Magistrate Judge and that objections to those opinions were under review by the United States District Judge in each case. Judge Francis indicated that U.S. Bank could renew its motion after the District Judges' determinations.  Following entry of the District Judges' decisions, U.S. Bank renewed its motion, which is now before this Court.

<u>The Trustee Sampling Decisions</u>

As set forth above, whether parties should be permitted to develop sampling evidence to prove liability and damages against RMBS trustees has recently been addressed by several courts in this district.  Without exception, all of them have answered the question in the negative.  *See BlackRock Allocation Target Shares v. Wells Fargo Bank, N.A.* ("*Wells Fargo I*"), No. 14 Civ. 9371 et al., 2017 WL 953550 (S.D.N.Y. March 10, 2017), *objections overruled sub nom. by BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, N.A.* ("*Wells Fargo II*"), 2017 WL 3610511 (S.D.N.Y. Aug. 21, 2017); *Royal Park Investments SA/NV v. HSBC Bank USA N.A.* ("*HSBC I*"), No. 14 Civ. 8175 et al., 2017 WL 945099 (S.D.N.Y. March 10, 2017), *objections overruled sub*

---

[1] Letter of Benjamin P. Smith dated April 25, 2017, at 1.

[2] Order dated June 1, 2017.  Judge Francis was the Magistrate Judge previously assigned to this case.  He retired in October 2017 after a long and estimable career.

*nom. by Royal Park Investments SA/NV v. HSBC Bank USA, N.A.* ("*HSBC II*"), 2018 U.S. Dist. LEXIS 31157 (S.D.N.Y. Feb. 23, 2018); *BlackRock Balanced Capital Portfolio (FI) v. Deutsche Bank National Trust Company* ("*Deutsche Bank*"), No. 14 Civ. 9367, 2018 Dist. LEXIS 83405 (S.D.N.Y. May 17, 2018) (following *Wells Fargo I* and *II* and *HSBC I* and *II*).   This opinion refers to those decisions collectively as the Trustee Sampling Decisions.

The principal reason given by each of the Trustee Sampling Decisions for precluding the use of sampling is that under the language of the relevant agreements governing the trusts, the sole remedy provided to the trustee with regard to breaching loans is to seek repurchase on a loan-by-loan, trust-by-trust basis.   In other words, whether and to what extent a trustee can obtain repurchase of breaching loans must be determined separately for each specific loan.   *Wells Fargo I*, 2017 WL 953550, at *4-5 (section titled "Plaintiffs Must Proceed Loan by Loan"); *HSBC I*, 2017 WL 945099, at *4-5 (same); *Wells Fargo II*, 2017 WL 3610511, at *7 ("[I]t remains the law in RMBS cases of this kind that 'to prevail on the breach of contract claim, a plaintiff does have to demonstrate breach on a loan-by-loan and trust-by-trust basis.'") (quoting *BlackRock Allocation Target Shares: Series S. Portfolio v. Wells Fargo Bank, National Association*, 247 F. Supp. 3d 377, 389 (S.D.N.Y. 2017)); *HSBC II*, 2018 U.S. Dist. LEXIS 31157, at *35 ("The requirement that HSBC have information on a loan-by-loan basis to trigger its duties comports with the structure of [the contractual language] and the limited duties imposed on HSBC as trustee."); *Deutsche Bank*, 2018 Dist. LEXIS 83405, at *22-23 ("Plaintiffs need to prove liability and damages on a trust-by-trust and loan-by-loan basis . . . .").

Sampling, however, cannot identify which specific loans were in breach (other than those in the sample itself), cannot determine what would have happened had the trustee attempted to seek repurchase of the loans, and cannot determine the damages associated with any specific loan.  *See, e.g.*, *HSBC II*, 2018 U.S. Dist. LEXIS 31157, at *36 ("Sampling cannot provide loan-specific information as to any loan outside the sample . . . .").  Accordingly, as the Trustee Sampling Decisions hold, sampling would have little to no relevance, and as a result, engaging in sampling-related discovery would not be proportional to the needs of the case under Federal Rule of Civil Procedure 26(b)(1).  The judges in each case thus exercised their discretion, or affirmed the exercise of that discretion, to preclude sampling discovery.  *See, e.g.*, *Deutsche Bank*, 2018 U.S. Dist. LEXIS 83405, at *23-24 ("In short, because Plaintiffs cannot avoid the need for loan-specific evidence, there is nothing to be gained from allowing statistical sampling *per se* and much to be lost, in time if not money.  Accordingly, and for the reasons more thoroughly explained by Judges Netburn, Failla, and Schofield, the Court concludes that 'the burden or expense of the proposed discovery outweighs its likely benefit.'") (quoting Fed. R. Civ. P. 26(b)(1)).[3]

