UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————— x

ROYAL PARK INVESTMENTS SA/NV,
Individually and on Behalf of All Others
Similarly Situated,

Plaintiff,

vs.

U.S. BANK NATIONAL ASSOCIATION, as
Trustee,

Defendant.

————————————————————— x

:    Civil Action No. 1:14-cv-02590-VM-RWL
:
:    CLASS ACTION
:
:
:    ROYAL PARK INVESTMENTS SA/NV'S
:    MEMORANDUM OF POINTS AND
:    AUTHORITIES IN SUPPORT OF RULE 72
:    OBJECTIONS TO AND MOTION TO SET
:    ASIDE MAGISTRATE JUDGE'S JULY 9,
:    2018 ORDER GRANTING PROTECTIVE
:    ORDER
:
:
:

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND ....................................................................................................3

    A.    Plaintiff's Claims and Intended Use of Sampling....................................3

    B.    U.S. Bank's Motion for Protective Order .................................................4

    C.    The July 9 Order ......................................................................................6

III.  STANDARD OF REVIEW .....................................................................................8

IV.   ARGUMENT ..........................................................................................................9

    A.    The July 9 Order Relies on Findings of Fact and Law Inappropriate for
        Resolution on a Discovery Motion ...........................................................9

    B.    The July 9 Order's Conclusion that Sampling Is Not Viable Proof Against
        Trustees Is Clearly Erroneous and Based on a Misreading of Second
        Circuit Law .............................................................................................11

        1.    The Second Circuit Has Not Precluded Sampling Evidence in
              Cases Against Trustees ................................................................11

        2.    The Existence of "Sole Remedy" Clauses in the Governing
              Agreements Does Not Preclude Sampling.................................13

        3.    Sampling Evidence Has Been Widely Accepted Among Courts as
              Proof in RMBS Cases ................................................................14

    C.    At a Minimum, Royal Park Should Be Permitted to Use Sampling for
        Those Trusts that Experienced EoDs .....................................................16

    D.    The July 9 Order's Statement Concerning Royal Park's Burden of Proof
        with Regard to Damages Is Clearly Erroneous......................................17

V.    CONCLUSION.....................................................................................................19

# TABLE OF AUTHORITIES

**Page**

## CASES

*Assured Guar. Mun. Corp. v. DB Structured Prods.*,
  2014 WL 3282310 (N.Y. Sup. Ct. July 3, 2014) ...................................................15

*Assured Guar. Mun. Corp. v. Flagstar Bank*,
  920 F. Supp. 2d 475 (S.D.N.Y. 2013) .................................................................15

*Blackrock Allocation Target Shares v. Wells Fargo Bank, N.A.*,
  2017 WL 3610511 (S.D.N.Y. Aug. 21, 2017) ..................................................4, 11

*Blackrock Allocation Target Shares v. Wells Fargo Bank, N.A.*,
  2017 WL 953550 (S.D.N.Y. Mar. 10, 2017) ...............................................4, 8, 11

*DeFazio v. Wallis*,
  459 F. Supp. 2d 159 (E.D.N.Y. 2006) .....................................................................9

*Deutsche Bank Nat'l Trust Co. v. Morgan Stanley Holding Co.*,
  289 F. Supp. 3d 484 (S.D.N.Y. 2018)..............................................13, 14, 15, 19

*SACO I Trust 2006-5, Issuer v. EMC Mortg. LLC*,
  Index No. 0651820/2012 (N.Y. Sup. Ct., Feb. 5, 2015) .......................................15

*Jamil v. SPI Energy Co. Ltd.*,
  713 Fed. Appx. 42 (2d Cir. 2017) .........................................................................19

*Law Debenture Tr. Co. of N.Y. v. WMC Mortg. LLC*,
  2015 WL 9581729 (D. Conn. Dec. 30, 2015).................................................10, 18

*LNC Invs. v. First. Fid. Bank, N.A.*,
  935 F. Supp. 1333 (S.D.N.Y. 1996).......................................................................17

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012),
  *cert. denied*, __ U.S. __, 133 S. Ct. 1624 (2013).................................................12

*PowerShare v. Syntel*,
  597 F.3d 10 (1st Cir. 2010)......................................................................................9

*Process Am. Inc. v. Cynergy Holdings LLC*,
  839 F.3d 125 (2d Cir. 2016)...................................................................................18

*Ret. Bd. of the Policemen's Annuity and Benefit Fund
  of the City of Chi. v. Bank of New York Mellon*,
  775 F.3d 154 (2d Cir. 2014)..........................................................................6, 11, 12

- ii -

**Page**

*Royal Park Investments SA/NV v. HSBC Bank USA Nat'l Ass'n*,
   2017 WL 945099 (S.D.N.Y. Mar. 10, 2017) ...................................................................4, 8, 11

*Royal Park Investments SA/NV v. HSBC Bank USA Nat'l Ass'n*,
   2018 U.S. Dist. LEXIS 31157 (S.D.N.Y. Feb. 23, 2018)..............................................4, 11, 16

*Syncora Guar. v. EMC Mortg. Corp.*,
   2011 WL 1135007 (S.D.N.Y. Mar. 25, 2011) ......................................................................15

*Wakefern Food Corp. v. Prospect Plaza Improvements LLC.*,
   2010 WL 4514287 (D. Conn. Nov. 2, 2010) ..........................................................................9

*Williams Advanced Materials, Inc. v. Target Tech. Co., LLC*,
   2007 WL 2245886 (W.D.N.Y. Aug. 1, 2007) ........................................................................9

**STATUTES, RULES AND REGULATIONS**

Federal Rule of Civil Procedure
   Rule 26 ...............................................................................................................................4, 6
   Rule 26(b)(1)..........................................................................................................................11
   Rule 72 ..................................................................................................................................10
   Rule 72(a)............................................................................................................................8, 9
   Rule 72(b) ...............................................................................................................................9

