UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------X

ROYAL PARK INVESTMENTS SA/NV,
individually and on behalf of all
others similarly situated,

                Plaintiff,

   - against -

U.S. BANK NATIONAL ASSOCIATION,
as Trustee,

                Defendant.

-----------------------------------X

14 Civ. 2590 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

     Plaintiff Royal Park Investments SA/NV ("Royal Park")
commenced this putative class action, individually and on
behalf of all others similarly situated, against U.S. Bank
National Association ("U.S. Bank"), as trustee, alleging
breach of the Trust Indenture Act, breach of contract, and
breach of trust in connection with twenty-five residential
mortgaged-backed securities ("RMBS") trusts. (See
"Complaint," Dkt. No. 2.)

     Royal Park filed a motion for class certification.
("Certification Motion," Dkt. No. 150.) In that connection,
U.S. Bank filed a motion to exclude the expert testimony of
W. Scott Dalrymple ("Dalrymple") ("Dalrymple Exclusion
Motion," Dkt. No. 176), and Royal Park similarly sought to
exclude the expert testimony of Christopher James ("James")
("James Exclusion Motion," Dkt. No. 207.)

1

On July 10, 2018, the Court, keeping with the decisions of other courts in this district denying certification of substantially similar class actions, denied the Certification Motion. (Dkt. No. 392.) The Court now states its findings, reasoning, and conclusions as to the Certification Motion, and for the additional reasons set forth below, the Court denies both the Dalrymple Exclusion Motion and the James Exclusion Motion.

## I. **BACKGROUND**

A.   FACTUAL BACKGROUND

This case is one of several brought by Royal Park against trustees, such as U.S. Bank, of various RMBS trusts for alleged failures to perform their duties during the subprime mortgage crisis that began in 2007-2009.[1] The Court delineates the pertinent facts below, further noting that numerous orders issued in these cases, including one in the instant action by Magistrate Judge James C. Francis IV,[2] aptly describe the mechanics of the RMBS market.

---

[1] See, e.g., Royal Park Investments SA/NV v. Wells Fargo Bank, N.A., No. 14-cv-9764, 2018 WL 1831850 (S.D.N.Y. Apr. 17, 2018); Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co., No. 14-cv-4394, 2018 WL 1750595 (S.D.N.Y. Apr. 11, 2018); Royal Park Investments SA/NV v. HSBC Bank USA, N.A., No. 14-cv-8175, 2018 WL 679495 (S.D.N.Y. Feb. 1, 2018); Royal Park Investments SA/NV v. Bank of N.Y. Mellon, No. 14-cv-6502, 2017 WL 3835339 (S.D.N.Y. Aug. 30, 2017).

[2] See Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n, 319 F.R.D. 122, 124 (S.D.N.Y. 2016).

The dispositive issues in this case are best understood in the context of the RMBS market structure and operation. RMBS securitization allows the pooling of thousands of residential mortgages into bond-like instruments which can then be traded. (See Complaint ¶ 31.) In order to create these instruments, "transferors" group numerous mortgage loans into pools, which are then sold to "depositors." (See id. ¶¶ 32-33.) Next, depositors transfer these pools to a trustee (such as U.S Bank), and the pools become property of a trust. (See id. ¶ 33.) In return, the depositor receives certificates issued by the trust in various tranches reflecting different levels of risk. (See id. ¶ 38.) The depositor will then sell the certificates to securities underwriters that can market and sell them to other investors (such as Royal Park). (See id. ¶ 36.) These investors, who become beneficial owners of the certificates, are then entitled to the cash flows generated by the pools of mortgage loans. (See id. ¶ 38.)

Beneficial owners, however, usually do not directly hold the certificates. Instead, the certificates are held by the Depository Trust Company in "book-entry" form on behalf of its "participants." (See "Dalrymple Report," Dkt. No. 152, Ex. A ¶¶ 41-42.) These participants, however, are also not the beneficial owners, and typically consist of securities brokers and other entities that maintain a custodial

3

relationship with the underlying beneficial owner – a relationship the Depository Trust Company has no insight into. (Id. ¶¶ 42-43.) The Depository Trust Company also has no insight into any trades made by beneficial owners in the secondary market. See Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co., No. 14-cv-4394, 2018 WL 1750595, at *3 (S.D.N.Y. Apr. 11, 2018).

