```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
ROYAL PARK INVESTMENTS SA/NV,      :
individually and on behalf of all  :
others similarly situated,         :
                                   :
                    Plaintiff,     :
                                   :
     - against -                   :
                                   :
U.S. BANK NATIONAL ASSOCIATION,    :
as Trustee,                        :
                                   :
                    Defendant.     :
----------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/30/18

14 Civ. 2590 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

In 2014, plaintiff Royal Park Investments SA/NV ("Royal Park") sued defendant U.S. Bank National Association ("U.S. Bank"), alleging that U.S. Bank breached its contractual and common law duties in its role as trustee for numerous residential mortgage-backed securities ("RMBS") trusts. (See Dkt. No. 2 ¶¶ 2-24.) That case continues before this Court (the "Underlying Suit").

Three years later, Royal Park sued U.S. Bank again in this Court. On this occasion, Royal Park challenged U.S. Bank's practice of billing to the RMBS trusts the legal fees and expenses U.S. Bank incurred in defending the Underlying Suit. Royal Park alleges that U.S. Bank is not permitted to bill those fees to the trusts and seeks damages, declaratory judgment, and injunctive relief. (See "Fees Complaint," 17 Civ. 6778, Dkt. No. 1.) This separate suit, originally bearing

case number 17 Civ. 6778, (the "Fees Suit") has been consolidated with the Underlying Suit and discovery is currently stayed regarding the Fees Complaint. (See Dkt. Nos. 342, 369.)

Before the Court are two requests related to the Fees Complaint. First, National Credit Union Administration Board ("NCUA") seeks to file a motion to intervene in this action as it relates to the Fees Complaint. (See "NCUA Dec. 18 Letter," Dkt. No. 350.) Second, U.S. Bank seeks to file a motion either to dismiss the Fees Complaint or to stay these proceedings pending the resolution of the Underlying Suit. (See "U.S. Bank Nov. 13 Letter," 17 Civ. 6778, Dkt. No. 12; "U.S. Bank Nov. 22 Letter," Dkt. No. 343.) For the reasons discussed below, the Court construes both requests as motions and (1) DENIES NCUA's request to intervene in the suit; and (2) STAYS proceedings regarding the Fees Complaint pending the resolution of the Underlying Suit.

## I. BACKGROUND

On September 6, 2017, Royal Park sued U.S. Bank seeking damages, declaratory relief, and injunctive relief to stop U.S. Bank from billing litigation fees and costs to the trusts at issue in the Underlying Suit. (See Fees Complaint.)

In light of the case's long history before this Court, the Court assumes familiarity with the extensive factual and

procedural developments in the Underlying Suit and addresses the relevant background only briefly. As stated in further detail in this Court's order denying class certification, Royal Park asserts that trustee U.S. Bank breached its contractual obligations by failing to protect trust assets in twenty-one RMBS trusts under certain contractual agreements (the "Governing Agreements"). See Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n, 324 F. Supp. 3d 387, 392 (S.D.N.Y. 2018). Under the Governing Agreements, U.S. Bank has the right, on behalf and for the benefit of the trusts, to enforce various transferors' representations and warranties about the credit quality and characteristics of the underlying loans and the accuracy of the data conveyed about the loans. See id. According to Royal Park, in certain circumstances, U.S. Bank failed to take required remedial action. See id. As an investor in the trusts, Royal Park alleges it was harmed by U.S. Bank's actions. See id. The parties continue to litigate the Underlying Suit, with discovery currently scheduled to continue through September 2019. (See Dkt. No. 415.)

In the Fees Complaint, Royal Park alleges that U.S. Bank has been charging "its legal fees and costs incurred in its defense" of the Underlying Suit to the trusts at issue in that action. (Fees Complaint ¶ 2.) Royal Park alleges that, under the Governing Agreements, U.S. Bank is not permitted to

reimburse itself for those fees and costs in this manner. (See id. ¶ 3.) Royal Park brings this putative class action for breach of contract and related claims[1] to recover those fees and costs and prevent U.S. Bank from continuing to bill those litigation fees and costs to the trusts. The Court consolidated the Underlying Suit and the Fees Complaint in November 2017. (See Dkt. No. 342.)