The Trustee Sampling Decisions, as well as U.S. Bank in this case, rely in part on the Second Circuit Court of Appeals' opinion in *Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154 (2d Cir. 2014).  In that case, the court stated that "[the Trustee]'s alleged misconduct

---

[3] Sampling is expensive and time-consuming.  *See, e.g.*, *Wells Fargo I*, 2017 WL 953550, at *4 ("[T]he contemplated sampling will cost hundreds of thousands, if not millions, of dollars, will require months to conduct, and will likely result in challenges to the admissibility of the evidence.").  Plaintiffs and U.S. Bank acknowledge that sampling in this case would cost millions of dollars.

must be proved loan-by-loan and trust-by-trust." *Id.* at 162. This language, however, should be understood in context. The issue addressed by the court was the plaintiff's proposed use of sampling to establish class standing to sue over RMBS trusts in which the plaintiff did not invest (along with trusts in which it did invest). *Id.* at 159. The plaintiff sought to sample loans from across the various trusts to establish that loans in all trusts were defective. *Id.* at 162. The court held that sampling could not be used to establish class standing because even if sampling showed that each trust had breaching loans, it would not demonstrate the plaintiff's stake in each trust. *Id.* at 163. In so holding, the court highlighted the absence of any case in which "a single sample of loans taken from hundreds of trusts was used to prove a defendant's liability with respect to each of those trusts" but "acknowledge[d] that district courts have sometimes permitted plaintiffs to use statistical sampling to prove the incidence of defects within individual trusts." *Id.* at 162 n.6. The court thus did not directly address the propriety of sampling to prove liability against a trustee where the sample includes only loans from that trust rather than across trusts. That said, there is no reason to believe that the Second Circuit would depart from its "loan-by-loan" incantation with respect to use of sampling to prove liability or damages specifically against a trustee.

Indeed, in the case cited by the Second Circuit as one in which a district court approved sampling as a basis of proof in an RMBS case, the defendant acted as the issuer of RMBS securities, not a trustee. *See Assured Guaranty Municipal Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475, 486-87 (S.D.N.Y. 2013). The distinction is important for the reasons provided by the Trustee Sampling Decisions: the contractual language governing the trustees is couched in terms of loan-by-loan evaluation and

remedy; and, unlike a trustee, an RMBS issuer or sponsor securitizes the loans, conducts due diligence on the loans (or at least is in a position to do so), and makes representations and warranties about the loans.  *See, e.g., HSBC II*, 2018 U.S. Dist. LEXIS 31157, at *37 ("These cases [in which sampling was allowed] are inapposite because the duty of an originator or sponsor to underwrite each loan before issuing or purchasing it is not comparable to the limited and loan-specific nature of the trustee's duties under the [relevant contracts].");  *HSBC I*, 2017 WL 945099, at *6 (distinguishing and finding inapposite cases approving use of sampling in cases against RMBS issuers and sponsors).

<u>Application to this Case</u>

Although this case involves different trusts than those in the other Trustee Sampling Decisions, the contractual language at issue is not materially different.[4]  If there is anything about this case that distinguishes it from the others so as to merit a different outcome, it is to be found elsewhere besides the contract.

Royal Park has identified at least three differences between this case and the previous Trustee Sampling Decisions – one procedural, and two substantive. Procedurally, the Trustee Sampling Decisions responded to motions by the plaintiffs to obtain the Court's stamp of approval to develop and use statistical sampling evidence.  In contrast, Defendant U.S. Bank, who is seeking a protective order against sampling-related discovery, made the motion here.  Royal Park argues that this is an important

---

[4] *See* Transcript of Oral Argument dated April 23, 2018, at 47 (in response to the Court's question as to whether there is anything about this case different from the other Trustee Sampling Decision cases that would merit a different outcome, Royal Park's attorney answered, "Well I think that, you know, the facts are generally the same," and proceeded to address issues not having anything to do with the contract language).

difference because there is no discovery burden to protect against.  Royal Park has not issued any sampling-related discovery to U.S. Bank and does not plan to do so.  Rather, the information necessary to conduct sampling is already available to the parties.  All that need be done, so the argument goes, is for Royal Park to have its sampling expert draw a statistical sample for each trust and then extrapolate results of reunderwriting the loans in the sample to that trust's larger universe of loans.  U.S. Bank need not do anything.[5]

Royal Park's argument theoretically is correct.  But it is not realistic.  In a litigation with as much at stake as this one, no responsible defense attorney would move forward without at least analyzing plaintiff's sampling expert report, deposing the expert, preparing to cross-examine the expert at trial, and retaining an expert to potentially rebut the plaintiff's expert.  A reasonable defense attorney also would likely reunderwrite or at least critique the reunderwriting of the sampled loans.  U.S. Bank posed the prospect of even conducting its own counter-sampling and having its reunderwriting expert analyze the loans in both its and Royal Park's samples.[6]

A facile retort to this purported burden would be that if U.S. Bank is so certain that sampling is not relevant to a trustee case such as this, then it need not conduct any expert discovery.  And, by acknowledging that it would be irresponsible for U.S. Bank not to conduct its own sampling discovery in the face of Royal Park's sampling evidence, U.S.