1454766_1

## I.      INTRODUCTION

Although Magistrate Judge Lehrburger's July 9, 2018 Memorandum and Order ("July 9 Order," ECF No. 391), states that plaintiff Royal Park Investments SA/NV ("Royal Park") is "free to spend time and resources on efforts it believes will further its case," it bars Royal Park from doing just that.  Specifically, the July 9 Order precludes Royal Park from using statistically valid loan sampling evidence to prove any portion of its liability or damages case on the grounds that "it is not proportionate to the needs of the case for Royal Park to pursue sampling-related discovery." *Id.* at 12. As a result, Royal Park is prohibited from pursuing evidence that is highly relevant to its theory of the case, and will instead likely be required to reunderwrite more than ***ten times*** the number of loans it would have had sampling been permitted – an analysis that numerous courts in residential mortgage-backed securities ("RMBS") actions have found to be impractical, extremely costly, and a burden on judicial resources.  The July 9 Order exceeds the scope of Magistrate Judge Lehrburger's referral and, worse, is based on flawed assumptions and premises that are contrary to law.

First, the July 9 Order is procedurally invalid and should be vacated on this basis alone.  The July 9 Order relies on numerous findings of fact and law, including the interpretation of key contractual provisions, that are beyond the scope of the Magistrate Judge's referral and are, in any event, inappropriate for resolution on a motion for protective order.

Second, the July 9 Order finds that the burden of pursuing Royal Park's proposed evidence is disproportionate to its relevance based on an assumption that sampling evidence is not viable proof against trustees.  This is clear error, as there is no binding precedent holding that sampling cannot be used to prove a trustee's liability. Indeed, the cases on which the July 9 Order relies expressly disclaim any holding to that effect.

Third, the July 9 Order incorrectly concludes that certain contractual provisions contained in the RMBS trusts' governing agreements – the "sole remedy clauses" – limit U.S. Bank National Association's ("U.S. Bank") liability to a "loan-by-loan" analysis. These provisions are voidable, however, and U.S. Bank has waived its right to rely on the "sole remedy" provisions by breaching its contractual and common law obligations.

Fourth, the July 9 Order discounts the large body of precedent permitting sampling evidence in RMBS cases because of purported differences between the roles of a trustee and an RMBS issuer or sponsor. However, as discussed herein, the distinctions drawn are irrelevant to the facts of this case and to the particular use of sampling Royal Park intends.

Fifth, the July 9 Order does not distinguish between the use of sampling evidence to prove breaches of Representations and Warranties ("R&Ws") at times when U.S. Bank was administering the trusts in the ordinary course and when it was subject to a heightened, fiduciary "prudent person" standard (for example, after it gained knowledge of an Event of Default ("EoD")). Because U.S. Bank's contractual role changes in such circumstance, it was clear error for the court to preclude sampling to prove what U.S. Bank would have found had it conducted a prudent investigation of breaches in the Trusts after its duty of care was elevated.

Finally, the July 9 Order precludes the use of sampling evidence in Royal Park's damages case because sampling cannot answer questions related to U.S. Bank's defenses, such as a particular loan's originator and whether that originator was insolvent at the time U.S. Bank should have enforced repurchase. But these are facts for U.S. Bank to prove as part of its defense, not facts that Royal Park is required to prove in its affirmative damages case.

For these reasons, and those set forth herein, Royal Park respectfully requests that (i) the July 9 Order be vacated, and (ii) U.S. Bank's motion for a protective order precluding sampling be denied.

## II.     BACKGROUND

### A.     Plaintiff's Claims and Intended Use of Sampling

Royal Park alleges that U.S. Bank, as Trustee for 21 RMBS Trusts, breached its contractual obligations under the Trusts' Governing Agreements by failing to protect trust assets.  These failures took several forms, including, *inter alia*: (i) failing to ensure that loans that U.S. Bank knew or discovered breached R&Ws under the Governing Agreements were cured or repurchased by the requisite party; (ii) failing to declare EoDs despite having been notified of or having actual knowledge of their occurrence; (iii) failing to act as a "prudent person" once it had actual knowledge or written notice of an EoD having occurred (regardless of whether the EoD was "declared"); and (iv) abandoning claims for breach of R&Ws that it submitted in the Lehman Brothers Holdings Inc. ("Lehman") bankruptcy proceedings, such that Trust assets can no longer be recovered from the appropriate Lehman entity.  *See* ECF Nos. 2, 242.  Royal Park also alleges that U.S. Bank breached its common law duty of trust to the Certificateholders in the Trusts by failing to put the Certificateholders' interests ahead of its own.  *Id.*

As part of its liability and damages case, Royal Park intends to conduct a sampling analysis of 2,800 loans in the Trusts, comprised of 28 separate loan samples of 100 loans each.[1]  Royal Park will not use the sampling evidence to prove U.S. Bank's "discovery" of R&W breaches or

---

[1]     While there are only 21 Trusts at issue, certain of the Trusts have one or more non-overlapping loan groups and so require more than one loan sample to accurately represent the extent of breaches in the Trusts.  Thus, Royal Park intends to reunderwrite a sample of 100-loans from each of the 15 Trusts with overlapping loan groups, and 13 100-loan samples from the six trusts with non-overlapping loan groups, for a total of 2,800 loans.

knowledge of EoDs – that will be proven using direct and circumstantial evidence unrelated to sampling. Rather, Royal Park's sampling evidence will be used to prove the scope of the material breaches that U.S. Bank would have uncovered in the Trusts' underlying collateral had it carried out the duties triggered by such discovery or knowledge, and to estimate damages by extrapolating that rate across each respective loan group or Trust.