For trusts like the twenty-one specific trusts at issue in this case (the "Covered Trusts"), the above-described relationships between the trustee, transferors, and depositors are defined by certain contractual agreements (the "Governing Agreements"). First, under the Governing Agreements, U.S. Bank, as trustee, has the right, on behalf and for the benefit of investors, to enforce the transferors' representations and warranties about the credit quality and characteristics of the underlying loans, and accuracy of the data conveyed about the loans. (See Complaint ¶ 44.) Second, U.S. Bank can force the transferor to cure, substitute, or repurchase non-conforming loans. (See id. ¶ 45.) Finally, under certain contractually-defined circumstances, such as an "Event of Default," U.S. Bank is required to protect the trust assets by such means "as a reasonably prudent investor" would take regarding its own investments. (See id. ¶ 53.)

4

Royal Park, which acquired the certificates and their litigation rights in 2009 from the initial purchasers, (see id. ¶ 28), alleges that U.S. Bank failed to perform its duties under the Governing Agreements and that these failures led to "unprecedented numbers of defaults, delinquencies, foreclosures, liquidations and losses" resulting in billions of dollars of losses for investors. (See id. ¶¶ 10, 24.) Thus, Royal Park now seeks to certify the following class:

> All persons and entities who held [c]ertificates in the Covered Trusts and were damaged as a result of [U.S. Bank's] conduct alleged in the Complaint.[3]

(Certification Motion at 1.)

B.   PROCEDURAL BACKGROUND

Royal Park initiated this suit by filing its initial complaint on April 11, 2014. Following a stipulation of dismissal entered into by the parties on July 29, 2015, Royal Park's Trust Indenture Act and derivative claims, and claims relating to four trusts have been dismissed. Accordingly, only the claims for breach of contract and breach of trust relating to the twenty-one Covered Trusts remain. (See Dkt. No. 43; see also Dkt. No. 274 at 3 n.2.) These claims were further altered when this Court granted Royal Park leave to

---

[3] The class definition also seeks to exclude certain parties not relevant to determining the Certification Motion.

supplement its pleadings with additional breach of contract and breach of trust claims. The amended claims involve alleged events that took place after Royal Park's filing of the Complaint and relate to findings on U.S. Bank's claims in the bankruptcy against the estate of Lehman Brothers Holding Inc. (See Dkt. No. 240.)

Following a stay of proceedings while Magistrate Judge Francis resolved U.S. Bank's motion for sanctions (see Dkt. No. 101), in December 2016, Royal Park filed its motion for class certification, and appointment of Royal Park as class representative, appointment of Robins Geller Rudman & Dowd LLP as class counsel. In support of the Certification Motion, Royal Park provided the expert testimony of W. Scott Dalrymple ("Dalrymple").

In opposition to the Certification Motion ("Opp. Memo.," Dkt. No. 182), U.S. Bank provided the declaration of Tera M. Heintz (Dkt. No. 183), which included James's expert testimony. Separately, U.S. Bank filed a motion to exclude Dalrymple's expert testimony. (See Dalrymple Exclusion Motion.)

In its reply in support of class certification ("Rep. Memo.," Dkt. No. 205), Royal Park also offered, for the first time, the expert testimony of Peter Crudo ("Crudo") ("Crudo Report," Dkt. No. 209, Ex. 6.) Additionally, Royal Park sought

6

to exclude James's expert testimony. (See James Exclusion Motion)

After the close of briefing on these motions, the parties submitted several letters to the Court to: (1) apprise it of supplemental authority in similar class action proceedings and the decision in In re Petrobras Sec., 862 F.3d 250 (2d Cir. 2017); and (2) argue about the propriety of raising certain arguments on reply. In this latter category, U.S. Bank wrote to request that the Court exclude Crudo's expert testimony as improperly raised for the first time on reply. (See Dkt. No. 244.) U.S. Bank also wrote to argue that Royal Park improperly raised new arguments in its reply memorandum supporting the James Exclusion Motion. (See Dkt. No. 272.)

## II. DISCUSSION

### A.   MOTIONS TO EXCLUDE EXPERT TESTIMONY UNDER DAUBERT

#### 1.   Legal Standard

U.S. Bank and Royal Park move, under the test promulgated in Daubert v. Merrell Dow Pharms., 509 U.S. 579, 590 (1993), to exclude sections of the Dalrymple Report and James Report, respectively, that were submitted in connection with the Certification Motion.