On November 13, 2017, U.S. Bank wrote to Royal Park pursuant to the Court's Individual Practices, outlining its arguments in support of a motion to dismiss or, in the alternative, a motion to stay the proceedings. (See U.S. Bank Nov. 13 Letter.) Royal Park responded on November 20, 2017 (see "Royal Park Nov. 20 Letter," Dkt. No. 345), and U.S. Bank, by letter dated November 22, 2017, seeks a pre-motion conference for further guidance on possible motion practice (see U.S. Bank Nov. 22 Letter).

Separately, by a pre-motion letter dated December 19, 2017, NCUA requests leave to file a motion to intervene under Federal Rule of Civil Procedure 24 ("Rule 24"). (See NCUA Dec. 18 Letter) U.S. Bank opposes NCUA's request, (see "U.S. Bank Dec. 22 Letter," Dkt. No. 355), and Royal Park submitted

---

[1]     The six counts are: (1) Breach of Contract; (2) Unjust Enrichment; (3) Conversion; (4) Breach of Trust; (5) Equitable Accounting; and (6) Declaratory Judgment. (See Fees Complaint ¶¶ 42-76.)

a letter stating that it takes no position on NCUA's
application (see Dkt. No. 354).

In February 2018, Magistrate Judge Robert Lehrburger, to
whom this action was referred for pretrial supervision,
stayed discovery regarding the Fees Complaint pending
resolution of the motion to dismiss after U.S. Bank sought
guidance on its pre-motion letter request and how to proceed
with discovery. (See "U.S. Bank Feb. 8 Letter," Dkt. No. 364;
"U.S. Bank Feb. 13 Letter," Dkt. No. 365; Dkt. No. 369.)

## II. DISCUSSION

### A.   NCUA'S INTERVENTION REQUEST

Acting in its capacity as a liquidating agent, NCUA is
a federal agency that holds numerous RMBS certificates,
including certificates in two of the twenty-one trusts that
Royal Park lists in the Fees Complaint: GPMF 2007-AR1 and
WAMU 2007-OA2 (the "Overlapping Trusts"). (See NCUA Dec. 18
Letter at 2.) NCUA also "holds certificates or has beneficial
interests in [twenty four] other trusts from the same
securitization shelves at issue here" but would limit its
proposed complaint to allegations concerning the Overlapping
Trusts. (Id. at 2-3.) NCUA asserts that it meets the
requirements under Rule 24 to intervene as of right in the
dispute. (Id. at 1.) Alternatively, it seeks the Court's leave
to intervene in the action permissively. (See id.) After

intervention, NCUA aims to "develop the record on the fact that investor trust beneficiaries enter contracts with the trustee . . . reinforcing the conclusion" that case law requires dismissal. (Id. at 3.)

The Court now construes NCUA's letter as a motion for intervention either as of right or with permission, pursuant to Rule 24.

Movants must meet a four-part test in order to intervene successfully:

> [T]o intervene either as of right or with permission, an applicant must (1) timely file an application; (2) show an interest in the action; (3) demonstrate that the interest may be impaired by the disposition of the action; and (4) show that the interest is not protected adequately by the parties to the action. . . . Failure to satisfy any one of these four requirements is a sufficient ground to deny the application.

Floyd v. City of New York, 770 F.3d 1051, 1057 (2d Cir. 2014)(internal quotation marks omitted).

The Court finds that NCUA satisfies the first, second, and third elements of this test, but cannot fulfill the fourth. Consequently, the Court does not grant intervention by right and denies NCUA's request for permissive intervention on largely the same grounds.