---

[5] *See* Letter of Hillary B. Stakem dated May 2, 2017, at 2 (U.S. Bank "has no obligation to conduct any particular expert or fact discovery").

[6] As U.S. Bank puts it, "To the extent sampling is allowed, U.S. Bank will face a Hobson's choice.  If U.S. Bank elects not to engage in sampling discovery, it takes the risk that sampling as a means of proof might be allowed. . . .  Alternatively, if U.S. Bank engages in sampling discovery, it risks the expenditure of millions of dollars for no purpose."  (Letter of Benjamin P. Smith dated June 18, at 2 n.1.)

Bank implicitly concedes that sampling potentially can be relevant and viable admissible proof.[7]  Even accepting the implicit concession for argument's sake, however, Royal Park overlooks the applicable standard for discovery; that is, that the discovery pursued is relevant *and* proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).

Every judge in this district to have considered the issue to date has found sampling discovery unwarranted in cases against trustees.  The reasoning of those decisions is sound.  Accordingly, the relevance of sampling evidence to prove the investors' claims against the trustee is slim to none, while the burdens remain high, again leading to the conclusion that sampling discovery should not be pursued in this case.  *See Royal Park Investments SA/NV v. Deutsche Bank National Trust Co.*, No. 14 Civ. 4394, 2018 WL 1088020, at *8 (S.D.N.Y. Feb. 12, 2018) ("[P]roportionality and relevance are conjoined concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate, and *vice versa*.") (internal quotation marks omitted) (quoting *Vaigasi v. Solow Management Corp.*, No. 11 Civ. 5088, 2016 WL 616386, at *14 (S.D.N.Y. Feb. 16, 2016)).  In short, the fact that the sampling discovery issue comes before the Court on the Defendant's motion for protective order, rather than Plaintiff's motion to pursue sampling, is of no consequence to the issue at hand.

Oral argument of the motion also elucidated a potential substantive difference between this case and the other trustee cases, or at least a material feature of Royal Park's proposed sampling that directly addresses half of the "trust-by-trust, loan-by-loan" issue.  Specifically, the sampling proposed by Royal Park in this case would draw a

---

[7] *See* Transcript of Oral Argument dated April 23, 2018, at 36 (Royal Park attorney arguing that U.S. Bank attorney "said, well, it's too big a risk.  And that's precisely the problem, it's too big of a risk because it's not so open and shut as they argue . . . .").

separate sample of loans for each trust rather than a single sample from across all 21 trusts.[8]  Those samples, taken together, would total 2,800 loans.[9]  Reliance on this potential point of difference, however, makes no difference to the final analysis.  Even with a "trust-by-trust" approach, sampling will not overcome the loan-by-loan rubric imposed by the trust agreements and underscored in the Trustee Sampling Decisions.

Royal Park contends that sampling nevertheless is proportionate because of the far larger number of loans it would expect to reunderwrite if sampling is not permitted.  By Royal Park's estimate, it would need to reunderwrite more than 30,000 loans – more than ten times the loans required for its preferred sampling regime.[10]  U.S. Bank tenders a number of reasons why it believes Royal Park's 2,800 loan number is artificially low (such as the sample sizes being too small) and why the 30,000 loan estimate is highly exaggerated (such as because many of those loans would not be actionable due to statute of limitations or other issues).[11]  Regardless, and notwithstanding that the monetary amount potentially at stake in this case is hundreds of millions of dollars, spending millions of dollars, expending court resources and introducing additional expert

---

[8] It is unclear from the previous Trustee Sampling Decisions whether the sampling proposed by plaintiffs in those cases contemplated a single sample across multiple trusts or a separate sample for each trust.

[9] Letter of Darryl J. Alvarado dated June 11, 2018 ("6/11/18 Alvarado Letter"), at 1.  More specifically, a 100-loan sample would be drawn from each of fifteen trusts, while thirteen 100-loan samples would be drawn from the six other trusts that have non-overlapping loan groups.  (6/11/18 Alvarado Letter at 1.)

[10] 6/11/18 Alvarado Letter at 2.

[11] Letter of Benjamin P. Smith dated June 18, 2018, at 2-4.  For purposes of this opinion, U.S. Bank's arguments about under or over estimating the number of loans are not a factor influencing the Court's decision.

subject matter, all to conduct sampling discovery with even as few as 2,800 loans, is not proportionate to the needs of the case when every court to address the issue has concluded sampling is not viable proof against trustees.