### B.    U.S. Bank's Motion for Protective Order

On March 5, 2018, U.S. Bank filed a renewed motion for a protective order requesting that Royal Park be precluded from "using statistical sampling and re-underwriting of a sample of loans ("sampling") to attempt to establish liability and/or damages in this case."[2] ECF No. 371 at 1. U.S. Bank argued that because sampling cannot prove liability or damages on a "loan-by-loan" basis, as purportedly required, all sampling-related discovery is disproportionate to the needs of this case under Federal Rule of Civil Procedure 26 ("Rule 26"). *Id.* U.S. Bank did not cite any provisions of the Governing Documents in this case to support its "loan-by-loan" argument, but instead relied on Magistrate Judge Netburn's orders, as affirmed by Judges Failla and Schofield, in the *Wells Fargo*[3] and *HSBC*[4] actions (collectively, the "Trustee Sampling Opinions").

On March 14, 2018, Royal Park opposed U.S. Bank's motion as procedurally improper, arguing that an objection to expert evidence is properly considered in the context of a *Daubert*

---

[2]   U.S. Bank's initial motion for protective order on this same issue, filed on April 25, 2017 (ECF No. 221), was denied without prejudice by Magistrate Judge Francis on June 1, 2017 (ECF No. 246).

[3]   *Blackrock Allocation Target Shares v. Wells Fargo Bank*, *N.A.*, No. 1:14-cv-9371-KPF-SN, 2017 WL 953550 (S.D.N.Y. Mar. 10, 2017) (M.J. Netburn order) ("*Wells Fargo I*"); *Blackrock Allocation Target Shares v. Wells Fargo Bank, N.A.*, 2017 WL 3610511 (S.D.N.Y. Aug. 21, 2017) (J. Failla order) ("*Wells Fargo II*").

[4]   *Royal Park Investments SA/NV v. HSBC Bank USA Nat'l Ass'n*, No. 1:14-cv-08175-LGS-SN, 2017 WL 945099 (S.D.N.Y. Mar. 10, 2017) (M.J. Netburn order) ("*HSBC I*"); *Royal Park Investments SA/NV v. HSBC Bank USA Nat'l Ass'n*, No. 1:14-cv-08175-LGS-SN, 2018 U.S. Dist. LEXIS 31157 (S.D.N.Y. Feb. 23, 2018) (J. Schofield order) ("*HSBC II*").

motion, argument at summary judgment, a motion *in limine*, and/or trial.  ECF No. 374 at 2.  Royal Park also emphasized that issuance of the requested protective order would improperly require the Magistrate Judge to make findings of fact and law on ultimate issues, such as (i) whether U.S. Bank had an obligation to investigate whether loans breached R&Ws if provided general notice; (ii) whether U.S. bank had relinquished its right to assert a "sole remedy" argument in breaching its contractual obligations; and (iii) the scope of U.S. Bank's contractual obligations once the "prudent person" standard was triggered.  *Id.*  Royal Park also explained the relevance of sampling to its case, particularly in light of its claims that U.S. Bank had actual knowledge or written notice of EoDs, which activated U.S. Bank's obligation to carry out its trustee duties as a "prudent person" would in managing his own investments.  *Id.*

U.S. Bank filed a reply on March 20, 2018 (ECF No. 375) and oral argument was held before Magistrate Judge Lehrburger on April 23, 2018 (ECF No. 378).

After receipt of additional correspondence from the parties (ECF Nos. 383, 384), Magistrate Judge Lehrburger issued an order on June 4, 2018 requesting that Royal Park answer several additional questions regarding sampling.  ECF No. 385.  Royal Park provided the requested information on June 11, 2018 (ECF No. 387), including estimates of the number of loans to be reunderwritten if sampling is not permitted (a minimum of 30,000) and the estimated cost of using sampling (approximately $1.4 million) versus not sampling (more than $15 million).[5]  U.S. Bank

---

[5]   Based on counsel's experience, reunderwriting analyses typically cost approximately $500 per loan file, which includes the cost of expert indexing and organization of loan files and underwriting guidelines, training loan reunderwriters, conducting loan reunderwriting, analysis of the loan reunderwriting results, and preparation of the loan reunderwriting report.  Although Royal Park has not yet concluded its analysis of which specific loans it would be required to reunderwrite if sampling is not permitted, it estimates that the number would be greater than 30,000 based on the fact that it has identified approximately 3,700 loans to date with specific R&W breaches that U.S. Bank was informed of, and the existence of more than 30,000 loans in trusts which experienced an EoD – all of which would need to be reunderwritten.  *See generally* ECF No. 387.

- 5 -

submitted a response on June 18, 2018 (ECF No. 388),[6] and Royal Park replied on June 20, 2018 (ECF No. 390).

### C.      The July 9 Order

On July 9, 2018, Magistrate Judge Lehrburger granted U.S. Bank's motion for a protective order and precluded Royal Park from developing and proffering sampling evidence. The July 9 Order stated several reasons for its conclusion that sampling is not "proportionate" in this case under Rule 26.

First, the July 9 Order found that U.S. Bank's motion for protective order was not procedurally improper despite the fact that Royal Park sought no discovery whatsoever from U.S. Bank. July 9 Order at 6-7. Magistrate Judge Lehrburger reasoned that U.S. Bank would be compelled to respond to Royal Park's sampling evidence, noting that "[i]n a litigation with as much at stake as this one, no responsible defense attorney would move forward without at least analyzing plaintiff's sampling expert report, deposing the expert, preparing to cross-examine the expert at trial, and retaining an expert to potentially rebut the plaintiff's expert. A reasonable defense attorney also would likely reunderwrite or at least critique the reunderwriting of the sampled loans." *Id.* at 7.

Second, Magistrate Judge Lehrburger relied on the reasoning of the Trustee Sampling Opinions, and the Second Circuit's opinion in *Ret. Bd. of the Policemen's Annuity and Benefit Fund of the City of Chi. v. Bank of New York Mellon*, 775 F.3d 154 (2d Cir. 2014) ("*Policemen's Annuity*"). With regard to the latter, Magistrate Judge Lehrburger acknowledged that the Second Circuit "did not directly address the propriety of sampling to prove liability against a trustee where

---

[6]     Magistrate Judge Lehrburger stated in the July 9 Order that many of the arguments in U.S. Bank's June 18, 2018 letter, which focused heavily on whether Royal Park was properly estimating the number of loans to be sampled or reunderwritten, were "not a factor influencing the Court's decision." July 9 Order at 9 n.11.