As a threshold matter, the Court recognizes that the Court of Appeals for the Second Circuit has not resolved whether and to what extent Daubert applies at the class

certification stage. See In re LIBOR-Based Fin. Instruments Antitrust Litig., 299 F. Supp. 3d 430, 470 (S.D.N.Y. 2018) (collecting cases before ultimately applying Daubert). Because both parties assume the Daubert test applies, and because the Court need not address any of the conflicts between the two expert reports to resolve the Certification Motion, the Court will apply Daubert without deciding how searching the examination should be at the class certification stage.

At the first step of the Daubert inquiry, courts are instructed to consider the expert's qualifications. Pursuant to Rule 702 of the Federal Rules of Evidence:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Next, a trial court must decide whether a qualified expert's testimony rests on a reliable foundation or is simply based on "subjective belief or unsupported speculation." Daubert, 509 U.S. at 590.

In Daubert, the Supreme Court set out a list of nonexhaustive considerations for a trial court to consider in

determining whether an expert's reasoning or methodology is reliable: (1) whether the theory or technique upon which the expert relies has been tested — that is, whether the expert's technique can be challenged in some objective sense, or whether it is simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the theory or technique has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the theory or method has been generally accepted by the expert community. See Daubert, 509 U.S. at 593-94. The test of reliability, however, is a "flexible one," and the considerations set forth in Daubert do not constitute a definitive checklist or test. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999).

When applying this test, the "trial judge [has] considerable leeway" in determining whether to admit or exclude the testimony. Id. at 152. However, the Court's determination should be made in accordance with "the liberal admissibility standards of the federal rules and recognize[] that our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony."

Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 266
(2d Cir. 2002).

Finally, the testimony must "assist the trier of fact to
understand the evidence or determine a fact in issue."
Daubert, 509 U.S. at 591 (internal quotation marks omitted).
Thus, expert testimony that either usurps the Court's role in
determining the applicable law or addresses lay matters that
do not require expert analysis is inadmissible. See Nimely v.
City of New York, 414 F.3d 381, 397 (2d Cir. 2005). If, at
the end of this three-step inquiry, "some, but not all, of an
expert's opinions . . . meet the criteria" of Rule 702 of the
Federal Rules of Evidence, then "a court may exclude portions
of an expert report while admitting other portions."
Carpenters Pension Tr. Fund v. Barclays PLC, 310 F.R.D. 69,
76 (S.D.N.Y. 2015).

        2.   Admissibility of the Dalrymple Report

The Dalrymple Report provides background information
about the RMBS market and securitization process, before
offering four opinions: (1) the certificates in the Covered
Trusts are interrelated; (2) U.S. Bank's alleged breach would
similarly impact all certificates in the Covered Trusts; (3)
the class is numerous; and (4) damages are calculable on a
class-wide basis. (Dalrymple Report ¶ 4.)

U.S. Banks's arguments in support of the Dalrymple Exclusion Motion focus on the report's conclusions about damages. For example, U.S. Bank argues that the report's proposed damages calculation methodology is unreliable because it does not address whether the alleged breaches caused any losses. (Dkt. No. 177 at 8-9.) U.S. Bank similarly argues that the report's methodology is irrelevant because it aggregates damages on a certificate, rather than class member, basis. (Id. at 14.)

As discussed further below, because the Court finds that other individualized issues predominate over common questions pursuant to Rule 23(b) of the Federal Rules of Civil Procedure ("(Rule 23(b)"), the Court makes no findings about U.S. Bank's arguments on damages and causation. As such, the Court did not rely on those aspects of the Dalrymple Report and need not determine their admissibility.

As for the rest of the report, U.S. Bank never challenges Dalrymple's qualifications, or otherwise questions the other opinions or aspects of the report that describe the market and the Covered Trusts. Finding Dalrymple's qualifications adequate and the report not otherwise flawed, the Court accepts the report for the purposes of resolving the Certification Motion.

11

### 3.   Admissibility of the James Report

This Court has not relied in any fashion on the James Report in connection with resolving the class certification motion, and thus the Court denies as moot Royal Park's motion to exclude the report.

### B.   MOTION TO EXCLUDE EXPERT TESTIMONY AS UNTIMELY

U.S. Bank argues that Royal Park improperly offered the Crudo Report for the first time in its reply briefing on the Certification Motion. Crudo is the Executive Vice President of Gilardi & Company LLC, a company that specializes in administrating class action settlements. (See Crudo Report ¶¶ 1-2.) In his report, Crudo described his experience in administering the claims process for other securities and RMBS class action settlements, and the process by which one identifies beneficial owners. (Id. ¶ 6.)