This ruling is consistent with that of another court in this district dealing with similar facts. NCUA has filed motions to intervene under Rule 24 in similar cases brought

by Royal Park against others RMBS trustees. The only other court to address such a motion denied NCUA's request. See Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n, No. 17 Civ. 7684, 2018 WL 3655781, at *1 (S.D.N.Y. Aug. 2, 2018) (hereafter, Royal Park v. HSBC).

### 1. Timeliness

The Federal Rules do not set a time in which to file a motion to intervene. Instead, the decision is "entrusted to the [district court's] sound discretion" based on "(a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness." Floyd, 770 F.3d at 1058.

Here, NCUA filed its pre-motion letter seeking to intervene about three months after Royal Park filed the Fees Complaint and one month after U.S. Bank wrote its pre-motion letter to dismiss or stay the Fees Complaint. NCUA argues that because (1) its proposed complaint would add no new trusts to the litigation and (2) it requests no additional discovery that could delay proceedings, allowing NCUA to intervene would be more economical than requiring NCUA to proceed separately. (See NCUA Dec. 18 Letter at 2.) NCUA also

points to numerous cases permitting intervention after lengthier delays. (See id.)

U.S. Bank counters that, because the Fees Suit has been consolidated with the Underlying Suit, the applicable complaint from which to measure timeliness is the original one that Royal Park filed more than four years ago, and thus intervention is not timely. (U.S. Bank Dec. 22 Letter at 1 (citing John Wiley & Sons, Inc. v. Book Dog Books, LLC, 315 F.R.D. 169, 173 (S.D.N.Y. 2016)).) U.S. Bank also argues that "NCUA has been active in RMBS litigation . . . for years" and has litigated indemnification clauses before, but provides no reasons for "why intervention is now necessary." (Id. at 2.) Finally, U.S. Bank argues that NCUA voluntarily dismissed claims regarding the Overlapping Trusts with prejudice in separate litigation against U.S. Bank and is thus barred by res judicata from intervening in this action. (See id.) On this point, NCUA filed a one-page letter-brief in reply to clarify that the voluntary dismissal involved other trusts and not the Overlapping Trusts it seeks to address here. (See Dkt. No. 365 at 1.)

In this proceeding, NCUA wrote its letter regarding a possible intervention motion only a month after U.S. Bank requested leave to file a motion to dismiss. U.S. Bank suffered no prejudice resulting from this short delay. To the

extent U.S. Bank is concerned about possible delays, NUCA's filing of a separate suit would delay a resolution more than an intervention where NCUA would not add any additional trusts, seek new discovery, or bring meaningfully new claims. NCUA's limited delay does not engender the kinds of risks and prejudices the timeliness requirement guards against.

What is more, the court in Royal Park v. HSBC found NCUA's motion timely in similar circumstances. There, NCUA moved to intervene the day after HSBC Bank USA, National Association ("HSBC") moved to dismiss the complaint. See 2018 WL 3655781, at *3. As here, HSBC had argued that NCUA knew about its interests "well before it sought to intervene and intended to delay the case" by waiting to file the motion until after HSBC filed a motion to dismiss. Id. Under the Floyd analysis, the court recognized the resulting prejudice from granting NCUA's motion because the court "would likely strike the current briefing on [d]efendant's motion to dismiss, and order the plaintiffs to file a single consolidated amended complaint." Id. But the court found the resulting delay would be too short to make the motion untimely.

U.S. Bank's arguments to the contrary are not persuasive. To start, U.S. Bank's argument that the court must measure timeliness from the filing of Royal Park's

original 2014 complaint misconstrues the role of the Fees Complaint. In support of this argument, U.S. Bank cites John Wiley & Sons, Inc., which was a case where a party sought to intervene two years after the initial complaint's filing and four months after the amended complaint's filing. See 315 F.R.D. at 172. But "[t]here was no material change in the nature of the claims made in the" amended complaint and it "added no new claims." Id. In contrast, the Fees Complaint, while related to the Underlying Suit, is clearly different in nature and brings new and separate claims. Thus, timeliness should be measured from the filing of the Fees Complaint.