Royal Park says that a third difference in this case makes all the difference when combined with the fact that separate samples will be drawn from each trust.  In the other Trustee Sampling Decision cases, as here, the plaintiff proposed using sampling to establish both liability and damages.  Unlike in this case, however, the plaintiffs in those cases purportedly sought to use sampling to prove two important liability prongs: both discovery of materially breaching loans or events of default and the fact of material breach or default.  Breaching loan and event of default refer to the events giving rise to the trustee's obligation to act.  Discovery refers to when that obligation arises – that is, when the trustee discovers a breaching loan or event of default.

The sampling dispute in the other cases has, to some extent, focused on the discovery prong – that is, whether sampling can be used to show that the trustee "discovered" breaching loans, and, to complicate matters further, whether discovery can be constructive or some other variant that would avoid the need to demonstrate actual discovery with respect to any particular loan.[12]  Here, however, Royal Park represents that it will not use sampling as evidence of U.S. Bank's discovery of breaching loans. Instead, Royal Park plans to demonstrate discovery "through direct and circumstantial evidence unrelated to sampling."[13]

---

[12] *See, e.g.*, *Wells Fargo I*, 2017 WL 953550, at * 7-8; *HSBC I*, 2017 WL 945099, at * 6-8.

[13] Letter of Darryl J. Alvarado dated May 22, 2018 ("5/22/18 Alvarado Letter"), at 1.

Royal Park states that, with respect to liability, it will use sampling to prove only "the scope of breaches" that U.S. Bank would have uncovered had it carried out its duties triggered by discovery or notice.[14]  In other words, Royal Park intends to use sampling in the same way it has been used in other cases in which sampling has been used to demonstrate the extent of materially breaching loans within a given trust.  As Royal Park points out, even U.S. Bank, acting as trustee in another case, advocated for use of sampling to demonstrate the extent of breaching loans, "a practice which the court then endorsed."[15]

Royal Park's pledge to prove discovery by means other than sampling removes one of the issues that call into question the relevance and proportionality of sampling in this case.  That, however, does not cure the problem.  While sampling has been accepted in some cases to prove rates of materially breaching loans, those cases, as explained earlier, were against sponsors or issuers of the securities who had a direct relationship to the mortgages underlying them.  U.S. Bank, as trustee, stands in different shoes subject to trustee-specific contractual terms.  As has been consistently held to date, that contractual language dictates a "loan-by-loan" analysis, a standard that cannot be met with sampling.  The same problem extends to Royal Bank's intended use of sampling to prove damages.  As U.S. Bank explained at oral argument, there are relevant questions

---

[14] 5/22/18 Alvarado Letter at 1.

[15] 5/22/18 Alvarado Letter at 2 (first citing *Home Equity Mortgage Trust Series 2006-1 v. DLJ Mortgage Capital, Inc.*, Index No. 156016/2012 (N.Y. Sup. Ct. Nov. 18, 2013); then citing *Deutsche Bank National Trust Co. v. Morgan Stanley Mortgage Capital Holdings LLC*, No. 14 Civ. 3020, 2018 WL 583116, at *6 (S.D.N.Y. Jan. 25, 2018) (permitting plaintiff-trustee to use loan sampling).

that sampling cannot answer.[16]  For instance, with respect to each breaching loan, Royal Park would need to establish which entity originated the loan and whether that entity was solvent at the time that U.S. Bank would have demanded that the originator repurchase the loan.  Sampling cannot answer those questions.

In sum, while this case may differ in certain respects from other cases against trustee defendants, those differences do not warrant a different outcome.  Sampling-related discovery is not proportional to the needs of this case.

Conclusion

Royal Park is free to spend time and resources on efforts it believes will further its case.  However, given the extremely low likelihood that sampling evidence will be permitted in this case, and given the burdens imposed, it is not proportionate to the needs of the case for Royal Park to pursue sampling-related discovery.  Defendant's motion for a protective order is GRANTED.[17]

---

[16] *See* Transcript of Oral Argument dated May 3, 2018 at 5, 12-13, 17-18, 21-22.

[17] To be clear, as with the opinions issued by the Magistrate Judge in *HSBC I* and *Wells Fargo I*, this Memorandum and Order addresses only, and is limited to, a discovery issue within this Court's discretion.  *See HSBC I*, 2017 WL 945099, at *4; *Wells Fargo I*, 2017 WL 953550, at *4.  Royal Park questions the practical effect of this qualification: if the parties cannot adduce sampling evidence during discovery, then they will have no opportunity to submit sampling evidence in the (unlikely) event Royal Park were to prevail on the issue at a future juncture.  Not so.  For example, if this decision stands but on appeal the Second Circuit were to reverse on the sampling issue, Royal Park could seek on remand to reopen discovery for purposes of developing sampling evidence.

SO ORDERED.

_____

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:        July 9, 2018
              New York, New York

Copies transmitted to all counsel of record.

13