- 6 -

the sample includes only loans from that trust rather than across trusts."   July 9 Order at 5. Nevertheless, Magistrate Judge Lehrburger assumed that the Second Circuit would extend the "loan-by-loan" analysis it applied to class standing to proving a trustee's liability, stating: "That said, there is no reason to believe that the Second Circuit would depart from its 'loan-by-loan' incantation with respect to use of sampling to prove liability or damages specifically against a trustee."  *Id.*

Third, Magistrate Judge Lehrburger found that the cost of conducting sampling outweighed the relevance of such discovery because "[e]ven with a 'trust-by-trust' approach, sampling will not overcome the loan-by-loan rubric imposed by the trust agreements and underscored in the Trustee Sampling Decisions." *Id.* at 9.  Magistrate Judge Lehrburger dismissed Royal Park's argument that sampling is proportionate in this case given the far larger number of loans it would be required to reunderwrite if sampling is not permitted – more than 30,000, instead of 2,800 if sampling is permitted[7] – because "notwithstanding that the monetary amount potentially at stake in this case is hundreds of millions of dollars, spending millions of dollars, expending court resources and introducing additional expert subject matter, all to conduct sampling discovery . . . is not proportionate to the needs of the case when every court to address the issue has concluded sampling is not viable proof against trustees."  July 9 Order at 9-10.

Fourth, Magistrate Judge Lehrburger found that while "Royal Park's pledge to prove discovery by means other than sampling removes one of the issues that call into question the relevance and proportionality of sampling in this case," the "contractual language dictates a 'loan-by-loan' analysis, a standard that cannot be met with sampling."  *Id.* at 11.  Based on his interpretation of the governing contracts, Magistrate Judge Lehrburger concluded that cases in which

---

[7]   *See* ECF No. 387 at 2.

sampling has been permitted to prove rates of materially breaching loans against sponsors and issuers are not relevant.  *Id.*

Fifth, Magistrate Judge Lehrburger found that there were loan-specific questions that sampling would not answer, stating that "with respect to each breaching loan, Royal Park would need to establish which entity originated the loan and whether that entity was solvent at the time that U.S. Bank would have demanded that the originator repurchase the loan.  Sampling cannot answer those questions."  *Id.* at 12.

Finally, Magistrate Judge Lehrburger reiterated that "as with the opinions issued by the Magistrate Judge in *HSBC I* and *Wells Fargo I*," the July 9 Order "addresses only, and is limited to, a discovery issue within this Court's discretion."  *Id.* at 12 n. 17.  The practical effect of the opinion, according to the July 9 Order, is not to preclude Royal Park from submitting sampling evidence if it prevails on the issue in the future because, "[f]or example, if this decision stands but on appeal the Second Circuit were to reverse on the sampling issue, Royal Park could seek on remand to reopen discovery for purposes of developing sampling evidence."  *Id.*

Because these findings were made in clear error or misapply relevant law, the July 9 Order should be set aside and U.S. Bank's motion for a protective order precluding sampling evidence denied.

## III.    STANDARD OF REVIEW

Pre-trial discovery matters are considered non-dispositive decisions governed by Federal Rule of Civil Procedure 72(a).  Where a party objects to any portion of a Magistrate Judge's decision on a non-dispositive issue, the District Judge "must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a).  "A magistrate judge's order is 'clearly erroneous' where 'on the entire evidence,' the district court is 'left with the definite and firm

- 8 -

conviction that a mistake has been committed.'" *Williams Advanced Materials, Inc. v. Target Tech. Co., LLC*, 2007 WL 2245886, at *3 (W.D.N.Y. Aug. 1, 2007) (citation omitted).   "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *DeFazio v. Wallis*, 459 F. Supp. 2d 159, 162 (E.D.N.Y. 2006).   However, where, like here, a decision turns on a "question of law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and review under Rule 72(b)'s de novo standard." *PowerShare v. Syntel*, 597 F.3d 10, 15 (1st Cir. 2010) ("review of a non-dispositive motion by a district judge turn[ing] on a pure question of law . . . is plenary under the 'contrary to law' branch of . . . Rule 72(a)"); *Wakefern Food Corp. v. Prospect Plaza Improvements LLC.*, 2010 WL 4514287, at *2 (D. Conn. Nov. 2, 2010) (regardless of whether decision is "dispositive" or "not dispositive," review of Magistrate Judge's legal determination is plenary).

## IV.   ARGUMENT

### A.   The July 9 Order Relies on Findings of Fact and Law Inappropriate for Resolution on a Discovery Motion

The July 9 Order relies on findings of fact and law on ultimate issues, such as: whether Royal Park is required to prove liability and damages on a "loan-by-loan" basis and, if so, what that means (July 9 Order at 9-11); whether the sole remedy clause of the Governing Agreements is voidable; and, if so, whether U.S. Bank relinquished its right to assert a "sole remedy" argument in breaching its contractual obligations (*id.* at 5, 11).   Indeed, it would be impossible to decide the propriety of sampling without making these findings of fact and law.   But these findings are the province of this Court at summary judgment and the jury at trial; Magistrate Judge Lehrburger's referral is to address discovery and general pre-trial issues, not to decide ultimate merits issues.   ECF No. 49.   This conflict is precisely why Magistrate Judge Peck declined a trustee defendant's request to decide "whether sampling should occur" as going "beyond discovery to the merits."   *See* Alvarado Decl.,

- 9 -

Ex. 1;[8] *Law Debenture Tr. Co. of N.Y. v. WMC Mortg. LLC*, 2015 WL 9581729, at *5, *7 (D. Conn. Dec. 30, 2015) (rejecting motion to exclude or limit testimony of sampling expert on ground that sampling would not provide "loan-by-loan proof" and noting that the court's gatekeeping function is "concerned with whether the proffered expert opinion is ***admissible***, not whether it is ***correct***, or ***persuasive*** to the fact finder") (original emphasis).  Because the July 9 Order exceeds Magistrate Judge Lehrburger's scope of referral, it should be vacated.