"Courts in this District have frequently declined to consider evidence first submitted on reply." Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of New York & New Jersey, No. 15-cv-3526, 2016 WL 6083956, at *4 (S.D.N.Y. Oct. 17, 2016). The rule deters the practice of raising new arguments on reply that the opposing party is unable to respond to. However, in certain circumstances it is appropriate to supplement the record to support prior points and rebut the opposition. See, e.g., Bayway Refining Co. v.

Oxygenated Marketing & Trading A.G., 215 F.3d 219, 227 (2d Cir. 2000) (finding no abuse of discretion for district court's admission of evidence on reply that was unsurprising to, and then factually uncontested by the opposing party).

As U.S. Bank points out, it was unable to depose Crudo or prepare for his testimony. (Dkt. No. 244 at 1.) This is precisely the type of concern that precludes the admission of newly-raised evidence on reply. Royal Park argues that the testimony is responsive to U.S. Bank's contentions pertaining to class identify and administrative feasibility. (Dkt. No. 250 at 1.) However, as the party seeking class certification, Royal Park bears the initial burden on both those elements and cannot solely wait to respond to deficiencies U.S. Bank raises in its in opposition.

Furthermore, even if the Court were to consider Crudo's testimony, it would not alter the Court's conclusion as to the Certification Motion. As discussed more fully below, even if the claims process could identify beneficial owners of certificates, additional individualized questions of law and fact surrounding the assignment of litigation rights would remain. In sum, the Court will not consider the Crudo testimony in connection with the issues now before it.

C.   CLASS CERTIFICATION MOTION

1.   Legal Standards

To certify the Proposed Class, Royal Park must first satisfy all four of the requirements of Rule 23(a)[4] of the Federal Rules of Civil Procedure. See, e.g., Petrobras, 862 F.3d at 260. Additionally, Rule 23(b)(3) requires that the plaintiff demonstrate, by a preponderance of evidence, id., that the action is maintainable as a class action because "questions of law or fact common to class members predominate over any questions affecting only individual members" (the "Predominance Requirement") and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" (the "Superiority Requirement"). Fed. R. Civ. P. 23(b)(3).

Trial courts are given substantial discretion in determining whether to grant class certification because "'the district court is often in the best position to assess the propriety of the class and has the ability . . . to alter or modify the class, create subclasses, and decertify the

---

[4] To meet Rule 23(a)'s prerequisites, a plaintiff must demonstrate that:(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

class whenever warranted.'" In re Nigeria Charter Flights
Contract Litig., 233 F.R.D. 297, 301 (E.D.N.Y. 2006) (quoting
In re Sumitomo Copper Litig., 262 F.3d 134, 139 (2d Cir.
2001)).

The Predominance Requirement is satisfied if "resolution
of some of the legal or factual questions that qualify each
class member's case as a genuine controversy can be achieved
through generalized proof, and if these particular issues are
more   substantial   than   the   issues   subject   only   to
individualized proof." Moore v. PaineWebber, Inc., 306 F.3d
1247, 1252 (2d Cir. 2002). The Predominance Requirement does
not prescribe that every issue be subject to class-wide proof,
but only that common questions predominate over questions
affecting only individual class members. See Amgen Inc. v.
Conn. Ret. Plans & Trust Funds, 568 U.S. 455, 467 (2013).
This inquiry requires examining the elements of the claims
and defenses to be litigated to determine whether generalized
evidence can prove the elements or if individualized proof
will be necessary and predominate over common issues. See
Johnson v. Nextel Commc'ns Inc., 780 F.3d 128, 138 (2d. Cir.
2015).

2.   The Parties' Arguments

For its breach of contract claims,[5] Royal Park identifies several questions about U.S. Bank's conduct that are appropriately answered by common proof such as whether U.S. Bank failed to take certain actions under the Governing Agreements or whether it acted under the contractual standard of care. (Dkt. No. 151 at 15.) Similarly, for its breach of trust claims, Royal Park argues that common evidence can be used to answer whether "U.S. Bank put its own interests ahead of the" putative class. Id.