U.S. Bank's res judicata argument is similarly unpersuasive. As NCUA demonstrated in response, the voluntarily dismissed claims did not involve the Overlapping Trusts at issue here. Further, one of the elements of res judicata is that the claim "could have been" brought in the prior action. Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot., 882 F.3d 52, 55 (2d Cir. 2018). There is no circumstance under which claims arising from U.S. Bank's billing of legal fees and costs incurred in the Underlying Suit to the trusts "could have been" brought in NCUA's separate suit that largely predated the ongoing Underlying Suit. Finally, while NCUA may have been litigating RMBS cases for years, it was put on notice of U.S. Bank's billing

practices regarding the Underlying Suit only in September 2017. NCUA filed its intervention motion within three months -- before any meaningful decisions had been rendered.

Thus, the Court finds that NCUA's motion is timely.

2. NCUA's Interest

Next, NCUA must demonstrate an "interest" in the action under Rule 24. "[F]or an interest to be 'cognizable' under Rule 24, it must be direct, substantial, and legally protectable [such that an] interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." Floyd, 770 F.3d at 1060 (internal quotation marks omitted). However, "[t]he 'interest' required by Rule 24(a)(2) has never been defined with particular precision." Sec. Ins. Co. of Hartford v. Schipporeit, Inc., 69 F.3d 1377, 1380 (7th Cir. 1995).

NCUA holds certificates in two trusts that overlap with the trusts at issue in the Fees Complaint (GPMF 2007-AR1 and WAMU 2007-OA2). (See NCUA Dec. 18 Letter at 2.) As a result, NCUA argues in a conclusory manner that its interests in those two trusts are "greater than is required by Rule 24(a)(2)." (Id.) NCUA also argues that its interests in twenty-four "trusts from the same securitization shelves are interests 'relating to' the trusts" in the Fees Complaint and are also

sufficient under Rule 24. (Id. (citing New Jersey Carpenters Health Fund v. Residential Capital, LLC, No. 08 Civ. 5093, 2010 WL 5222127, at *5 (S.D.N.Y. Dec. 22, 2010)).)

In response, U.S. Bank counters that NCUA's interest must rise to a level that would qualify it as a "necessary party" under Federal Rule of Civil Procedure 19 ("Rule 19"), but that NCUA cannot be a necessary party "as this case has proceeded for nearly four years without it." (U.S. Bank Dec. 22 Letter at 2 (citing MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377, 389 (2d Cir. 2006)).) Next, U.S. Bank argues that NCUA's decision to limit its proposed complaint to the Overlapping Trusts undermines NCUA's interest for two reasons. First, U.S. Bank asserts that this decision means NCUA's presence "will add nothing" because Royal Park already adequately represents those interests. Second, U.S. Bank contends that this decision discounts NCUA's alleged interest in the twenty-four additional trusts at the same securitization shelves or shelf level. U.S. Bank also discounts NCUA's status as a government agency, noting that it seeks to intervene as a private liquidator, not a federal agency.

At least as to the Overlapping Trusts, NCUA appears to have the same interest in this putative class action as does would-be lead plaintiff Royal Park. Without determining

whether the Court would grant a motion for class certification, it is instructive that class members who have similar claims as named plaintiffs generally qualify as having an interest under Rule 24. See, e.g., McBean v. City of New York, No. 02 Civ. 5426, 2007 WL 473711, at *1 (S.D.N.Y. Feb. 13, 2007) ("There is no apparent dispute that the Proposed Intervenors' claims are essentially identical to the claims raised by the current Plaintiffs.").

This possible class action setting and identity of interests suffice to respond to U.S. Bank's argument that a party must be "necessary" under Rule 19 to qualify for intervention as of right under Rule 24. See MasterCard, 471 F.3d at 389. Many of U.S. Bank's remaining arguments do not address whether NCUA has an interest. Rather, the arguments relate to whether NCUA would be adequately represented.