The July 9 Order's caveat that it "addresses only, and is limited to, a discovery issue within this Court's discretion," is illusory because, in truth, it forever bars Royal Park from developing the expert testimony and evidence necessary to prove its case.  July 9 Order at 12 n.17.  The July 9 Order attempts to disclaim that it has the practical effect of barring future opportunity to submit sampling evidence if Royal Park "prevails on the issue at a future juncture," stating that, "[f]or example, if this decision stands but on appeal the Second Circuit were to reverse on the sampling issue, Royal Park could seek on remand to reopen discovery for purposes of developing sampling evidence." *Id.*  But while that is true in theory, it ignores the practical realities of such a situation.  If sampling is later permitted, after an appeal to this Court and then, as the July 9 Order theorizes, the Second Circuit (which could likely only occur after a judgment), reopening discovery to conduct sampling will serve no purpose; by that time, Royal Park will have expended approximately $15 million and countless attorney and expert hours to gather and organize the loan files and underwriting guidelines of, and then reunderwrite, the approximately 30,000 loans at issue.

---

[8]   Declaration of Darryl J. Alvarado in Support of Royal Park Investments SA/NV's Rule 72 Objections to and Motion to Set Aside Magistrate Judge's July 9, 2018 Order Granting Protective Order ("Alvarado Decl."), filed concurrently herewith.

**B.      The July 9 Order's Conclusion that Sampling Is Not Viable Proof Against Trustees Is Clearly Erroneous and Based on a Misreading of Second Circuit Law**

The July 9 Order finds that sampling would not be proportionate in this case pursuant to Rule 26(b)(1).  *See* July 9 Order at 4.  The July 9 Order does not (and could not) suggest that it would be more cost-effective to reunderwrite each of the approximately 30,000 allegedly breaching loans than to conduct a sampling analysis of 2,800.   Rather, the July 9 Order states that because "notwithstanding that the monetary amount potentially at stake in this case is hundreds of millions of dollars, spending millions of dollars . . . all to conduct sampling discovery with even as few as 2,800 loans, is not proportionate to the needs of the case when every court to address the issue has concluded sampling is not viable proof against trustees."  *Id.* at 9-10.  Because sampling evidence is highly relevant to plaintiff's case, and because *no* Second Circuit authority holds that sampling is not viable proof against trustees,[9] the July 9 Order's proportionality conclusion is clearly erroneous.

**1.      The Second Circuit Has Not Precluded Sampling Evidence in Cases Against Trustees**

The July 9 Order relies on *Policemen's Annuity* as precedent guiding the court's decision to preclude sampling, stating that "there is no reason to believe that the Second Circuit would depart from its 'loan-by-loan' incantation with respect to use of sampling to prove liability or damages specifically against a trustee."  July 9 Order at 5.  The July 9 Order did not explain the court's reason

---

[9]      Importantly, the Trustee Sampling Opinions were decided on proportionality grounds, and the issuing courts emphasized that their decisions were limited only to a discovery issue.  *See HSBC I*, 2017 WL 945099, at \*4 ("[T]he Court's ruling . . . is intended to guide the Court's proportionality analysis.  Accordingly, at summary judgment or trial, conclusions of law set forth in this opinion should not be deemed to have law-of-the-case effect."); *Wells Fargo I*, 2017 WL 935550, at \*4 (same); *Wells Fargo II*, 2017 WL 3610511, at \*6 ("Judge Netburn did not decide Plaintiff's standard of proof at trial or summary judgment in resolving the sampling issue."); *HSBC II*, 2018 U.S. Dist. LEXIS 31157, at \*36-\*37 (same).  While Royal Park disagrees that their impact is limited only to a specific discovery issue, it is clear that the courts addressing the use of sampling evidence against trustees disclaimed any conclusion as to the viability of such proof.

- 11 -

for making this assumption, and the language contained within the *Policemen's Annuity* opinion itself demonstrates that the court's assumption was incorrect.

The language from *Policemen's Annuity* that the July 9 Order refers to as the "loan-by-loan incantation" arose in a completely different context.  As Magistrate Judge Lehrburger recognized, the Second Circuit's decision in *Policemen's Annuity* addressed the question of whether the Second Circuit's earlier decision in *NECA*[10] should be extended so that "a named plaintiff in a putative class action has 'class standing' to assert, on absent class members' behalf, breach of duty claims against the trustee of an RMBS trust in which the named plaintiff did not invest." *Policemen's Annuity*, 775 F.3d at 155.  The Second Circuit reasoned that even proof the trustee "***always*** failed to act when it was required to do so would not prove [plaintiffs'] case, because they would still have to show which trusts actually had deficiencies that required [the trustee] to act in the first place," given that the "alleged misconduct must be proved loan-by-loan and trust-by-trust."  *Id.* at 162-63 (original emphasis).  Importantly, the Second Circuit noted without even a hint of disapproval that courts have "permitted plaintiffs to use statistical sampling to prove the incidence of defects within individual trusts."  *Id.* at 162 n.6. Indeed, it explicitly left open the question of "[w]hether or not [sampling] could appropriately be used to establish that [a trustee] breached its duties to certificateholders," merely noting that the plaintiffs' sampling proposal – which included sampling loans from trusts it had not invested in – "fundamentally misses the point of the class standing inquiry that *NECA* envisions."  *Id.* at 162-63.  Thus, to the extent the July 9 Order relied on an assumption that the Second Circuit requires that all claims against trustees be proven only using loan-specific evidence, it is unsupported and must be set aside.