Despite these common issues, U.S. Bank argues Royal Park cannot meet the Predominance Requirement. First, U.S. Bank argues that identifying class members capable of bringing claims would require individualized inquiries consisting of difficult factual and choice-of-law determinations about the ownership and transfer of the certificates and related claims.[6] (Opp. Memo. at 9-12.) Second, U.S. Bank argues that

---

[5] The elements of a breach of contract claim consist of "(1) the existence of a contract, (2) performance of the contract by one party, (3) breach by the other party, and (4) damages suffered as a result of the breach." Royal Park Invs. SA/NV v. HSBC Bank USA, N.A., 109 F. Supp. 3d 587, 596-97 (S.D.N.Y. 2015) (internal quotation marks omitted). These elements are to be proven on a "loan-by-loan and trust-by-trust" basis. Id. at 601 (quoting Retirement Bd. of the Policemen's Annuity & Ben. Fund v. Bank of New York Mellon, 775 F.3d 154, 162 (2d Cir. 2014)).

[6] U.S. Bank initially made these arguments implicating standing in the context of Rule 23's implied ascertainability requirement. However, after the parties made their submissions about the Certification Motion, the Court of Appeals decided Petrobras. As Royal Park correctly notes,

16

differences in state and foreign law on statutes of limitations would require intensive individualized determinations of fact and law. (Id. at 15.) As discussed further below, Royal Park responds to these arguments primarily by casting them as minimal or hypothetical concerns that do not predominate over common issues of liability. (Rep. Memo. at 5-7.)

### 3. Application

The Court finds that individualized issues regarding Article III standing and statutes of limitations predominate over common questions. Further, the Court finds that a class action is not a superior method for adjudicating the case compared to other methods, especially given the sophisticated investor class. Thus, because Royal Park has failed to show that the class can meet the requirements under Rule 23(b)(3), the Court will not certify the class. The Court has considered all of the parties' submissions and arguments on these issues, but does not address those that are unnecessary to resolving the motion.

---

Petrobras simplifies the ascertainability inquiry. However, U.S. Bank's argument remains relevant, because, as Petrobras notes, many concerns once addressed in the ascertainability inquiry still implicate the Predominance Requirement or Superiority Requirement. Petrobras, 862 F.3d at 268; see also Deutsche Bank Nat'l Tr., 2018 WL 1750595, at *9 (S.D.N.Y. Apr. 11, 2018) ("Petrobras shifted much of the [ascertainability] analysis to the question of predominance.").

i.   Article III Standing

Article III standing is a "threshold question in every federal case." Denney v. Deutsche Bank AG 443 F.3d 253, 263 (2d Cir. 2006). "A class must . . . be defined in such a way that anyone within it would have standing." Id. at 263-64. However, as U.S. Bank argues, and other courts have found, the structure of the RMBS trusts and the secondary market makes it difficult to ensure that all putative class members have standing. Royal Park Investments SA/NV v. Wells Fargo Bank, N.A., No. 14-cv-9764, 2018 WL 1831850, at *6 (S.D.N.Y. Apr. 17, 2018); Deutsche Bank Nat'l Tr., 2018 WL 1750595, at *15; Royal Park Investments SA/NV v. HSBC Bank USA, N.A., No. 14-cv-8175, 2018 WL 679495, at *6 (S.D.N.Y. Feb. 1, 2018).

Specifically, the Court would initially have to identify the beneficial owners at the time of the alleged breach. This is no easy task. Even identifying all of the current and past owners would be problematic. First, the certificates lack a "unique identifier" that could easily tie them to beneficial owners. See Deutsche Bank Nat'l Tr., 2018 WL 1750595, at *3. Second, beneficial ownership of the certificates is indirect and dual-layered. The Depository Trust Company holds certificates in the name of investing institutions, but oftentimes those institutions themselves hold the certificates in the name of the actual beneficial owner.

18

(Dalrymple Report ¶¶ 41-44.) In an illiquid market, these issues might be manageable, but these certificates trade in an active secondary market with no central clearinghouse tracking ownership. Thus, the Court would need to overcome these hurdles to identification for each transfer when tracing beneficial ownership to the owner at the time of the alleged breach.

Courts have repeatedly recognized the difficulty in attributing ownership in situations such as these. See, e.g., Brecher v. Republic of Argentina, 806 F.3d 22, 26 (2d Cir. 2015) (vacating district court's class definition modification in case involving Argentinian bonds). In the related context of the Rule 23 ascertainability requirement before Petrobras further clarified the standard, the Court of Appeals recognized the difficulties inherent in the exact type of inquiry Royal Park proposes here:

> Further, all bonds from the same series have the same trading number identifier . . . making it impossible to trace purchases and sales of a particular beneficial interest. . . . Even if there were a method by which the beneficial interests could be traced, determining class membership would require the kind of individualized mini-hearings that run contrary to the principle of ascertainability.