NCUA's identity of interest with Royal Park also separates this case from Royal Park v. HSBC, where the court determined that NCUA did not have a sufficient interest under Rule 24. See 2018 WL 3655781, at *4. In that case, NCUA was differently situated because it held only a "residual" interest in the certificates and was not a certificate holder itself. Id. The court held that "[j]ust as NCUA lacks standing . . . NCUA's interest is not direct" and thus did not meet the Rule 24 interest requirement. Id. at *5.

In sum, the Court finds that NCUA has a sufficient interest in this proceeding to support intervention under Rule 24.

3. Impairment

The next element requires NCUA to show that "disposing of the action may as a practical matter impair or impede [NCUA's] ability to protect its interest." Fed. R. Civ. P. 24(a)(2); see also Hartford Fire Ins. Co., 193 F.R.D. at 161. Class actions present a common example of cases in which an adverse judgment would impair the movant. When a class is certified or likely to be certified, absent class members who do not opt out are bound by any judgment in a class action, and they are therefore clearly at risk of impairment. See Chen-Oster v. Goldman, Sachs & Co., No. 10 Civ. 6950, 2015 WL 4619663, at *4 (S.D.N.Y. Aug. 3, 2015) (observing that intervention is "commonly granted to absent class members" who could be bound by a judgment). Of course, the risk of adverse judgment turns partly on whether class certification is likely and whether the movant is part of the proposed class. See id.

Separately, the possibility of stare decisis sometimes constitutes a sufficient risk of impairment to support intervention. Oneida Indian Nation v. State of N.Y., 732 F.2d 261, 265 (2d Cir. 1984) (remanding to permit intervention due

to the "significant likelihood that the ultimate resolution of this litigation will lead to the conclusions of law on issues of first impression, or mixed findings of fact and law, which will implicate principles of stare decisis"). For example, the risk of stare decisis supported intervention in a case involving a boating accident and multiple defendants. See Hartford Fire Ins. Co., 193 F.R.D. at 161. The Hartford Fire Insurance Company ("Hartford") sued to void a policy it held with one defendant, and Reliance Insurance Company, which was insurer of the other defendants, successfully intervened because "[t]he reality is that Reliance [Insurance Company] would at least find itself waging an uphill battle in seeking indemnification from Hartford if this court holds, in a contest between Hartford and its insured, that Hartford has no obligations under the [insurance] policy." Id. Other courts have granted intervention when faced with stare decisis implications in similar cases. See, e.g., Certified Multi-Media Sols., Ltd. v. Preferred Contractors Ins. Co. Risk Retention Grp. LLC, No. 14 Civ. 5227, 2015 WL 5676786, at *12 (E.D.N.Y. Sept. 24, 2015) (citing Maryland Cas. Co. v. W.R. Grace & Co., No. 88 Civ. 4337, 1996 U.S. Dist. LEXIS 868 (S.D.N.Y. Jan. 30, 1996), aff'd, 332 F.3d 145 (2d Cir. 2003)). Courts grant intervention in part because separate actions brought by would-be intervenors "revisit the same issues

concerning the availability and limits of the [insurance policy] that will inevitably be central to a determination in the case." Id.

Of course, "stare decisis will not support intervention as of right in all cases." Hartford Fire Ins. Co., 193 F.R.D. at 161. (internal quotation marks omitted). For example, defendants facing clawback actions in a large bankruptcy action cannot intervene as of right in the adversary proceeding of a single defendant, just to "argue (or more accurately, reargue) in favor of . . . [a] defense" at issue. Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 550 B.R. 241, 246 (Bankr. S.D.N.Y. 2016).

NCUA argues that its "ability to litigate the issue may be constrained by stare decisis" and that meanwhile "funds beneficially owned by NCUA would be impermissibly used" by U.S Bank. (NCUA Dec. 18 Letter at 2.) As noted above, U.S. Bank does not address the potential impairment issue in its letter.