---

[10]   *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012), *cert. denied*, __ U.S. __, 133 S. Ct. 1624 (2013).

## 2.   The Existence of "Sole Remedy" Clauses in the Governing Agreements Does Not Preclude Sampling

The July 9 Order primarily relies on the reasoning of the Trustee Sampling Decisions for granting U.S. Bank's protective order.  As Magistrate Judge Lehrburger points out, "[t]he principal reason given by each of the Trustee Sampling Decisions for precluding the use of sampling is that under the language of the relevant agreements governing the trusts, the sole remedy provided to the trustee with regard to breaching loans is to seek repurchase on a loan-by-loan, trust-by-trust basis." July 9 Order at 3.  According to the July 9 Order, "whether and to what extent a trustee can obtain repurchase of breaching loans must be determined separately for each breaching loan," and sampling could not possibly provide that information.  *Id*.  This finding assumes that the Governing Agreements' sole remedy clauses were, in all circumstances, enforceable – but it is clear error to do so.  Actually, U.S. Bank was ***not*** limited to specific performance of the "sole remedy clause" – *i.e.*, demanding repurchase of loans on a "loan-by-loan" basis – had it chosen to enforce the R&Ws, because those provisions were voidable in circumstances such as these.  Although the court did not cite any specific provisions in the Governing Agreements for this point, making this issue somewhat abstract, courts addressing sole remedy clauses in similar contracts have found the provisions voidable.

For example, Judge Forrest recently addressed this issue in *Deutsche Bank Nat'l Trust Co. v. Morgan Stanley Holding Co.*, 289 F. Supp. 3d 484 (S.D.N.Y. 2018) ("*Morgan Stanley*"), finding that an RMBS trustee seeking damages for breaching loans on behalf of an RMBS trust was ***not*** limited by the sole remedy clause in the trust documents to seeking loan-by-loan repurchase, and that as such, the trustee could use sampling to prove the extent of the breaches in the trusts at issue.

First, the court noted that, "[t]he reality is that the Repurchase Protocol [of the sole remedy clause] was not designed or intended to remedy a breach of the nature or magnitude alleged" and that

requiring the plaintiff trustee to provide "loan-by-loan analysis and proof" of breaches in order to merit repurchase or cure had been proven in other actions would be "extraordinary and, measured against various benchmarks, impracticable." *Id.* at 502-03. As such, the court concluded that an award of damages was permissible in lieu of "sole remedy" specific performance. *Id.* at 504. The court reasoned that "allowing for an alternative award of damages is consistent with broader principles of equity" because the "primary relief that [the trustee] is seeking – *i.e.*, the 'Purchase Price' of materially nonconforming loans – is completely fungible." *Id.* at 502. Royal Park seeks the exact same remedy here – damages based on the repurchase price that U.S. Bank should have obtained on behalf of the Trusts by bringing the same type of case against other responsible parties – not the repurchase of specific loans.

Because a trustee is ***not*** always required to produce loan-by-loan proof of each individual breach in order to enforce the R&Ws and/or recover damages from the appropriate party even where the Governing Agreements contain a sole remedy provision, there is no basis for mandating that Royal Park do so. After all, Royal Park intends to use non-sampling evidence to show that U.S. Bank's duty to act was triggered and sampling evidence will be used simply to show the material defect rate U.S. Bank would have found and enforced against originators and/or sponsors had it fulfilled its obligations. *See* §IV.B.3., *infra.* And, as Judge Forrest found in reviewing the issue in similar circumstances, "statistical sampling is an entirely appropriate method" for a trustee to "prove both liability and damages" against an originator and/or depositor. *See Morgan Stanley*, 289 F. Supp. 3d at 504.

### 3.   Sampling Evidence Has Been Widely Accepted Among Courts as Proof in RMBS Cases

The July 9 Order acknowledges that loan sampling has frequently been endorsed by courts in RMBS cases to prove rates of materially breaching loans, and that it can be appropriate to do so. *See*

July 9 Order at 11.  However, it distinguishes those cases from this one on the grounds that those cases were against sponsors or issuers of the securities "who had a direct relationship to the mortgages underlying them."[11]  July 9 Order at 11.  Magistrate Judge Lehrburger reasoned that "U.S. Bank, as trustee, stands in different shoes subject to trustee-specific contractual terms . . . that contractual language dictates a 'loan-by-loan' analysis, a standard that cannot be met with sampling."  *Id.*  However, the ***only*** language in the Governing Agreements purporting to limit any liability for breaches of R&Ws is contained within the sole remedy clauses, which, as explained in §IV.B.2. above, does not limit a trustee's ability to pursue responsible parties for damages resulting from pervasive breaches.  As such, the distinction the court draws in the July 9 Order between cases against RMBS issuers and sponsors and those against RMBS trustees based on contractual "loan-by-loan" language is illusory.[12]

---

[11]   These cases include, *inter alia*, *Assured Guar. Mun. Corp. v. Flagstar Bank*, 920 F. Supp. 2d 475, 512 (S.D.N.Y. 2013) ("Sampling is a widely accepted method of proof in cases brought under New York law, including in cases relating to RMBS and involving repurchase claims."); *Assured Guar. Mun. Corp. v. DB Structured Prods.*, 2014 WL 3282310, at *6, *8 (N.Y. Sup. Ct. July 3, 2014) ("sampling and expert evidence may be used" at trial; forcing parties "to re-underwrite all of the loans is commercially unreasonable"; "sampling may be used to compute damages"); *SACO I Trust 2006-5, Issuer v. EMC Mortg. LLC*, Index No. 0651820/2012, NYSCEF Doc. No. 196-4 (N.Y. Sup. Ct., Feb. 5, 2015) ("use of statistical sampling to prove liability and damages on their claims is consistent with the terms of the contract governing the transactions, including but not limited to the PSAs"); *Home Equity Mortg. 2006-1 v DLJ Mortg. Capital, Inc.*, Index No. 156016/2012, NYSCEF Doc. No. 196-5 at 1 (N.Y. Sup. Ct., July 12, 2013) ("*HEMT 2006-1*") ("ORDERED that plaintiffs may use statistical sampling to prove liability and damages on all of their claims"); *Syncora Guar. v. EMC Mortg. Corp.*, 2011 WL 1135007, at *6 n.4 (S.D.N.Y. Mar. 25, 2011) (approving sampling and explaining that defendant "cannot reasonably expect the Court to examine each of the 9,781 transactions to determine whether there has been a breach, with the sole remedy of putting them back one by one").