Id. at 25-26.

Perhaps if the difficulty ended there the common issues of liability could outweigh the individualized assessments

19

required to determine standing. Indeed, in a typical securities suit, identifying the beneficial owners at the time of the breach would likely be sufficient to resolve standing for nearly every class member, because under uniform federal law litigation claims are not automatically assigned with the transfer of the security. Bluebird Partners, L.P. v. First Fid. Bank, N.A. New Jersey, 85 F.3d 970, 974 (2d Cir. 1996). Thus, those owners would likely retain their litigation rights when transferring certificates.

For the certificates at issue here, however, there is no uniform law controlling the assignment of the accompanying litigation rights when the certificates are transferred. The majority rule is that there is no automatic assignment of an accompanying litigation right or claim when transferring property. See, e.g., Restatement (Second) of Contracts § 324. On the other hand, New York adopts the minority rule that "[u]nless expressly reserved in writing, a transfer of any bond shall vest in the transferee all claims or demands of the transferrer, whether or not such claims or demands are known to exist . . . for damages against the trustee or depository under any indenture under which such bond was issued." N.Y.G.O.L. § 13-107(1). Thus, for putative class members (defined in part as former holders of the

20

certificates), standing will necessarily depend on the nature and terms of any assignment.

Thus, because of these differing assignment regimes across jurisdictions, the Court would be required to engage in a fact-intensive choice of law analysis to determine which law applied to every assignment when tracing the beneficial ownership. See Deutsche Bank Nat'l Tr., 2018 WL 1750595, at *16. Then, the Court would have to apply the resulting test to determine if litigation claims were assigned with the certificates. Ultimately, there is no way to resolve this issue without examining "every class member's [transaction] documents to determine who did and who did not have a valid claim." Mazzei v. Money Store, 829 F.3d 260, 272 (2d Cir. 2016).

Royal Park is dismissive of this assignment issue, casting it as "speculative," even though Royal Park itself retains only the litigation claims to securities it otherwise has sold. (Dkt. No. 183, Ex. 7 at 5-7.) Even if Royal Park's situation proves to be the exception rather than the rule, because of the impossibility of determining standing with class-wide proof, the Court would still need to undertake a similar inquiry for each class member in order to ensure each member has standing. This individualized inquiry predominates over other common issues.

ii.   Statutes of Limitations

The second individualized inquiry that predominates over common questions of liability relates to the applicable statutes of limitations to putative class members' claims. See Wells Fargo Bank, 2018 WL 1831850, at *8; Deutsche Bank Nat'l Tr., 2018 WL 1750595, at *17; HSBC Bank USA, 2018 WL 679495, at *6. "Although the existence of a meritorious defense does not necessarily defeat certification, affirmative defenses may be considered as a factor in the class certification calculus." Weiss v. La Suisse, Societe D'Assurances Sur La Vie, 226 F.R.D. 446, 454 (S.D.N.Y. 2005). Courts should not grant class certification if "plaintiffs have offered no reliable means of collectively determining how many class members' claims are time-barred." McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 233-34 (2d Cir. 2008).

To determine the applicable statute of limitations for these claims, the Court would first have to apply the choice-of-law rules of New York. See Johnson, 780 F.3d at 138. New York's borrowing statute, C.P.L.R. Section 202, requires the Court to apply the statute of limitations of the "foreign jurisdiction where a nonresident's cause of action accrued, if that limitations period is shorter than New York's." Glob. Fin. Corp. v. Triarc Corp., 93 N.Y.2d 525, 526 (N.Y. 1999). Under the statute, an "action accrues at the time and in the

22

place of the injury," and "when the alleged injury is purely economic, the place of injury is usually where the plaintiff resides and sustains the economic impact of the loss." Id. at 526, 529.

At a minimum, this test requires initially resolving many of the same inquiries described above for standing, such as identifying numerous beneficial owners and assignors. The Court would then need to determine, for each class member, his or her residence, where and when the claims accrued, and the applicable statute of limitations in each of the relevant jurisdictions.