Whether analyzing the potential impairment of NCUA's interests due to stare decisis or its status as a possible absent class member, NCUA faces clear risks from adverse rulings in this case. For example, the Court could render a decision interpreting the same contract language for the same trusts which could one day be at issue in a separate suit

brought by NCUA regarding U.S. Bank's practice of billing fees and costs to the trusts. An adverse ruling to Royal Park would create a similar "uphill battle" for NCUA as described in Hartford Fire Ins. Co.. 193 F.R.D. at 161.

Even after deciding that NCUA did not have a sufficient interest to intervene, the court in Royal Park v. HSBC addressed whether NCUA's interest would be impaired. Similar reasoning persuaded the court that stare decisis would impair NCUA's interests even though any decision would "only be persuasive authority as to other district court judges who may face the same issue." Royal Park v. HSBC, 2018 WL 3655781, at *6.

Accordingly, the Court finds that disposing of the action here would likely impair NCUA's ability to protect its interests under Rule 24.

### 4. Adequacy of Representation

Finally, to support intervention, NCUA must show that its interest would not be protected adequately by the parties to the action. Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co., 922 F.2d 92, 98 (2d Cir. 1990). Although this burden is typically understood to be "minimal," a higher burden applies when the movant seeks the same relief as one of the parties to the action. Id. ("Where there is an identity of interest between a putative intervenor and a

party, adequate representation is assured."); see also
Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 180
(2d Cir. 2001) (requiring "a more rigorous showing of
inadequacy in cases where the putative intervenor and a named
party have the same ultimate objective").

NCUA makes three points to support its argument that it
is not adequately represented in this proceeding. First, it
argues that it has a "broader interest" than Royal Park "as
a federal agency" which is "rooted in the public interest."
(NCUA Dec. 18 Letter at 3.) Second, it argues that
"intervention is commonly granted to absent class members."
(Id. (quoting Chen-Oster, 2015 WL 4619663 at *4).) On this
point, NCUA asserts that Royal Park could seek to maximize
the gain to the class and possibly exclude NCUA. (Id.)
Finally, NCUA argues that its interests at the "shelf level"
for the other trusts are broader than those of Royal Park,
which has "no incentive to assert broader application of its
arguments" to the shelf level. (Id.)

In response, U.S. Bank argues that NCUA's status as a
federal agency is immaterial because here it seeks to
intervene "as a private liquidating agent using private
counsel." (U.S. Bank Dec. 22 Letter at 2.) U.S. Bank also
dismisses the relevance of NCUA's interest in other trusts at

the same shelf level, given that NCUA has proposed to limit its complaint to only the Overlapping Trusts. (Id.)

Ultimately, NCUA requests the exact relief as Royal Park, asking for the same interpretation of the same contracts for the same trusts. This identity of interest subjects NCUA to the higher burden of demonstrating inadequate representation as described in Washington Electric and Butler. The Court finds that NCUA cannot meet this higher burden.

At the outset, the Court notes its familiarity with Royal Park's zealous advocacy throughout this litigation. Nothing it presents supports NCUA's claim that Royal Park will seek to exclude NCUA's identical interests in any disposition to benefit itself. The mere possibility of such an exclusion, barring other facts that differentiate NCUA from Royal Park, does not overcome the high hurdle required under Rule 24, or else intervention would always be granted to absent class members. Should class certification be granted, NCUA may opt out, and also retains the right to object at a fairness hearing of any class settlement. See Devlin v. Scardelletti, 536 U.S. 1, 4 (2002).

Next, as recognized in Royal Park v. HSBC, NCUA's status as a government agency adds no weight because NCUA operates as only another certificate holder in this suit. 2018 WL

- 19 -

3655781, at *6. NCUA's interests at the "shelf level" for other trusts are also irrelevant because those trusts would not be the subject of any complaint it files. See id.