[12]   As noted by Judge Forrest in the context of analyzing a sole remedy provision's impact on the trustee's requirement to provide notice to a warrantor of breaches, however, sole remedy clauses do not "plainly and unequivocally require loan-by-loan notice or discovery."  *Morgan Stanley*, 289 F. Supp. 3d at 505.  The July 9 Order did not discuss any specific provisions in the Governing Documents, so did not analyze whether the contractual language here specifies loan-by-loan notice (it does not).  *See, e.g.*, Alvarado Decl., Ex. 2, §2.04.

Another distinction the court perceives as "important" – that an "RMBS issuer or sponsor securitizes the loans, conducts due diligence on the loans (or at least is in a position to do so), and makes representations and warranties about the loans" – is not relevant to the sampling dispute present here.  *See* July 9 Order at 5-6.  The July 9 Order adopts the reasoning of the Trustee Sampling Decisions in drawing this distinction, but those cases reached the conclusion that the obligations of the different deal parties was important in the context of whether sampling could be used to prove "discovery" under the Governing Agreements.  Those decisions reasoned that it was equitable for sampling evidence to be used to prove that issuers and sponsors who had an opportunity to conduct due diligence knew of pervasive breaches, but that the same was not true for trustees, who did not have an obligation to conduct due diligence on all loans in the trusts.  *See, e.g.*, *HSBC II*, 2018 U.S. Dist. LEXIS 31157, at \*7-\*8.  But here, where Royal Park will *not* use sampling evidence to prove discovery, whether U.S. Bank conducted due diligence or made R&Ws on the loans is irrelevant.

### C.   At a Minimum, Royal Park Should Be Permitted to Use Sampling for Those Trusts that Experienced EoDs

The July 9 Order does not address the use of sampling to prove the material defect rates in Trusts that Royal Park will prove experienced an EoD; nevertheless, it precludes the use of sampling for that purpose.  But it is clear error to lump the use of sampling to prove the R&W breaches U.S. Bank should have enforced in its ordinary administration of a Trust together with the use of sampling to prove the defects in Trusts experiencing an EoD.  These two scenarios are wholly distinct.  As referenced above, once U.S. Bank had knowledge or written notice of an EoD, a heightened "prudent person" standard governed its actions with regard to the Trusts.  *See, e.g.*, Alvarado Decl., Ex. 2, §6.01.  New York law "requires an indenture trustee to perform prudently even the more general obligations in the indenture, and applies to any conduct not specifically

prohibited by the indenture which would enable the investors to secure repayment of the trust certificates." *LNC Invs. v. First. Fid. Bank, N.A.*, 935 F. Supp. 1333, 1348 (S.D.N.Y. 1996); *see also* Alvarado Decl., Ex. 2, §6.15.  Events of Default under the Governing Agreements include, *inter alia*, Master Servicer failures to (i) act in accordance with the normal and usual standards of practice of prudent mortgage servicers; (ii) ensure that loans are serviced legally; and (iii) promptly notify U.S. Bank of R&W breaches.  *See* Alvarado Decl., Ex. 2, §6.14.

After demonstrating U.S. Bank's knowledge of EoDs, Royal Park will then show that a prudent person would have investigated for R&W breaches and enforced repurchases, but that U.S. Bank failed to do so unless specifically compelled by Certificateholders.  Sampling will demonstrate the rate of breaches that U.S. Bank would have identified had it conducted a prudent investigation of the Trusts once it knew of an EoD – just as it did in other instances as trustee.  *See, e.g.*, *HEMT 2006-1*, Index No. 156016/2012, NYSCEF Doc. No. 236 (N.Y. Sup. Ct. Nov. 18, 2013) (endorsing U.S. Bank's request to use loan sampling to demonstrate the extent of breaching loans in RMBS trust).  The July 9 Order, in precluding Royal Park from using sampling in the ***same manner*** that U.S. Bank did when enforcing R&Ws to show what U.S. Bank would have uncovered had it conducted an investigation after an EoD, is in effect a decision that U.S. Bank's obligations under the prudent person standard did not include conducting an investigation at all – an issue far beyond the scope of the Magistrate Judge's authority and inappropriate for resolution on a discovery order. *See* §IV.A., *supra*; Alvarado Decl., Ex. 1.

     **D.**     **The July 9 Order's Statement Concerning Royal Park's Burden of Proof with Regard to Damages Is Clearly Erroneous**

The July 9 Order states that sampling is not relevant to proving damages because "[a]s U.S. Bank explained at oral argument, there are relevant questions that sampling cannot answer.  For instance, with respect to each breaching loan, Royal Park would need to establish which entity

originated the loan and whether that entity was solvent at the time that U.S. Bank would have demanded that the originator repurchase the loan.  Sampling cannot answer those questions." July 9 Order at 11-12.  This statement conflates erroneously Royal Park's affirmative burden of proof with facts that U.S. Bank has indicated it will attempt to prove in its defense.  *See* ECF No. 47 at 30 (U.S. Bank's Thirtieth *Affirmative Defense*: "Plaintiffs' claims are barred, in whole or in part, to the extent that any enforcement action by the Trustee taken against an allegedly breaching party would not have yielded any recovery for the Covered Trusts due to the insolvency of the allegedly breach party or for any other reason."); ECF No. 378 at 58:22-59:3 ("Mr. Smith: So the reason why we need to proceed loan by loan is because *the trustee has a defense* . . . that there may be a knowledge issue, there may be a materiality with respect to the knowledge issue, there may be a problem with respect to the knowledge issue, there may be a problem with the warrantor, there may be a problem with the statute of limitation.").