These individual issues predominate, especially because many of the relevant jurisdictions have statutes of limitations that will likely preclude recovery. See HSBC Bank USA, 2018 WL 679495, at *6. That is, the Court will be required to undertake lengthy individualized determinations for a number of putative class members' claims that will ultimately be barred by a statute of limitations. Moreover, class members' breach of trust claims may be governed by yet a different statute of limitations. Thus, the individual inquiry of the applicable statute of limitations counsels against certification. See McLaughlin, 522 F.3d at 233.

In response to these insurmountable hurdles, Royal Park argues that New York's six-year statute of limitations

governs all claims because the Depository Trust Company has a New York nominee and acts as the record owner for the certificates. (Rep. Memo. at 5.) However, Royal Park cannot simultaneously show, as it attempts to, that (1) claims accrue to the Depository Trust Company (which is not a class member or beneficial owner of the certificates); and (2) the Depository Trust Company does not have standing to assert a breach of contract claim. (Compare id. at 5 with Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co., No. 14-cv-4394, Dkt. No. 45 at 10.) The Court is not persuaded that these claims accrue to any entity besides the beneficial owners.

Royal Park also attempts to differentiate between the statute of limitations defense raised here versus situations involving individualized issues of class members' knowledge. (See Rep. Memo. at 6 n.7.) Royal Park argues that here, only U.S. Bank's knowledge determines when the statute of limitations starts to run, and that inquiry could be resolved with class-wide proof. (Id.) As an initial matter, because the jurisdictions of the class members' are not all known and the defense has not been tested, it is premature to determine whether there will be an inquiry into individualized class members' knowledge. Second, although individualized inquiries of class members' knowledge also weigh against a finding of

24

predominance, that issue is separate from the individualized inquiry still required here to determine class members' residency and their jurisdictions' statute of limitations. The latter inquiry can be substantial, as demonstrated by the nearly twenty-page analysis that U.S. Bank points to in one decision resolving the inquiry for a single plaintiff where there was a full chain of custody for the securities at issue. See Commerzbank AG v. Deutsche Bank Nat'l Tr., 234 F. Supp. 3d 462 (S.D.N.Y. 2017). In sum, the Court finds that determining the applicable statute of limitations for each class member also predominates over common issues.

iii. Superiority

A court's finding that individual issues predominate over common issues often necessitates a finding that a class action is not a superior vehicle for resolving claims. See Deutsche Bank Nat'l Tr., 2018 WL 1750595, at *20. However, beyond the reasons Royal Park fails to meet the Predominance Requirement, there are additional reasons that a class action would be superior to individual actions or other alternative methods of dispute resolution.

As one example, as the Honorable Alison Nathan of this Court noted, the proposal for bellwether cases, as indicated in Johnson, 780 F.3d at 147, may be a more appropriate avenue moving forward. Deutsche Bank Nat'l Tr., 2018 WL 1750595, at

25

*20. Royal Park alleges losses of over $6.7 billion "due to U.S. Bank's failure to act." (Complaint ¶¶ 19, 294.) Those losses would average out to nearly $2.75 million per putative class member. Of course, this calculation ignores many defenses, variables, and differences among individual class members. But the point stands that the sums of money here are vast, and the class contains sophisticated investors who are both incentivized and capable of bringing individual suits, and indeed, have done so. See In re Countrywide Fin. Corp. Mortg.-Backed Secs. Litig. 2014 WL 3529677, at *3 (C.D. Cal. July 14, 2014); see also Royal Park Investments SA/NV v. Wells Fargo Bank, N.A., No. 14-cv-09764, 2018 WL 739580, at *17 (S.D.N.Y. Jan. 10, 2018), report and recommendation adopted, 2018 WL 1831850 (S.D.N.Y. Apr. 17, 2018). Thus, the Court is not persuaded that a class action is superior to other methods.

## IV. ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the Motion (Dkt. No. 150) filed by Royal Park Investments SA/NV ("Royal Park") for Class Certification is **DENIED**; and it is further

**ORDERED** that the motion (Dkt. No. 176) filed by U.S. Bank National Association ("U.S. Bank") to exclude the expert testimony of W. Scott Dalrymple is **DENIED**; and it is further

**ORDERED** that the motion (Dkt. No. 207) filed by Royal Park to exclude the expert testimony of Christopher James is **DENIED** as moot; and it is finally

**ORDERED** that the motion (Dkt. No. 244) filed by U.S. Bank to exclude the expert testimony of Peter Crudo is **GRANTED**.

**SO ORDERED.**

Dated:     New York, New York
           13 August 2018

Victor Marrero
U.S.D.J.