Finally, while NCUA correctly points out that intervention is commonly granted to absent class members, that outcome ensues because it is granted to rectify an adequacy of representation issue. Many of the cases cited by NCUA involved situations where named plaintiffs could not adequately protect the movants' interests due to changed circumstances or standing issues. See Chen-Oster, 2015 WL 4619663, at *7 (granting intervention in part because named plaintiffs did not have standing to seek injunctive relief); New Jersey Carpenters Health Fund, 2010 WL 5222127, at *4 (finding that intervenors had a different interest in "prosecuting violations with respect to the particular offerings in which [i]ntervenors purchased securities"); Eckert v. Equitable Life Assurance Soc'y of U.S., 227 F.R.D. 60, 64 (E.D.N.Y. 2005) (named plaintiff settled individual suit); Diduck v. Kaszycki & Sons Contractors, Inc., 149 F.R.D. 55, 58 (S.D.N.Y. 1993) (named plaintiff died). This case presents no such special circumstances.

Thus, while NCUA meets the first three elements of the Rule 24 analysis, the Court is not persuaded that it meets

the fourth and final required element. NCUA's request for intervention as of right is denied.

### 5. NCUA's Motion for Permissive Intervention

Courts consider the same four elements when determining whether to grant permissive intervention. See Floyd, 770 F.3d at 1057. Here, once again, NCUA's inability to meet the fourth element and demonstrate that it would be inadequately represented by Royal Park informs the Court's decision. NCUA's stated goal is to help "develop the record on the fact that investor trust beneficiaries enter contracts with the trustee." (NCUA Dec. 18 Letter at 3.) NCUA can accomplish this goal through other means, such as working with Royal Park, objecting to a settlement, or filing a separate suit. Its interest does not require the equal-party status that accompanies intervention, entitling it to file motions, take discovery, and otherwise shape the litigation of the case.

For these reasons, the Court denies NCUA's request for permissive intervention.

### B.   U.S. BANK'S PRE-MOTION LETTER TO DISMISS OR STAY PROCEEDINGS

The Court next turns to U.S. Bank's letter seeking motion practice to dismiss the Fees Complaint or stay proceedings. The Court now construes U.S. Bank's letter as a motion to

dismiss pursuant to Federal Rule of Civil Procedure 12(b), or in the alternative, to stay proceedings.

As detailed further below, the Court is persuaded that it is appropriate to issue a stay on this matter pending the outcome of the Underlying Suit. In short, U.S. Bank's jurisdictional arguments regarding Article III standing are unpersuasive[2] and U.S. Bank advances no reasons why dismissal without prejudice is preferable to a stay.

The Supreme Court has made clear that because a "stay is an intrusion into the ordinary processes of administration and judicial review," it is "not a matter of right[;]" rather, it is an "exercise of judicial discretion." Nken v. Holder, 556 U.S. 418, 427, 433 (2009) (internal quotation marks omitted); see also Maldonado-Padilla v. Holder, 651 F.3d 325, 327 (2d Cir. 2011). Five considerations typically inform a district court's decision on whether to issue a stay:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

---

[2]     The Court "draw[s] all reasonable inferences in favor of" Royal Park, Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014), and credits the allegation that Royal Park is "entitled to portions of the cash flows from the [trusts] that U.S. Bank is contractually obligated to hold in trust" for Royal Park. (Royal Park Nov. 20 Letter at 1; see also Fees Complaint ¶ 18).

Albert v. Blue Diamond Growers, 232 F. Supp. 3d 509, 512 (S.D.N.Y. 2017) (quoting Kappel v. Comfort, 914 F. Supp. 1056, 1059 (S.D.N.Y. 1996)).

Further, when facing "duplicative suits," courts "will commonly stay the second suit" in part "[b]ecause of the obvious difficulties of anticipating the claim or issue-preclusion effects of a case that is still pending." Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000). Stays are also appropriate "while awaiting the outcome of proceedings which bear upon the case, even if such proceedings are not necessarily controlling of the action that is to be stayed." Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA, 630 F. Supp. 2d 295, 305 (S.D.N.Y. 2009) (internal quotation marks omitted).