To the extent that the July 9 Order relied on this misunderstanding to find that sampling evidence would not be relevant to Royal Park's affirmative case, its finding is erroneous.  The preponderance of the evidence standard that Royal Park must meet in proving damages requires that it prove the *fact* of damages, and the "burden of any uncertainty as to the amount of damages is on the breaching party." *Process Am. Inc. v. Cynergy Holdings LLC*, 839 F.3d 125, 141 (2d Cir. 2016).  "[A] plaintiff need only show a 'stable foundation for a reasonable estimate' of the damages incurred as a result of the breach [of contract]." *Id.*  Using statistically-valid sampling to determine a material defect rate in loans that have been liquidated at a loss, and from there extrapolating a damages figure for each Trust – just as U.S. Bank itself has done in actions against RMBS sponsors or issuers – will create a reliable damages estimate sufficient to meet Royal Park's burden of proof. *See, e.g.*, *Law Debenture*, 2015 WL 9581729, at *7; *see also HEMT 2006-1*, Index No. 156016/2012, NYSCEF

No. 236.  U.S. Bank will then have the opportunity to counter Royal Park's damages evidence with any evidence it has to support its defenses (*e.g.*, whether certain originators were insolvent prior to the breach).  *See, e.g.*, *Jamil v. SPI Energy Co. Ltd.*, 713 Fed. Appx. 42, 44-45 (2d Cir. 2017) (once plaintiff, the non-breaching party, had shown damages as a matter of fact, it was defendant's burden of proof to establish any discount rate to the value of the estimated damages).  Requiring that Royal Park provide an exact, loan-by-loan damages figure in its affirmative case, however, amounts to limiting Royal Park to a remedy for specific performance – a remedy it has not sought and which U.S. Bank has waived through its gross negligence.  *See Morgan Stanley*, 289 F. Supp. 3d at 500-02.  Because the July 9 Order's damages conclusion was contrary to law, it must be set aside.

## V.     CONCLUSION

The July 9 Order precluding the use of sampling to prove any aspect of Royal Park's case is the result of a proportionality analysis relying on clearly erroneous premises and assumptions contrary to law.  For these reasons, Royal Park respectfully requests that the July 9 Order be set aside and U.S. Bank's motion for protective order precluding sampling be denied.

DATED:  July 23, 2018                          Respectfully submitted,

                                      ROBBINS GELLER RUDMAN
                                        & DOWD LLP
                                      ARTHUR C. LEAHY
                                      STEVEN W. PEPICH
                                      LUCAS F. OLTS
                                      DARRYL J. ALVARADO
                                      HILLARY B. STAKEM


                                               s/ DARRYL J. ALVARADO
                                      DARRYL J. ALVARADO

- 19 -

655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
artl@rgrdlaw.com
stevep@rgrdlaw.com
lolts@rgrdlaw.com
dalvarado@rgrdlaw.com
hstakem@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
CHRISTOPHER M. WOOD
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

Attorneys for Plaintiff

- 20 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on July 23, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ DARRYL J. ALVARADO
DARRYL J. ALVARADO

ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  dalvarado@rgrdlaw.com

# Mailing Information for a Case 1:14-cv-02590-VM-RWL Royal Park Investments SA/NV v. U.S. Bank National Association

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com,nhorstman@rgrdlaw.com,lmix@rgrdlaw.com

- **Thomas F. Berndt**
  tberndt@robinskaplan.com,jgerboth@robinskaplan.com

- **Rachael Catherine Chan**
  rachael.chan@morganlewis.com

- **Rollin Bernard Chippey**
  rchippey@morganlewis.com,robert.thompson@morganlewis.com

- **Michael Collyard**
  mcollyard@robinskaplan.com,rhoule@robinskaplan.com

- **Joseph Edward Floren**
  joseph.floren@morganlewis.com

- **Sherli Furst**
  SFurst@RobinsKaplan.com

- **Tera Marie Heintz**
  theintz@morganlewis.com,dlang@morganlewis.com,ewoodward@morganlewis.com

- **Morgia Dampf Holmes**
  mholmes@robinskaplan.com

- **Peter Cooper Ihrig**
  pihrig@robinskaplan.com

- **Joseph Marco Janoski Gray**
  mjanoski@rgrdlaw.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Michael Stephan Kraut**
  mkraut@morganlewis.com,rschaffer-
  goldman@morganlewis.com,anna.goldenhersh@morganlewis.com,nymanagingclerk@morganlewis.com

- **Arthur C. Leahy**
  artl@rgrdlaw.com,jillk@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Martin Richard Lueck**
  mlueck@robinskaplan.com,jaangell@robinskaplan.com

- **David E. Marder**
  DMarder@RobinsKaplan.com,KRichardson@RobinsKaplan.com,LDimillio@RobinsKaplan.com

- **Lucas F. Olts**
  lolts@rgrdlaw.com,karenc@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Kevin M Papay**
  kevin.papay@morganlewis.com

- **Hillel Ira Parness**
  hip@hiplaw.com,hillel.parness@gmail.com

- **Steven W. Pepich**
  stevep@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com

- **Stacey Paige Slaughter**
  sslaughter@robinskaplan.com,ahurt@robinskaplan.com,mpacelli@robinskaplan.com

- **Benjamin Patrick Smith**
  bpsmith@morganlewis.com,dlang@morganlewis.com,rbohnet@morganlewis.com,ewoodward@morganlewis.com

- **Hillary B. Stakem**
  hstakem@rgrdlaw.com,ldeem@rgrdlaw.com

- **Chelsea Walcker**
  cwalcker@robinskaplan.com,mschroeder@robinskaplan.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,e_file_sd@rgrdlaw.com,HDeshmukh@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)