The possibility of overlapping or duplicative litigation weighs heavily in this case. The claims at issue in the Fees Complaint may well turn on determinations made in the Underlying Suit. To summarize this overlap briefly, Royal Park alleges that U.S. Bank is improperly billing the trusts for legal fees incurred in the Underlying Suit. U.S. Bank counters that indemnification clauses in the Governing Agreements permit it to bill the trusts for such fees and costs. Royal Park argues that the indemnification clauses do not apply. Critically, the parties also debate an exception

to the indemnification clauses for expenses incurred as a result of U.S. Bank's alleged willful malfeasance. This exception may separately preclude U.S. Bank from reimbursing its legal fees and costs if U.S. Bank is found to have acted grossly negligently as regards its contractual duties under the Governing Agreements

Of course, whether U.S. Bank acted grossly negligently is a central factual question in the Underlying Suit. A finding in the Underlying Suit that U.S. Bank acted grossly negligently may fatally undermine its defenses to the Fees Complaint. If so, U.S. Bank would be forced to reimburse the trusts for the legal expenses it charged them. Thus, staying these proceedings could avoid a possible waste of both the parties' and the Court's resources. A stay also avoids the risks and inefficiencies associated with determining indemnification issues during ongoing litigation as opposed to at its conclusion.

None of the other considerations listed above outweigh the potential waste of resources if the case were to proceed. First, even though the Court recognizes that parties like U.S. Bank typically seek indemnification after incurring expenses in defending themselves, U.S. Bank's departure from the ordinary course does not substantially prejudice Royal Park or other trust investors. Most importantly, U.S. Bank is

- 24 -

part of one of the largest banks in the United States, and it maintains sufficient coffers to reimburse all legal expenses charged to the trusts if necessary. Second, the public interest in prompt adjudication is counterbalanced by its interest in conserving judicial resources. See Specrite Design, LLC v. Elli N.Y. Design Corp., No. 16 Civ. 6154, 2017 WL 3105859, at *6 (S.D.N.Y. July 20, 2017).

The Court's reasoning accords with at least one other recent case in which a RMBS trustee successfully sought a stay of claims similar to those alleged in the Fees Complaint. See Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co., No. 17 Civ. 5916, 2018 WL 3849840, at *1 (S.D.N.Y. Aug. 10, 2018). There, the court held that Royal Park could not demonstrate prejudice resulting from the stay because the defendant trustee could refund the trusts later if required to do so. Id. at *2. Thus, the court determined that the "analysis ultimately turns on what is most efficient" and a stay "may be necessary to avoid unnecessary determinations" regarding the trustee's negligence. Id. at *3. That potential for a "duplicative determination . . . outweigh[ed]" any prejudice to Royal Park and justified the stay. Id. The Court agrees with this analysis.

For the reasons stated above, the Court is persuaded that proceedings regarding the Fees Complaint should be stayed until the claims in the Underlying Suit are resolved.

### III. ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the motion so deemed by the Court as filed by the National Credit Union Administration Board seeking intervention (Dkt. No. 350) is **DENIED**; and it is further

**ORDERED** that the motion so deemed by the Court as filed by defendant U.S. Bank National Association seeking to dismiss claims or stay proceedings (Dkt. No. 343) regarding the Fees Complaint (17 Civ. 6778, Dkt. No. 1) is **GRANTED** in part and **DENIED** in part. The motion to dismiss is **DENIED** and the motion to stay proceedings is **GRANTED**. Proceedings regarding the Fees Complaint are **STAYED** until the Underlying Suit (14 Civ. 2590) in this case is resolved.

**SO ORDERED.**

Dated:    New York, New York
          30 November 2018

Victor Marrero
U.S.D.J.